1  HOPE ANNE CASE (Bar No. 157089)
   (hope.case@dlapiper.com)

**ORIGINAL**

2  NORA CULVER (Bar No. 240098)
   (nora.culver@dlapiper.com)

3  **DLA PIPER US LLP**
   2000 University Avenue

4  East Palo Alto, CA 94303-2215
   Tel: 650.833.2000

*FILED*

5  Fax: 650.833.2001

6  Attorneys for Defendant
   UNITED AIR LINES, INC.

*AUG 2 7 2008*

7

8  UNITED STATES DISTRICT COURT,

*RICHARD W. WIEKING*
*CLERK, U.S. DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*

9  NORTHERN DISTRICT OF CALIFORNIA

10  LARRY OILUND

CASE NO. CV 08-04016 TEH

11         Plaintiff,

**EXHIBIT A: COPIES OF SUMMONS, COMPLAINT, AND NOTICE OF CASE MANAGEMENT CONFERENCE IN STATE COURT ACTION**

12         v.

13  UNITED AIRLINES/WORLD
    HEADQUARTERS; GLEN F. TILTON;

14  BARBARA LIATAUD; RON RICH; JIM
    BOLAND; VINNIE AGVATEESIRI;

15  ANDRE ST. LOUIS DOES 1-20,
    INCLUSIVE,

16

17         Defendants.

18

19                    **MANUAL FILING NOTIFICATION**

20         Regarding: EXHIBIT A to the Notice of Removal of Civil Action to United States

21  District Court By Defendant United Air Lines, Inc.

22         This filing is in paper form only, and is being maintained in the case file in the Clerk's

23  office.

24         If you are a participant on this case, this filing will be served in hard-copy shortly.

25         For information on retrieving this filing directly from the court, please see the court's

26  main web site at http://www.cand.uscourts.gov under Frequently Asked Questions (FAQ).

27         This filing was not efiled for the following reason(s):

28   _X_   Voluminous Document (PDF file size larger than efiling system allowances)

DLA PIPER US LLP
EAST PALO ALTO

WEST\21502060.1                           -1-

1    ___    Unable to Scan Documents

2    ___    Physical Object (description): _____

3    _____

4    ___    Non Graphical/Textual Computer File (audio, video, etc.) on CD or other media

5    ___    Item Under Seal

6    ___    Conformance with the Judicial Conference Privacy Policy (General Order 53)

7    ___    Other (description):_____

8    _____

9

10    Dated: August 26, 2008                    DLA PIPER US LLP

11
                                          By:_____
12                                             HOPE ANNE CASE
                                             Attorneys for Defendant
13                                             UNITED AIR LINES, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

NOTICE TO DEFENDANT:
(AVISO AL DEMANDADO):
UNITED AIRLINES/WORLD HEADQUARTERS; GLEN F. TILTON;
BARBARA LIATAUD; RON RICH; JIM BOLAND; VINNIE
AGVATEESIRI; ANDRE ST. LOUIS DOES 1 - 20, Inclusive,

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**ENDORSED FILED**
SAN MATEO COUNTY

MAY 2 2 2008

Clerk of the Superior Court
By _____ G. Jackson
DEPUTY CLERK

YOU ARE BEING SUED BY PLAINTIFF:
(LO ESTÁ DEMANDANDO EL DEMANDANTE):
LARRY OILUND

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.   If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.  Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
   Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
(El nombre y dirección de la corte es):
Superior Court County of San Mateo
400 County Center
Redwood City, CA 94063

CASE NUMBER
(Número): **CIV 473062**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Charles J. Katz, Esq.  (SBN68459)   (650)692-4900   (650)692-2900
Law Offices of Charles J. Katz
475 El Camino Real, Suite 300
Millbrae, CA 94030

DATE: **MAY 2 2 2008**   Clerk, by **GEORGE JACKSON**   , Deputy
(Fecha)   **JOHN C. FITTON**   (Secretario)   (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

NOTICE TO THE PERSON SERVED: You are served

[SEAL]

1. ☐ as an individual defendant
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

   under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☐ by personal delivery on (date).

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal
Solutions
℠ Plus

Code of Civil Procedure §§ 412.20, 465



**CORPORATION SERVICE COMPANY**

# Notice of Service of Process

BZT / ALL
Transmittal Number: 5925136
Date Processed: 07/24/2008

Primary Contact:  Kim Niebuhr
                  UAL Corporation (United Airlines)
                  77 W Wacker
                  Floor 16th
                  Chicago, IL 60601

Copy of transmittal only provided to:    Sarah Voss

| | |
|---|---|
| Entity: | United Air Lines, Inc.<br>Entity ID Number 0115287 |
| Entity Served: | United Airlines/World Headquarters |
| Title of Action: | Larry Oilund vs. United Airlines/World Headquarters |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Discrimination |
| Court: | San Mateo Superior Court, California |
| Case Number: | CIV473062 |
| Jurisdiction Served: | California |
| Date Served on CSC: | 07/23/2008 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Plaintiff's Attorney: | Charles J. Katz<br>650-692-4900 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road  Wilmington, DE 19808  (888) 690-2882  |  sop@cscinfo.com

1

CHARLES J. KATZ, ESQ., SBN 68459
475 El Camino Real, Suite 300
Millbrae, California 94030
Telephone: 650.692.4100/Facsimile: 650.692.2900
ELLADENE LEE KATZ, ESQ., SBN 81021
327 North San Mateo Drive, Suite 9
P. O. Box 517
San Mateo, California 94401
Telephone: 650.348.8078/Facsimile: 650.348.8073

2

3

4

5

6

7

8

Attorneys for Plaintiff
Larry Oilund

9

**ENDORSED FILED**
**SAN MATEO COUNTY**

MAY 2 2 2008

Clerk of the Superior Court
By _____ G. Jackson
DEPUTY CLERK

Matthew H. Wexley

AUG. 0 4 2008

10

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SAN MATEO**

HDQLD

11

12

**LARRY OILUND**

**CIV 4 7 3 0 6 2**

Case No: _____

13

14

Plaintiff,

15

vs.

16

**UNITED AIRLINES/WORLD**
**HEADQUARTERS; GLEN F.**
**TILTON; BARBARA LIATAUD;**
**RON RICH; JIM BOLAND;**
**VINNIE AGVATEESIRI;**
**ANDRE ST. LOUIS**
**DOES 1 – 20, Inclusive,**

17

18

19

20

Defendants.

21

22

23

24

COMPLAINT FOR EQUITABLE
RELIEF AND DAMAGES

1. Employment Discrimination –
   Cal.Gov't Code Section 12940
2. Employment Discrimination Common Law
3. Employment Discrimination-Retaliation-
   Cal.Gov't Code Section 12940(f)
4. Employment Discrimination-Retaliation-
   Common Law
5. Breach of Contract
6. Breach of Covenant of Good Faith and
   Fair Dealing
7. Failure to Prevent Discrimination-
   Cal.Gov't Code Section 12940
8. Fraud and Deceit
9. Harassment – Cal.Gov't Code Section 12940

JURY TRIAL DEMANDED

25

Plaintiff alleges:

26

27

28

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND

1

1

2

## PRELIMINARY STATEMENTS

3

4     1.    The true names and capacities, whether individual, corporate, associate, or

5     otherwise, of defendants, DOES 1 to 20, inclusive, are unknown to Plaintiff, who

6     therefore sues said Defendants by such fictitious names. Plaintiff is informed and

7     believes and on such information and belief alleges, that each of the Defendants

8     designated herein as a DOE is negligently or otherwise responsible in some manner for

9

10    the events and happenings herein referred to, and caused injury and damages

11    proximately thereby to the Plaintiff, as herein alleged.

12    2.    At all times herein mentioned, each of the Defendants was the servant,

13    agent, co-conspirator, and/or employee of each of the remaining Defendants, and was

14    acting within the scope and course of his agency and employment, and/or pursuant to

15    conspiracy.

16

17    3.    Plaintiff, Larry Oilund is a 46 year old white male (hereinafter referred to

18    as "Plaintiff"), who has been employed by United Airlines (hereinafter referred to as

19    "Defendant United") since on or about March 10, 1986 as a Engine Parts Inspector.

20    Plaintiff was constructively discharged on July 13, 2006.

21

22    4.    Defendant United was at all times pertinent hereto a sole proprietorship

23    corporation, which at all times relevant hereto was organized and existed under and by

24    virtue of the laws of the State of California, qualified to do business in California with its

25    principal place of business in San Mateo, California.

26

27

28    COMPLAINT FOR EQUITABLE RELIEF
      AND DAMAGES: LARRY OILUND                                                    2

5.    Defendant, Glen F. Tilton (hereinafter referred to as "Tilton") at all times pertinent hereto, was the CEO of Defendant United.

6.    Defendant, Barbara Liataud (hereinafter referred to as "Liataud") at all times pertinent hereto, was an employee of Defendant United.

7.    Defendant, Ron Rich (hereinafter referred to as "Rich") at all times pertinent hereto, was the Industrial Relations Representative of Defendant United.

8.    Defendant, Jim Boland (hereinafter referred to as "Boland") at all times pertinent hereto, was the Manager of Defendant United.

9.    Defendant, Vinnie Agvateesiri (hereinafter referred to as "Agvateesiri") at all times pertinent hereto, was the Foreman of Defendant United.

10.    Defendant, Andre St. Louis (hereinafter referred to as "St. Louis") at all times pertinent hereto, was an employee of Defendant United.

## FIRST CAUSE OF ACTION
### (Employment Discrimination –
### Cal.Gov't Code Section 12940 –
### Age, Mental and Physical Disabilities)
### (Against ALL Defendants)

11.    Plaintiff refers to and incorporates herein by reference Paragraphs 1 through 10 of the Preliminary Statements as though fully set forth herein at length.

12.    Plaintiff was at all times material hereto an employee covered by Cal. Gov't Code Section 12940 prohibiting discrimination in employment on the basis of race, age,

religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex or sexual orientation.

13.    Defendant United was and is at all times material hereto an employer within the meaning of Cal. Gov't Code Section 12926 and, as such, barred from discriminating in employment decisions on the basis of age and mental and physical disabilities as set forth in Cal. Gov't Code Section 12940.

14.    Defendants have discriminated against Plaintiff on the basis of age and mental and physical disabilities in violation of Cal. Gov't Code Section 12940 by engaging in the following course of conduct:    Plaintiff was first hired by Defendant United on March 10, 1986 and his most recent position was Engine Parts Inspector. Over this extensive employment relationship with Defendant United, Plaintiff has suffered from specific injuries on the job, including lower and upper back injuries in 1988 and 1998 respectively. The most recent industrial claims are as follows: a stress claim which was filed regarding an incident on May 21, 2004, a toxic exposure claim filed in February 2004 and a hearing loss claim which was both denied and accepted stemming from injury in 2003. These wrongful actions have given rise to Plaintiff's claims of harassment, retaliation and discrimination for reasons based upon his age and mental and physical disabilities.

Plaintiff has worked with steel, tin, copper, magnesium and aluminum and in October of 2002 Plaintiff suffered from symptoms of toxic exposure. After taking tests

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND                                                                        4

regarding urinalysis and hair analysis it was determined that there were toxic levels of metal in his body. Plaintiff filed a claim of toxic poisoning in February of 2004.

In 2003, Plaintiff was experiencing a serious hearing loss. Initially, after Plaintiff filed a claim, Defendant United's representative denied this claim and then accepted it on the same dates signed by the same person. Defendant United intentionally tried to prevent Plaintiff from taking a hearing test. However, Plaintiff discovered other crew members were tested and when Plaintiff was tested, he had significant hearing loss. Plaintiff complained that the work area was too noisy because the grit blaster was placed near the employees, and that this level violated State laws. Plaintiff notified OSHA and they conducted a decibel level test. However, at the time that OSHA came out to conduct the test, the machines were not in use. Other employees and Plaintiff continued to complain to OSHA. Defendant United later built a wall between the employees and the grid blaster. However, by this time, Plaintiff was perceived as a *"trouble maker"* by supervisors and management. This hearing condition could also be related to toxic metal levels and mercury, in particular.

In May of 2004, Plaintiff's claim for toxic exposure poisoning was denied and Plaintiff became increasingly depressed because of management's refusal to acknowledge his severe condition of toxic poisoning and because management had become hostile towards him. Further, Defendant United conducted a water survey which resulted in a finding of arsenic content in the water supply. This survey was conducted by an outside vendor in 2003 and resulted in bottled water being used in the

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND

5

shop. At this same time, Plaintiff took samples where the outside vendor had disturbed known asbestos locations. Plaintiff complained to management and they ridiculed him. Plaintiff had the samples tested and it was proven to be asbestos. Consequently, Plaintiff was considered by management to be a *"trouble maker"* and a *"malingerer"*. Plaintiff's stress claim which was filed on May 28, 2004 was denied. Further, on August 11, 2004 Plaintiff's claim for toxic exposure was denied.

In May of 2004, when Plaintiff went out for a disability leave based upon stress, Plaintiff was suffering from eating and sleeping issues and an inability to make decisions. Plaintiff's foreman and supervisors singled Plaintiff out for harassment, retaliation and discrimination based upon his age and mental and physical disability. Plaintiff had taken urine and hair analysis tests, and Defendant United refused to consider these results. The tests confirmed that Plaintiff had high levels of toxic metals in his body, and his doctors concluded that these high levels of such metals, including mercury and manganese, caused an anxiety, depression and a bi-polar condition.

Based on these test results, Plaintiff has had ongoing intravenous treatments to flush the metals out of his system, and Plaintiff has had ongoing psychological treatment for the anxiety, depression and bi-polar condition. Plaintiff has complained to management about the harassment, retaliation and discrimination, and Plaintiff was placed on an extended leave of absence. The Foreman, Defendant Agvateesiri and Manager, Defendant Boland, miscalculated Plaintiff's approved sick leave and leave of absence, resulting in a loss of seniority and pay for Plaintiff. Plaintiff filed grievances

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND                                                    6

1

2

3

related to these issues which relate back to 2004 and these claims are ongoing and continuous.

4

5

6

7

8

9

10

On June 30, 2006, Plaintiff met with a nurse at Defendant United to obtain medical clearance to return to work. Plaintiff's personal doctors had cleared him to return to work, full time, starting in July of 2006. Ms. Garner, the Nurse, stated that she could not make the decision to clear Plaintiff without a full clinical narrative. Plaintiff brought back a narrative on July 10, 2006. Ms. Garner refused to return Plaintiff back to work, stating that there was not enough detail.

11

12

13

14

15

16

17

18

19

20

On July 11, 2006, Plaintiff met with Dr. Hodges, the Head of Defendant United's Medical Department, to inform her that Plaintiff was starting his swing shift within the hour, that Plaintiff had clinical narratives from his doctors, and that Plaintiff had been cleared to return to work. Dr. Hodges responded that she was hesitant to have Plaintiff return to work unless Plaintiff agreed to a full urinalysis. Plaintiff agreed to the urinalysis if Dr. Hodges would promise to fill out a first report of injury, if the urinalysis showed a normal manganese level. This would prove that Plaintiff's claim of toxic exposure to metal poisoning was valid based upon previous tests taken in 2004.

21

22

23

24

25

26

Dr. Hodges agreed that if the urinalysis proved to be normal she would fill out the first report of injury. The urinalysis proved to be normal and the toxic exposure injury was confirmed. Dr. Hodges sent the first report of injury form to Plaintiff's Foreman, Defendant Agvateesiri. On July 15, 2006, the test results clearly showed that, compared to the November 11, 2003 toxic analysis, the manganese level was within reference.

27

28

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND

7

Plaintiff had suffered for two years from toxic metal poisoning. No one at Defendant Untied believed this condition existed or that it had serious medical consequences.

Plaintiff reported to Defendant Agvateesiri, the foreman, with an unrestricted authorization to return to work. Defendant Agvateesiri was unprepared and complained that he had no warning of Plaintiff's return. Defendant Agvateesiri refused to give Plaintiff a key card to punch in and out. Instead, Plaintiff was told to work while management determined how to get a key card from security. Plaintiff was forced to fill out handwritten exception forms to check in and out. Defendant Agvateesiri refused to sign and accept these forms, and he continued to refuse to fill out paperwork to release Plaintiff's key card. Further, Defendant Agvateesiri continued to refuse to give Plaintiff any payroll exception and Defendant United refused to pay Plaintiff.

Defendant Agvateesiri claimed that no one was at the Human Resources Department at 3:00 p.m. to correct this matter. Defendant Agvateesiri typed out a security authorization which security rejected because it was not an official form. Consequently, Plaintiff was forced to input in the computer that he was receiving on the job training to prove that he was at work. Defendant Agvateesiri continued to refuse to give Plaintiff a key card, reiterating that he was not ready for Plaintiff to return to work, and asked that Plaintiff leave the premises, but promising that he would pay Plaintiff for eight hours of work.

Plaintiff returned to work the next day and Defendant Agvateesiri continued to harass, retaliate and discriminate against Plaintiff by refusing to sign a payroll exception

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND

8

form. Plaintiff filled the form out and Defendant Agvateesiri refused to sign. Defendant Agvateesiri claimed that he did not know how to obtain a key card to allow Plaintiff to return to work. Defendant Agvateesiri was one of the Supervisors who harassed, retaliated and discriminated against Plaintiff throughout his disabilities since 2002, 2003 and 2004. Because of Defendants Agvateesiri and Boland, management incorrectly miscalculated Plaintiff's leave of absence status while Plaintiff was out on extended medical leave. Because of this miscalculation, Plaintiff lost over 1,017 hours of industrial sick leave at $28.00 per hour, amounting to $28,476.00. Further, Plaintiff lost benefits and stock disbursement of approximately $22,000.00, and Plaintiff's seniority has been affected. There have been other damages, including loss of one-third (1/3) of Plaintiff's pension plan.

On July 13, 2006, Plaintiff requested a meeting with Defendant Boland to discuss these issues. Plaintiff complained that he was still refused a key card and that there were monies still owed to him. Plaintiff complained about the manner in which he was being treated by management and Defendant United's doctors. Plaintiff filed three petitions of grievances regarding these incidents. Plaintiff complained to Defendant Boland because the Company refused to return Plaintiff to work and then after receiving clearance, the Company refused to give Plaintiff a security card and refused to pay Plaintiff.

On July 17, 2006, Plaintiff met with Defendants Boland and Agvateesiri complaining about the additional monies owed. At this meeting Defendant Boland

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND
9

1
2
3
4
5

agreed to pay Plaintiff five weeks and two days vacation.  On July 24, 2006 and July 25, 2006 Dr. Hodges reversed her clearance without reason.  Dr. Hodges demanded that further documentation was necessary to return Plaintiff back to work, including the urinalysis report and a full clinical narrative.

6
7
8
9
10
11
12
13
14
15
16

Dr. Hodges' change of mind and refusal to return Plaintiff back to work caused further confusion and hostility.  Defendant Agvateesiri demanded that Plaintiff bring in a clinical note before he could re-enter the premises.  Plaintiff brought in the documentation on September 11, 2006 including the urine reports.  Plaintiff was given an unrestricted return to work for a second time, however, the Payroll Department claimed that they lost the forms and were refusing to pay Plaintiff for any time that Plaintiff already worked in July 2006.  Plaintiff complained to Defendant Boland about the refusal to pay his wages and Defendant Boland claimed that he could not answer for Payroll.

17
18
19
20
21
22
23
24
25
26

Despite Plaintiff's urinalysis documentation, Dr. Hodges once again refused to allow Plaintiff to return to work without a full clinical narrative.  Plaintiff was distressed over the ongoing harassment, retaliation and discrimination.  Nevertheless, Plaintiff came in on September 11 and September 13, 2006 with test results and on September 14, 2006 Plaintiff submitted **another** clinical narrative for Dr. Hodges. Review. Defendant United continued to harass and retaliate and discriminate against Plaintiff. On September 23, 2006, Dr. Hodges demanded to speak with Plaintiff regarding the manganese results before approving Plaintiff to return to work.

27
28

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND                                                              10

1    These actions have caused Plaintiff to suffer further clinical depression and
2
3    anxiety and on July 13, 2006 Plaintiff was out on a recommended medical leave for
4    clinical depression. Dr. Hodges has continued to demand any and all clinical narratives
5    from 2004, including prescriptions, covering any and all absences past and present,
6    including *"proposed or expected treatment"*.  Meanwhile, Plaintiff has been told by
7    Defendant United's doctors and members of management that Plaintiff should consider
8
9    working somewhere else.

10    Plaintiff has submitted narratives on the Defendant United's official form for the
11   past several years. The clinical narratives on the Company forms have been accepted
12   and signed by management in the past. However, Dr. Hodges now claims she does not
13   have a full and complete copy of any and all clinical narrative forms submitted by
14
15   Plaintiff. Dr. Hodges continues to demand these forms be submitted to her again and
16   that they include any *"proposed or expected future treatment"*.

17    Plaintiff has been harassed to such an extent that Plaintiff has suffered from
18   another episode of clinical depression. Despite the fact that these forms have been
19   signed and accepted in the past, Dr. Hodges has now refused to recognize the form and
20
21   sign the form. Plaintiff complained to the Industrial Relations Representative, Defendant
22   Rich, and met with other members of management about these actions. Plaintiff has
23   been singled out, treated unfairly, harassed, retaliated against, and discriminated
24   against for the past two years and this has been an ongoing, continuous and abusive
25   employment relationship. Plaintiff has been told that Defendant United still does not
26
27

28   COMPLAINT FOR EQUITABLE RELIEF
     AND DAMAGES: LARRY OILUND                                          11

have all of the paperwork Plaintiff has already submitted to Dr. Hodges and to management.

Plaintiff is currently out for clinical depression. Plaintiff has submitted, on a regular basis, the clinical narratives which have been required by the Company. Despite Plaintiff's submission of these records, Dr. Hodges has demanded that Plaintiff resubmit other clinical narratives that must be signed by a medical doctor. Plaintiff is currently being treated by Dr. Myrna Astillero, a Psychiatrist and medical doctor. Defendant United continues to send demands to Plaintiff to submit the clinical narratives which Plaintiff has already submitted, effectively duplicating the paperwork required by the Union Contract.

A letter was sent on November 9, 2006 to Plaintiff from Defendant United stating that medical documentation from Plaintiff's treating physicians substantiating his absence from work since September 29, 2006 had not been received. This letter further stated that Dr. Hodges demanded medical documentation on October 25, 2006 for Plaintiff's continued absence from work. According to this letter, there was not sufficient information to authorize Plaintiff's continued absence. Plaintiff continues to be harassed by Defendant United because he has submitted clinical narratives signed by his psychologist, his psychiatrist, and his medical doctor for this absence.

Dr. Hodges' demand for information goes beyond Defendant United's policies and procedures. In the alternative, Plaintiff was directed to see Dr. Hodges by November 27, 2006 if a clinical narrative could not be provided. Plaintiff in fact provided a **third**

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND                                                          12

clinical narrative filled out by Dr. Cervantes and the first copy of Plaintiff's most recent November 3, 2006 toxic report showing elevated mercury levels in his system. Those items were faxed to Defendant United.

Despite these clinical narratives, Dr. Hodges, Defendants Liataud and Agvateesiri threatened Plaintiff that he may be terminated for job abandonment. Under the Collective Bargaining Agreement, and State and federal laws, Plaintiff is allowed extended medical leave status. Plaintiff has telephoned the Company and has faxed information to them, including clinical narratives on October 24, 2006 and again on December 6, 2006. Despite Plaintiff's continued efforts, Defendant United continues to send memos, including one dated December 11, 2006 claiming that there was no personal record of a clinical narrative received by Defendant United concerning Plaintiff's case. Again, the Company demanded that a clinical narrative be submitted by December 26, 2006. These actions violate the Collective Bargaining Agreement related to Section 11.2 et.seq. *"illness leave of absence".* Further, these actions violate State and federal statutes prohibiting harassment, retaliation and discrimination against an employee for reasons based upon age and mental and physical disabilities. Plaintiff continues to suffer both mental and physical disabilities directly related to his employment relationship with Defendant United.

15.    Plaintiff filed timely Right to Sue Complaints with the California Department of Fair Employment and Housing, and received Notices dated May 24, 2007 of the right to sue in a California Superior Court pursuant to Cal. Gov't Code Section 12965(b)

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND                                                                                    13

permitting Plaintiff to bring this action.  Said Complaints and Right to Sue Letters are attached as **Exhibit "A"**  and incorporated herein by reference.  Therefore, Plaintiff has exhausted all of his administrative remedies.

16.    As a proximate result of Defendants' discrimination against Plaintiff, Plaintiff has suffered and continues to suffer substantial losses incurred in seeking and performing the job duties of his employment.  Plaintiff has and continues to suffer embarrassment, humiliation and mental anguish all to his damage in an amount according to proof.

17.    Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights.  Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

18.    As a result of Defendant's discriminatory acts as alleged herein, Plaintiff has no plain, adequate, or complete remedy as to law and Defendants continue to engage in said alleged wrongful practices.  Therefore, Plaintiff requests:

A.    That he be reinstated in his former position, or comparable position, made whole and afforded all benefits attendant thereto that would have been afforded Plaintiff but for said discrimination; and

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND                                               14

1        B.       That Defendant, its agents, successors, employees and those acting

2   in concert with it be enjoined permanently from engaging in each of the unlawful

3   practices, policies, usages and customs set forth herein.

4

5        19.      As a result of Defendants' discriminatory acts as alleged herein, Plaintiff is

6   entitled to reasonable attorney's fees and costs of said suit as provided by Cal. Gov't

7   Code Section 12965(b).

8

9        **WHEREFORE**, Plaintiff prays for damages as hereinafter set forth.

10

11                              **SECOND CAUSE OF ACTION**
                    **(Employment Discrimination –Common Law – Age,**
12                        **Mental and Physical Disabilities)**
                              **(Against ALL Defendants)**
13

14       20.      Plaintiff refers to and incorporates herein Paragraphs 11 through 19 of the

15   First Cause of Action as though fully set forth herein at length.

16       21.      The public policy of the State of California, as set forth in state and federal
17
   statutes and the California Constitution, is strongly opposed to discrimination in
18
   employment including, but not limited to, denial of promotion and termination of
19
20   employment, based solely upon gender, sexual harassment and mental and physical

21   disabilities.

22
         22.      Defendants' aforesaid conduct, set forth in 14 of the First Cause of Action,
23
24   violated the public policy of the State of California, and, as a result of the said acts,

25   Plaintiff suffered damages as aforesaid.

26

27
   COMPLAINT FOR EQUITABLE RELIEF
28   AND DAMAGES: LARRY OILUND                                                              15

**WHEREFORE**, Plaintiff prays for damages as hereinafter set forth.

## THIRD CAUSE OF ACTION
**(Employment Discrimination Retaliation-**
**Cal. Gov't code Section 12940(f)**
**Retaliation for Age, Mental and Physical Disabilities)**
**(Against ALL Defendants)**

23.    Plaintiff refers to and incorporates herein Paragraphs 1 through 10 of the Preliminary Statements as though fully set forth herein at length.

24.    Plaintiff was at all times material hereto an employee covered by Cal. Gov't Code Section 12940(f) prohibiting any person to retaliate against an employee who opposes a discriminatory practice or asserts rights under the Fair Employment and Housing Act, in violation of Cal. Gov't Code Section 12940(f).

25.    Defendant United was and are at all times material hereto an employer within the meaning of Cal. Gov't Code Section 12926 and, as such, barred from discriminating or retaliating in employment decisions on the basis of age and mental and physical disabilities or as set forth in Cal. Gov't Code Section 12940(f).

26.    Defendants have discriminated and retaliated against Plaintiff on the basis of age and mental and physical disabilities  because Plaintiff opposes a discriminatory practice or asserts rights under Cal. Gov't Code Section 12940(f) by engaging in the   . following course of conduct:    Plaintiff was first hired by Defendant United on March 10, 1986 and his most recent position was Engine Parts Inspector.  Over this extensive

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND                                                                          16

employment relationship with Defendant United, Plaintiff has suffered from specific injuries on the job, including lower and upper back injuries in 1988 and 1998 respectively. The most recent industrial claims are as follows: a stress claim which was filed regarding an incident on May 21, 2004, a toxic exposure claim filed in February 2004 and a hearing loss claim which was both denied and accepted stemming from injury in 2003. These wrongful actions have given rise to Plaintiff's claims of harassment, retaliation and discrimination for reasons based upon his age and mental and physical disabilities.

Plaintiff has worked with steel, tin, copper, magnesium and aluminum and in October of 2002 Plaintiff suffered from symptoms of toxic exposure. After taking tests regarding urinalysis and hair analysis it was determined that there were toxic levels of metal in his body. Plaintiff filed a claim of toxic poisoning in February of 2004.

In 2003, Plaintiff was experiencing a serious hearing loss. Initially, after Plaintiff filed a claim, Defendant United's representative denied this claim and then accepted it on the same dates signed by the same person. Defendant United intentionally tried to prevent Plaintiff from taking a hearing test. However, Plaintiff discovered other crew members were tested and when Plaintiff was tested, he had significant hearing loss. Plaintiff complained that the work area was too noisy because the grit blaster was placed near the employees, and that this level violated State laws. Plaintiff notified OSHA and they conducted a decibel level test. However, at the time that OSHA came out to conduct the test, the machines were not in use. Other employees and Plaintiff

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND                                                              17

continued to complain to OSHA. Defendant United later built a wall between the employees and the grid blaster.   However, by this time, Plaintiff was perceived as a "trouble maker" by supervisors and management. This hearing condition could also be related to toxic metal levels and mercury, in particular.

In May of 2004, Plaintiff's claim for toxic exposure poisoning was denied and Plaintiff became increasingly depressed because of management's refusal to acknowledge his severe condition of toxic poisoning and because management had become hostile towards him. Further, Defendant United conducted a water survey which resulted in a finding of arsenic content in the water supply. This survey was conducted by an outside vendor in 2003 and resulted in bottled water being used in the shop. At this same time, Plaintiff took samples where the outside vendor had disturbed known asbestos locations. Plaintiff complained to management and they ridiculed him. Plaintiff had the samples tested and it was proven to be asbestos. Consequently, Plaintiff was considered by management to be a "trouble maker" and a "malingerer". Plaintiff's stress claim which was filed on May 28, 2004 was denied. Further, on August 11, 2004 Plaintiff's claim for toxic exposure was denied.

In May of 2004, when Plaintiff went out for a disability leave based upon stress, Plaintiff was suffering from eating and sleeping issues and an inability to make decisions. Plaintiff's foreman and supervisors singled Plaintiff out for harassment, retaliation and discrimination based upon his age and mental and physical disability. Plaintiff had taken urine and hair analysis tests, and Defendant United refused to consider these results.

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND                                                            18

The tests confirmed that Plaintiff had high levels of toxic metals in his body, and his doctors concluded that these high levels of such metals, including mercury and manganese, caused an anxiety, depression and a bi-polar condition.

Based on these test results, Plaintiff has had ongoing intravenous treatments to flush the metals out of his system, and Plaintiff has had ongoing psychological treatment for the anxiety, depression and bi-polar condition. Plaintiff has complained to management about the harassment, retaliation and discrimination, and Plaintiff was placed on an extended leave of absence. The Foreman, Defendant Agvateesiri and Manager, Defendant Boland, miscalculated Plaintiff's approved sick leave and leave of absence, resulting in a loss of seniority and pay for Plaintiff. Plaintiff filed grievances related to these issues which relate back to 2004 and these claims are ongoing and continuous.

On June 30, 2006, Plaintiff met with a nurse at Defendant United to obtain medical clearance to return to work. Plaintiff's personal doctors had cleared him to return to work, full time, starting in July of 2006. Ms. Garner, the Nurse, stated that she could not make the decision to clear Plaintiff without a full clinical narrative. Plaintiff brought back a narrative on July 10, 2006. Ms. Garner refused to return Plaintiff back to work, stating that there was not enough detail.

On July 11, 2006, Plaintiff met with Dr. Hodges, the Head of Defendant United's Medical Department, to inform her that Plaintiff was starting his swing shift within the hour, that Plaintiff had clinical narratives from his doctors, and that Plaintiff had been

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND                                                                 19

cleared to return to work. Dr. Hodges responded that she was hesitant to have Plaintiff return to work unless Plaintiff agreed to a full urinalysis. Plaintiff agreed to the urinalysis if Dr. Hodges would promise to fill out a first report of injury, if the urinalysis showed a normal manganese level. This would prove that Plaintiff's claim of toxic exposure to metal poisoning was valid based upon previous tests taken in 2004.

Dr. Hodges agreed that if the urinalysis proved to be normal she would fill out the first report of injury. The urinalysis proved to be normal and the toxic exposure injury was confirmed. Dr. Hodges sent the first report of injury form to Plaintiff's Foreman, Defendant Agvateesiri. On July 15, 2006, the test results clearly showed that, compared to the November 11, 2003 toxic analysis, the manganese level was within reference. Plaintiff had suffered for two years from toxic metal poisoning. No one at Defendant Untied believed this condition existed or that it had serious medical consequences.

Plaintiff reported to Defendant Agvateesiri, the foreman, with an unrestricted authorization to return to work. Defendant Agvateesiri was unprepared and complained that he had no warning of Plaintiff's return. Defendant Agvateesiri refused to give Plaintiff a key card to punch in and out. Instead, Plaintiff was told to work while management determined how to get a key card from security. Plaintiff was forced to fill out handwritten exception forms to check in and out. Defendant Agvateesiri refused to sign and accept these forms, and he continued to refuse to fill out paperwork to release Plaintiff's key card. Further, Defendant Agvateesiri continued to refuse to give Plaintiff any payroll exception and Defendant United refused to pay Plaintiff.

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND                                                20

1     Defendant Agvateesiri claimed that no one was at the Human Resources
2
3     Department at 3:00 p.m. to correct this matter.  Defendant Agvateesiri typed out a
4     security authorization which security rejected because It was not an official form.
5     Consequently, Plaintiff was forced to input in the computer that he was receiving on the
6     job training to prove that he was at work.  Defendant Agvateesiri continued to refuse to
7
8     give Plaintiff a key card, reiterating that he was not ready for Plaintiff to return to work,
9     and asked that Plaintiff leave the premises, but promising that he would pay Plaintiff for
10    eight hours of work.

11    Plaintiff returned to work the next day and Defendant Agvateesiri continued to
12    harass, retaliate and discriminate against Plaintiff by refusing to sign a payroll exception
13
14    form.  Plaintiff filled the form out and Defendant Agvateesiri refused to sign.  Defendant
15    Agvateesiri claimed that he did not know how to obtain a key card to allow Plaintiff to
16    return to work.  Defendant Agvateesiri was one of the Supervisors who harassed,
17    retaliated and discriminated against Plaintiff throughout his disabilities since 2002, 2003
18    and 2004.  Because of Defendants Agvateesiri and Boland, management incorrectly
19    miscalculated Plaintiff's leave of absence status while Plaintiff was out on extended
20
21    medical leave.  Because of this miscalculation, Plaintiff lost over 1,017 hours of industrial
22    sick leave at $28.00 per hour, amounting to $28,476.00.  Further, Plaintiff lost benefits
23    and stock disbursement of approximately $22,000.00, and Plaintiff's seniority has been
24    affected.  There have been other damages, including loss of one-third (1/3) of Plaintiff's
25    pension plan.
26

27
28    COMPLAINT FOR EQUITABLE RELIEF
      AND DAMAGES: LARRY OILUND                                                    21

On July 13, 2006, Plaintiff requested a meeting with Defendant Boland to discuss these issues. Plaintiff complained that he was still refused a key card and that there were monies still owed to him. Plaintiff complained about the manner in which he was being treated by management and Defendant United's doctors. Plaintiff filed three petitions of grievances regarding these incidents. Plaintiff complained to Defendant Boland because the Company refused to return Plaintiff to work and then after receiving clearance, the Company refused to give Plaintiff a security card and refused to pay Plaintiff.

On July 17, 2006, Plaintiff met with Defendants Boland and Agvateesiri complaining about the additional monies owed. At this meeting Defendant Boland agreed to pay Plaintiff five weeks and two days vacation. On July 24, 2006 and July 25, 2006 Dr. Hodges reversed her clearance without reason. Dr. Hodges demanded that further documentation was necessary to return Plaintiff back to work, including the urinalysis report and a full clinical narrative.

Dr. Hodges' change of mind and refusal to return Plaintiff back to work caused further confusion and hostility. Defendant Agvateesiri demanded that Plaintiff bring in a clinical note before he could re-enter the premises. Plaintiff brought in the documentation on September 11, 2006 including the urine reports. Plaintiff was given an unrestricted return to work for a second time, however, the Payroll Department claimed that they lost the forms and were refusing to pay Plaintiff for any time that Plaintiff already worked in July 2006. Plaintiff complained to Defendant Boland about

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND                                                              22

the refusal to pay his wages and Defendant Boland claimed that he could not answer for Payroll.

Despite Plaintiff's urinalysis documentation, Dr. Hodges once again refused to allow Plaintiff to return to work without a full clinical narrative. Plaintiff was distressed over the ongoing harassment, retaliation and discrimination. Nevertheless, Plaintiff came in on September 11 and September 13, 2006 with test results and on September 14, 2006 Plaintiff submitted **another** clinical narrative for Dr. Hodges. Review. Defendant United continued to harass and retaliate and discriminate against Plaintiff. On September 23, 2006, Dr. Hodges demanded to speak with Plaintiff regarding the manganese results before approving Plaintiff to return to work.

These actions have caused Plaintiff to suffer further clinical depression and anxiety and on July 13, 2006 Plaintiff was out on a recommended medical leave for clinical depression. Dr. Hodges has continued to demand any and all clinical narratives from 2004, including prescriptions, covering any and all absences past and present, including *"proposed or expected treatment"*. Meanwhile, Plaintiff has been told by Defendant United's doctors and members of management that Plaintiff should consider working somewhere else.

Plaintiff has submitted narratives on the Defendant United's official form for the past several years. The clinical narratives on the Company forms have been accepted and signed by management in the past. However, Dr. Hodges now claims she does not have a full and complete copy of any and all clinical narrative forms submitted by

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND                                                                23

Plaintiff. Dr. Hodges continues to demand these forms be submitted to her again and that they include any *"proposed or expected future treatment"*.

Plaintiff has been harassed to such an extent that Plaintiff has suffered from another episode of clinical depression. Despite the fact that these forms have been signed and accepted in the past, Dr. Hodges has now refused to recognize the form and sign the form. Plaintiff complained to the Industrial Relations Representative, Defendant Rich, and met with other members of management about these actions. Plaintiff has been singled out, treated unfairly, harassed, retaliated against, and discriminated against for the past two years and this has been an ongoing, continuous and abusive employment relationship. Plaintiff has been told that Defendant United still does not have all of the paperwork Plaintiff has already submitted to Dr. Hodges and to management.

Plaintiff is currently out for clinical depression. Plaintiff has submitted, on a regular basis, the clinical narratives which have been required by the Company. Despite Plaintiff's submission of these records, Dr. Hodges has demanded that Plaintiff resubmit other clinical narratives that must be signed by a medical doctor. Plaintiff is currently being treated by Dr. Myrna Astillero, a Psychiatrist and medical doctor. Defendant United continues to send demands to Plaintiff to submit the clinical narratives which Plaintiff has already submitted, effectively duplicating the paperwork required by the Union Contract.

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND

24

A letter was sent on November 9, 2006 to Plaintiff from Defendant United stating that medical documentation from Plaintiff's treating physicians substantiating his absence from work since September 29, 2006 had not been received. This letter further stated that Dr. Hodges demanded medical documentation on October 25, 2006 for Plaintiff's continued absence from work. According to this letter, there was not sufficient information to authorize Plaintiff's continued absence. Plaintiff continues to be harassed by Defendant United because he has submitted clinical narratives signed by his psychologist, his psychiatrist, and his medical doctor for this absence.

Dr. Hodges' demand for information goes beyond Defendant United's policies and procedures. In the alternative, Plaintiff was directed to see Dr. Hodges by November 27, 2006 if a clinical narrative could not be provided. Plaintiff in fact provided a **third** clinical narrative filled out by Dr. Cervantes and the first copy of Plaintiff's most recent November 3, 2006 toxic report showing elevated mercury levels in his system. Those items were faxed to Defendant United.

Despite these clinical narratives, Dr. Hodges, Defendants Liataud and Agvateesiri threatened Plaintiff that he may be terminated for job abandonment. Under the Collective Bargaining Agreement, and State and federal laws, Plaintiff is allowed extended medical leave status. Plaintiff has telephoned the Company and has faxed information to them, including clinical narratives on October 24, 2006 and again on December 6, 2006. Despite Plaintiff's continued efforts, Defendant United continues to send memos, including one dated December 11, 2006 claiming that there was no

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND

25

personal record of a clinical narrative received by Defendant United concerning Plaintiff's

case. Again, the Company demanded that a clinical narrative be submitted by

December 26, 2006. These actions violate the Collective Bargaining Agreement related

to Section 11.2 et.seq. *"illness leave of absence"*. Further, these actions violate State

and federal statutes prohibiting harassment, retaliation and discrimination against an

employee for reasons based upon age and mental and physical disabilities. Plaintiff

continues to suffer both mental and physical disabilities directly related to his

employment relationship with Defendant United.

**WHEREFORE,** Plaintiff prays for damages as hereinafter set forth.

## FOURTH CAUSE OF ACTION
**(Employment Discrimination – Common Law –
Retaliation – Cal. Gov't Code Section 12940(f)-
Retaliation for Age, Mental and Physical Disabilities)
(Against ALL Defendants)**

27.    Plaintiff refers to and incorporates herein Paragraphs 20 through 22 of the

Second Cause of Action as though fully set forth herein at length.

28.    The public policy of the State of California, as set forth in state and federal

statutes and the California Constitution, is strongly opposed to discrimination in

employment including, but not limited to, denial of promotion and termination of

employment, based upon age, gender, sexual harassment, and mental and physical

disabilities.

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND                                    26

29.    Defendants' aforesaid conduct, set forth in Paragraph 22 of the Second

Cause of Action, violated the public policy of the State of California, and, as a result of

the said acts, Plaintiff suffered damages as aforesaid.

**WHEREFORE,** Plaintiff prays for damages as hereinafter set forth.

## FIFTH CAUSE OF ACTION
### (Breach of Contract)
### Against ALL Defendants
### United Airlines/World Headquarters; Glen F. Tilton;
### Barbara Liataud; Ron Rich; Jim Boland;
### Vinnie Agvateesiri and Andre St. Louis

30.    Plaintiff refers to and incorporates herein Paragraphs 1 through 10 of the

Preliminary Statements as though fully set forth herein at length.

31.    On or about March 10, 1986, Plaintiff was hired by Defendant United as

an Engine Parts Inspector for Defendant.

32.    The entire course of Plaintiff's employment with Defendant United there

existed an express and implied in fact employment contract between Plaintiff and

Defendants United Airlines/World Headquarters; Glen F. Tilton; Barbara Liataud; Ron

Rich, Jim Boland; Vinnie Agvateesiri and Andre St. Louis, which included, but was not

limited to, the following terms and conditions:

A.    Plaintiff would be able to continue his employment with Defendant

United indefinitely so long as he carried out his duties in a proper and competent

manner;

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND                                          27

B.     Plaintiff would be promoted so long as he carried out his duties in a proper and  competent manner and his employment evaluations were marked *"successfully met"* or *"exceeded his duties"*;

C.     Plaintiff would not be demoted, discharged or otherwise disciplined for other than good cause, with notice thereof;

D.     Defendants United Airlines/World Headquarters; Glen F. Tilton; Barbara Liataud; Ron Rich, Jim Boland; Vinnie Agvateesiri and Andre St. Louis would not evaluate Plaintiff's performance in an arbitrary, untrue or capricious manner;

E.     If grievances or complaints were lodged regarding Plaintiff's performance, he would be given written notice and a meaningful opportunity to respond;

F.     Plaintiff was harassed, retaliated and discriminated against because of his age and mental and physical disabilities  and for complaining about Defendant United.    Defendant United  constructively discharged Plaintiff on or about July 13, 2006.

33.     This total employment contract was evidenced by various written documents, oral representations to Plaintiff by Defendant's agents and employees, and the parties' entire course of conduct, including the following:

A.     Plaintiff is informed and believes and thereon alleges that portions of this contract are embodied in Defendant's written personnel policies and discipline procedures;

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND                                                28

B. There was an established policy with Defendant United known to Plaintiff and relied upon by Plaintiff that an employee such as Plaintiff, who had performed services as a good and faithful employee, would have secure employment tenure with Defendant; that an employee such as Plaintiff would be permitted to continue employment unless discharged for good and sufficient cause; that an employee such as Plaintiff with a grievance or complaint lodged against him would be provided a meaningful opportunity to respond; and that an employee such as Plaintiff would not be terminated, constructively discharged or disciplined without good and sufficient cause;

C. Again and again during his employment, Plaintiff was told by his superiors, orally and in writing, that he was doing a satisfactory job. As a result of the above representations, Plaintiff came reasonably to expect and to rely on the promise of job security. Such statements and acts by Defendants communicated to Plaintiff the idea that he had performed satisfactorily and that his job was secure. Plaintiff in good faith, relief upon these representations and believed them to be true.

34. Plaintiff's reliance on and belief in and acceptance in good faith of all the assurances, promises and representations as listed in Paragraphs 32 and 33 above, led Plaintiff throughout his employment with Defendant United to reasonably believe that his employment was secure and that there thereby existed a contract of continuous employment with Defendant United. As independent consideration for this contract of continuing employment, and as evidence of Plaintiff's reliance thereon, at the time he began working for Defendant United, Plaintiff gave up professional education and secure

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND                                                29

employment to accept employment with Defendant United.   As further independent

consideration, in addition to performing his regular duties as an employee of Defendant

United,   Plaintiff refrained from seeking any other employment and from time to time

turned down, gave up, and refrained from pursuing

other career opportunities.

35.    Plaintiff understood, and continued employment, and duly performed all of

the conditions of the contract to be performed by him.  Plaintiff has at all times been

ready, willing, and able to perform, and has offered to perform all the conditions of this

contract to be performed.

35.    Despite the representations made to Plaintiff and the reliance he placed

upon them, Defendant United failed to carry out its responsibilities under the terms of

the employment contract in the following ways:

A.    By subjecting Plaintiff to arbitrary, unfair and dishonest performance

evaluations;

B.    .By denying Plaintiff a meaningful opportunity to respond to

grievances filed against him;

C.    By  constructively discharging Plaintiff on or about July 13, 2006,

in spite of Plaintiff's satisfactory job performance and after complaints of discrimination

because of his age and mental and physical disabilities,  and complaints about

harassment and retaliation including the humiliating and demeaning manner in which he

had been treated.

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND                                                                    30

37.     Defendants United Airlines/World Headquarters; Glen F. Tilton; Barbara Liataud; Ron Rich, Jim Boland; Vinnie Agvateesiri and Andre St. Louis breached the aforementioned total employment contract by arbitrarily evaluating Plaintiff, denying him the opportunity to respond to grievances, and constructively discharging Plaintiff without regard to or in compliance with the requirements of the aforesaid agreement.

38.     Defendants United Airlines/World Headquarters; Glen F. Tilton; Barbara Liataud; Ron Rich, Jim Boland; Vinnie Agvateesiri and Andre St. Louis further breached the aforementioned total employment contract by engaging in a course of conduct with the intent and effect of making Plaintiff's work environment unreasonably burdensome and oppressive, and then constructively discharging Plaintiff.

39.     As a proximate result of Defendants' breach of the total employment contract, Plaintiff has suffered and continues to suffer substantial losses in earnings, bonuses, deferred compensation, and other employment benefits which he would have received had Defendants not breached said agreement, plus expenses incurred in obtaining substitute employment, all to his damage in an amount to be set forth according to proof.

**WHEREFORE**, Plaintiff prays for damages as hereinafter set forth.

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND

31

### SIXTH CAUSE OF ACTION
**(Breach of Covenant of
Good Faith and Fair Dealing)
Against ALL Defendants
United Airlines/World Headquarters; Glen F. Tilton;
Barbara Liataud; Ron Rich; Jim Boland;
Vinnie Agvateesiri and Andre St. Louis**

40.    Plaintiff refers to and incorporates herein Paragraphs 1 through 10 of the

Preliminary Statements as though set forth herein at length.

41.    The aforesaid employment contract contained an implied covenant of good

faith and fair dealing by which Defendant United, promised i.e. full cooperation to

Plaintiff and his performance under said employment contract, and to refrain from doing

any act which would prevent or impede Plaintiff from performing all the conditions of the

contract to be performed by him or any act that would prevent Plaintiff's enjoyment of

the fruits of said contract. Specifically, said covenant of good faith and fair dealing

required Defendant United, to fairly, honestly, and reasonably perform the terms and

conditions of the Agreement.

42.    Plaintiff, as an individual employee, with no legal representation or prior

experience in making such contracts as the one alleged herein, was in an inherently

unequal bargaining position in his dealings with Defendant United, an established

concern with millions of dollars in assets. In addition, once Plaintiff committed himself

to the above-stated contract, and took the reasonable actions alleged herein in reliance,

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND                                             32



Plaintiff was placed in a particularly vulnerable position because he had given up secure employment with his prior employer, and few openings exist in his field for persons of his experience and qualifications.  He had entrusted his entire livelihood to Defendant's willingness to perform its obligations under the contract, and risked suffering grave harm if Defendant failed to perform.  Defendant was aware of Plaintiff's vulnerability in this regard.

43.    Plaintiff is informed and believes that Defendant United breached its contract with Plaintiff without conducting any reasonable investigation concerning its obligations under said contract, without good or sufficient cause, for reasons extraneous to the contract, and for the purpose of frustrating Plaintiff's enjoyment of the benefits of the contract.  Accordingly, Defendant United breached its implied duty of good faith and fair dealing.  Further, Defendant United breached this covenant with regard to Plaintiff through its conduct in:

A.    Subjecting Plaintiff to differential standards of conduct from other employees;

B.    Denying Plaintiff the opportunity to respond to grievances filed against him;

C.    Evaluating Plaintiff's performance in an arbitrary, pretextual and untrue manner;

D.    Removing Plaintiff's responsibilities for reasons that were arbitrary, pretextual and untrue;

E.      Constructively discharging Plaintiff's employment without cause and for reasons that have nothing to do with legitimate business justification;

F.      Failing to follow its written personnel policies, or to apply the same personal practices to Plaintiff that it provides other employees.

44.     As a result of Defendant United's violations of said implied covenant of good faith and fair dealing, and the reprehensible and willful conduct toward Plaintiff, Plaintiff has suffered harm, as follows:

A.      The destruction of Plaintiff's valuable property interests, i.e., his prospect of continuing future employment with Defendant United and receipt of continued compensation;

B.      Impairment and damage to Plaintiff's good name by causing him to be constructively discharged with the untrue implication to all future prospective employers that he had been disciplined or constructively discharged for misconduct, incompetence, or unsatisfactory performance, and specifically that Plaintiff was a troublemaker said implication was and is completely untrue and totally without foundation; and

C.      Substantial losses in earnings, bonuses, deferred compensation, and other employment benefits and costs incurred in seeking and performing substitute employment.

45.     The primary motivation of Plaintiff in making the above-stated contract was to obtain secure employment, and terms and conditions of employment, which

would permit him growth and development at Defendant United, as well as all rights of substantial autonomy, freedom of action, and a supportive work environment.

46.    As a proximate result of Defendant United's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered, and continues to suffer losses in earning and other employment benefits, to his damage in an amount to be established at trial.

**WHEREFORE**, Plaintiff requests relief as hereinafter provided.


## SEVENTH CAUSE OF ACTION
**(Failure to Prevent Discrimination)**
**Against ALL Defendants**
**United Airlines/World Headquarters; Glen F. Tilton;**
**Barbara Liataud; Ron Rich; Jim Boland;**
**Vinnie Agvateesiri and Andre St. Louis**

47.    Plaintiff refers to and incorporates herein Paragraphs 1 through 10 of the Preliminary Statements as though fully set forth herein at length.

48.    Defendant United was bound by its statutory and common law duties to provide a discrimination-free and retaliation-free workplace. Defendant United, failed to take all reasonable steps necessary to prevent discrimination, harassment and retaliation from occurring, in violation of its common law and statutory duties, e.g., Cal. Gov't Code Sections 12940f) and (I).

49.    Defendants United Airlines/World Headquarters; Glen F. Tilton; Barbara Liataud; Ron Rich, Jim Boland; Vinnie Agvateesiri and Andre St. Louis, negligently

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND                                    35

trained, managed, or. supervised the employees who committed the discriminatory acts

alleged herein, negligently failed to take all reasonable steps necessary to prevent the

said acts, and negligently ratified the discriminatory acts committed. Specifically,

Defendant United failed to satisfactorily train Defendants United Airlines/World

Headquarters; Glen F. Tilton; Barbara Liataud; Ron Rich, Jim Boland; Vinnie Agvateesiri

and Andre St. Louis as to the proper handling of sensitive age and mental and physical

disabilities. Furthermore, Defendant United failed to take affirmative steps to correct the

discriminatory actions of Defendants United Airlines/World Headquarters; Glen F. Tilton;

Barbara Liataud; Ron Rich, Jim Boland; Vinnie Agvateesiri and Andre St. Louis following

the unlawful constructive discharge of Plaintiff.

50.    As a direct consequence of Defendants' United Airlines/World

Headquarters; Glen F. Tilton; Barbara Liataud; Ron Rich, Jim Boland; Vinnie Agvateesiri

and Andre St. Louis acts and omissions, Plaintiff has suffered damages as aforesaid.

**WHEREFORE**, Plaintiff prays for judgment as hereinafter set forth.

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND                                                    36

1

2

## EIGHTH CAUSE OF ACTION
### (Fraud and Deceit)
### Against ALL Defendants
United Airlines/World Headquarters; Glen F. Tilton;
Barbara Liataud; Ron Rich; Jim Boland;
Vinnie Agvateesiri and Andre St. Louis

51.    Plaintiff refers to and incorporates herein Paragraphs 1 through 10 of the Preliminary Statements and Paragraphs 30 through 39 of the Fifth Cause of Action, as though set forth herein.

52.    By the above-described acts incorporated herein, Defendants and each of them, individually and through their officers, partners, agents, and/or employees acting within the scope of their employment, falsely and fraudulently and with the intent to deceive and defraud Plaintiff, represented to Plaintiff that he would not be terminated as an employee of Defendant United as long as his work performance was satisfactory, specifically, at the time he was offered employment with Defendant United.   Plaintiff was assured by Defendant United that Plaintiff would have better job security with Defendant United,  than he did at his previous job. Defendant United  and DOES 1 through 20, repeated all the above assurances on several occasions during Plaintiff's employment with Defendant United.

53.    Said representations were false and Defendants United Airlines/World Headquarters; Glen F. Tilton; Barbara Liataud; Ron Rich, Jim Boland; Vinnie Agvateesiri and Andre St. Louis knew them to be false, and intended not to be bound by such

representations; in truth and in fact, Plaintiff was constructively discharged, even though his work performance was exemplary.

54.    Said representations were made for the purpose of inducing Plaintiff to enter into an employment contract with Defendant United, and thereafter for the purpose of inducing Plaintiff to continue performing said employment.

55.    Plaintiff was unaware of Defendants' United Airlines/World Headquarters; Glen F. Tilton; Barbara Liataud; Ron Rich, Jim Boland; Vinnie Agvateesiri and Andre St. Louis intention not to be bound by the said representations, and justifiably believed and relied upon them, and was thereby induced to give up his prior employment to work for Defendant United, and to give up, turn down, and refrain from seeking other more secure employment opportunities.

56.    Plaintiff did not discover the fraud and deceit practiced upon him, as aforesaid, until being given notice of alleged performance problems and subsequently Plaintiff was harassed, retaliated and discriminated against on an ongoing basis based solely upon his age and mental and physical disabilities.   Plaintiff would not with reasonable diligence have discovered the said fraud and deceit prior to that date in that Plaintiff was repeatedly misled by Defendants further by false representations, and prior to July 13, 2006.   Plaintiff had been given no indication that threats, termination, and ongoing harassment, retaliation and discrimination was likely because of his work performance, or for any other reason.

57.    As a proximate result of the representations of Defendants United Airlines/World Headquarters; Glen F. Tilton; Barbara Liataud; Ron Rich, Jim Boland; Vinnie Agvateesiri and Andre St. Louis to Plaintiff, as aforesaid, Plaintiff will suffer substantial losses incurred in seeking and performing his job duties and employment, and has caused Plaintiff to suffer and continue to suffer embarrassment, humiliations, and anguish, all to his damage in an amount according to proof.

58.    Defendants United Airlines/World Headquarters; Glen F. Tilton; Barbara Liataud; Ron Rich, Jim Boland; Vinnie Agvateesiri and Andre St. Louis committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights.  Plaintiff thus is entitled to recover punitive damages from Defendants, and each of them, in an amount according to proof.

**WHEREFORE**, Plaintiff prays for damages as hereinafter set forth.

### NINTH CAUSE OF ACTION
**(Harassment – Cal. Gov't Code Section 12940)**
**Against ALL Defendants**
**United Airlines/World Headquarters; Glen F. Tilton;**
**Barbara Liataud; Ron Rich; Jim Boland;**
**Vinnie Agvateesiri and Andre St. Louis**

59.    Plaintiff refers to and incorporates herein Paragraphs 1 through 10 of the Preliminary Statements as though fully set forth herein at length.

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND                                                          39

60.    Plaintiff was at all times material hereto an employee covered by California Government Code Section 12940(h)(1) prohibiting harassment based upon age and mental and physical disabilities.

61.    Defendant United was at all times material hereto an employer within the meaning of California Government Code Section 12926(c) and, as such, barred from harassing an employee based upon age and mental and physical disabilities.

62.    Defendants United Airlines/World Headquarters; Glen F. Tilton; Barbara Liataud; Ron Rich, Jim Boland; Vinnie Agvateesiri and Andre St. Louis were at all times material hereto managers within the meaning of California Government Code Section 12940(h)(1 prohibited from harassing an employee based upon age and mental and physical disabilities.

63.    Defendants' United Airlines/World Headquarters; Glen F. Tilton; Barbara Liataud; Ron Rich, Jim Boland; Vinnie Agvateesiri and Andre St. Louis harassment of Plaintiff included, but was not limited to crude, hostile, derogatory and disparaging remarks against Plaintiff's age and mental and physical disabilities.

64.    Plaintiff made numerous complaints regarding the discrimination to Defendants United Airlines/World Headquarters; Glen F. Tilton; Barbara Liataud; Ron Rich, Jim Boland; Vinnie Agvateesiri and Andre St. Louis, but no steps were taken to prevent this harassment.

65.    Plaintiff filed timely Right to Sue Complaints with the California Department of Fair Employment and Housing, and received Notices dated May 24, 2007 of the right

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES: LARRY OILUND                                                          40

1   to sue in a California Superior Court pursuant to Cal. Gov't Code Section 12965(b)
2
3   permitting Plaintiff to bring this action.  Said Complaints and Right to Sue Letters are
4   attached as **Exhibit "A"** and incorporated herein by reference.

5       66.     As a proximate result of Defendants' United Airlines/World Headquarters;
6   Glen F. Tilton; Barbara Liataud; Ron Rich, Jim Boland; Vinnie Agvateesiri and Andre St.
7
    Louis harassment of Plaintiff, Plaintiff has suffered and continues to suffer
8
9   embarrassment, humiliation and mental anguish all to his damage in an amount
10  according to proof.

11      67.     Defendant United committed the acts alleged herein maliciously,
12  fraudulently and oppressively with the wrongful intention of injuring Plaintiff, from an
13
    improper and evil motive amounting to malice and in conscious disregard of Plaintiff's
14
15  rights.  Plaintiff thus is entitled to recover punitive damages from Defendants, and each
16  of them, in an amount to be determined according to proof.

17      68.     As a result of Defendants' United Airlines/World Headquarters; Glen F.
18  Tilton; Barbara Liataud; Ron Rich, Jim Boland; Vinnie Agvateesiri and Andre St. Louis
19
    harassment, and Defendants' United Airlines/World Headquarters; Glen F. Tilton;
20
21  Barbara Liataud; Ron Rich, Jim Boland; Vinnie Agvateesiri and Andre St. Louis failure to
22  take immediate and appropriate corrective action, Plaintiff is entitled to reasonable
23  attorney's fees and costs of suit.

24      **WHEREFORE**, Plaintiff requests relief as follows:
25
26
27
    COMPLAINT FOR EQUITABLE RELIEF
28  AND DAMAGES: LARRY OILUND                                                    41

1.    Injunctive relief requiring Defendants United Airlines/World Headquarters; Glen F. Tilton; Barbara Liataud; Ron Rich, Jim Boland; Vinnie Agvateesiri and Andre St. Louis to refrain from further discriminatory acts and remedying past discrimination;

2.    Actual damages in a sum to be ascertained at trial;

3.    General damages in an amount within the jurisdiction of this Court;

4.    Exemplary and punitive damages in an amount within the jurisdiction of this Court;

5.    For reinstatement of Plaintiff to the position from which he was wrongfully harassed, retaliated and discriminated against or a comparable position with Defendant United, and all benefits attendant thereto that would have been afforded Plaintiff but for said discrimination;

6.    For a permanent injunction enjoining Defendants, their agents, successors, and employees and those acting in concert with them for engaging in each of the unlawful practices, policies, usages and customs set forth herein;

1

2

3    7.    Costs of suit, including reasonable attorney's fees;

4    8.    Prejudgment interest; and

5    9.    Such relief as the Court deems just and proper.

6

7

8    **PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY**

9

10    Dated: May 17, 2008

11

12    _____

     Charles J. Katz
13    **Attorney for Plaintiff**
     Larry Oilund
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    COMPLAINT FOR EQUITABLE RELIEF
     AND DAMAGES: LARRY OILUND                                    43

# EXHIBIT "A"

TATE OF CALIFORNIA - STATE AND CONSUMER SERVICE AGENCY

ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2941 TTY (800) 700-2320 Fax (510) 622-2951
www.dfeh.ca.gov



May 24, 2007

Elladene Lee Katz
Attorney

MAY 29 2007

327 N San Mateo Dr
San Mateo, CA 94401

RE: E200607M1504-00-apc
OILUND/UNITED AIRLINES/WORLD HEADQUARTERS

Dear Elladene Lee Katz:

# NOTICE TO COMPLAINANT'S ATTORNEY

Enclosed is a copy of your client's complaint of discrimination filed with the
Department of Fair Employment and Housing on 5/22/2007 pursuant to the
California Fair Employment and Housing Act, Government Code section 12900 et
seq. Also enclosed is a copy of your client's Notice of Case Closure, which
constitutes your client's right-to-sue notice.

Please note that under Government Code section 12962, you are responsible for
service of the complaint on respondent(s). You should also enclose a copy of the
Notice of Case Closure along with the complaint. These documents must be
served within 60 days of the filing date of the complaint. Government Code
section 12962(b) further provides that complaints must be served either personally
or by certified mail with return receipt requested.

For additional information, please read the enclosed Notice of Case Closure that
explains the conditions for filing a private lawsuit in the State of California.

Sincerely,
Allan H. Pederson
District Administrator

Enclosure:    Complaint of Discrimination
              Notice of Case Closure

DFEH-200-06 (01/05)

STATE OF CALIFORNIA - STATE AND CONSUMER   ES    ICY    ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2941 TTY (800) 700-2320 Fax (510) 622-2951
www.dfeh.ca.gov



May 24, 2007

Elladene Lee Katz
Attorney

327 N San Mateo Dr
San Mateo, CA 94401

RE:    E200607M1504-00-apc
       OILUND/UNITED AIRLINES/WORLD HEADQUARTERS

Dear Elladene Lee Katz:

### NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective
May 22, 2007 because an immediate right-to-sue notice was requested. DFEH will
take no further action on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the
Fair Employment and Housing Act against the person, employer, labor organization
or employment agency named in the above-referenced complaint. The civil action
must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment
Opportunity Commission (EEOC) must be visited to file a complaint within 30 days
of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged
discriminatory act, whichever is earlier.

 

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless
the case is still open at the end of the three-year period.

Sincerely,

Allan H. Pederson
District Administrator

cc:    Case File

H R Department
UNITED AIRLINES/WORLD HEADQUARTERS
1200 East Algonquin Rd
Elk Grove Township, IL  6007

# RIGHT-TO-SUE COMPLAINT INFORMATION SHEET

DFEH needs a separate signed complaint for each employer, person, labor organization, employment agency, apprenticeship committee, state or local government agency you wish to file against. If you are filing against both a company and an individual(s), please complete separate complaint forms naming the company or an individual in the appropriate area.

Please complete the following so that DFEH can process your complaint and for DFEH for statistical purposes, and return with your signed complaint(s)

YOUR RACE/ETHNICITY (Check one)
___ African-American
___ African - Other
___ Asian/Pacific Islander (specify) _____
XX Caucasian (Non-Hispanic)
___ Native American
___ Hispanic (specify) _____

YOUR PRIMARY LANGUAGE (specify)
English

YOUR AGE:  46

IF FILING BECAUSE OF YOUR NATIONAL ORIGIN/ANCESTRY,
YOUR NATIONAL ORIGIN/ANCESTRY (specify)

_____

IF FILING BECAUSE OF DISABILITY,
YOUR DISABILITY:
___ AIDS
XX Blood/Circulation
XX Brain/Nerves/Muscles
XX Digestive/Urinary/Reproduction
XX Hearing
XX Heart
XX Limbs (Arms/Legs)
XX Mental
___ Sight
XX Speech/Respiratory
XX Spinal/Back

IF FILING BECAUSE OF MARITAL STATUS,
YOUR MARITAL STATUS: (Check one)
___ Cohabitation
___ Divorced
___ Married
___ Single

IF FILING BECAUSE OF RELIGION,
YOUR RELIGION: (specify)

_____

IF FILING BECAUSE OF SEX, THE REASON:
___ Harassment
___ Orientation
___ Pregnancy
___ Denied Right to Wear Pants
___ Other Allegations (List) _____

YOUR GENDER: ___ Female   XX Male

YOUR OCCUPATION:
___ Clerical
___ Craft
___ Equipment Operator
___ Laborer
___ Manager
___ Paraprofessional
___ Professional
___ Sales
___ Service
___ Supervisor
XX Technician

HOW YOU HEARD ABOUT DFEH:
XX Attorney
___ Bus/BART Advertisement
___ Community Organization
___ EEOC
___ EDD
___ Friend
___ Human Relations Commission
___ Labor Standards Enforcement
___ Local Government Agency
___ Poster
___ Prior Contact with DFEH
___ Radio
___ Telephone Book
___ TV
___ DFEH Web Site

DO YOU HAVE AN ATTORNEY WHO HAS AGREED
TO REPRESENT YOU ON YOUR EMPLOYMENT
DISCRIMINATION CLAIMS IN COURT? IF YOU CHECK
"YES", YOU WILL BE RESPONSIBLE FOR HAVING
YOUR ATTORNEY SERVE THIS DFEH COMPLAINT.
X Yes        ___ No

PLEASE PROVIDE YOUR ATTORNEY'S NAME,
ADDRESS AND PHONE NUMBER:
Elladene Lee Katz, Esq. 650.348.8078
327 N.SM Drive, #9, San Mateo, Ca. 94401

_____

Your Signature                           4/19/07
LARRY OILUND                             Date

**INSERT #1**

I have been harassed, discriminated against, and retaliated against for reasons based upon my **age, mental and physical disabilities.**

**INSERT #2**

**United Airlines/World Headquarters; Glen F. Tilton, CEO; Barbara Liataud; Ron Rich, Industrial Relations Representative; Jim Boland, Manager; Vinnie Aguateesiri, Foreman; Andre St. Louis**

**INSERT #3**

I have been harassed, retaliated against and discriminated against for reasons based upon my **age, mental and physical disabilities.**

**INSERT #4**

I was first hired by United Airlines on March 10, 1986 and my most recent position was Engine Parts Inspector. Over this extensive employment relationship with United Airlines, I have suffered from specific injuries on the job, including lower and upper back injuries in 1988 and 1998 respectively. The most recent industrial claims are as follows:   a stress claim which was filed regarding an incident on May 21, 2004, a toxic exposure claim filed in February 2004 and a hearing loss claim which was both denied and accepted stemming from injury in 2003. Unfortunately, United Airlines' policy regarding Worker's Compensation claims has been to single the employee out, and create an adversarial relationship, threatening termination. These wrongful actions have given rise to my claims of harassment, retaliation and discrimination for reasons based upon my age, mental and physical disabilities.

I have worked with steel, tin, copper, magnesium and aluminum and in October of 2002 I suffered from symptoms of toxic exposure. After taking tests regarding urinalysis and hair analysis it was determined that there were toxic levels of metal in my body. I filed a claim of toxic poisoning in February of 2004.

In 2003, I was experiencing a serious hearing loss. Initially, after I filed a claim, United Airlines representative denied this claim and then accepted it on the same dates signed by the same person. United Airlines intentionally tried to prevent me from taking a hearing test. However, I discovered other crew members were tested and when I was tested, I had significant hearing loss. I complained that the work area was too noisy because the grit blaster was placed near the employees, and that this level violated State laws. I notified OSHA and they conducted a decibel level test. However, at the time that OSHA came out to

RIGHT TO SUE:
LARRY OILUND                                                                                    1.

 

conduct the test, the machines were not in use.    Other employees and I continued to complain to OSHA. United Airlines later built a wall between the employees and the grid blaster. However, by this time, I was perceived as a *"trouble maker"* by supervisors and management. This hearing condition could also be related to toxic metal levels and mercury in particular.

In May of 2004, my claim for toxic exposure poisoning was denied and I became increasingly depressed because of management's refusal to acknowledge my severe condition of toxic poisoning and because management had become hostile towards me. Further, United Airlines conducted a water survey which resulted in a finding of arsenic content in the water supply. This survey was conducted by outside vendor in 2003 and resulted in bottled water being used in the shop. At this same time, I took samples where the outside vendor had disturbed known asbestos locations. I complained to management and they ridiculed me. I had the samples tested and it was proven to be asbestos. Consequently, I was considered by management to be a trouble maker and a malingerer. My stress claim which was filed on May 28, 2004 was denied. Further, on August 11, 2004 my claim for toxic exposure was denied.

In May of 2004, when I went out for a disability leave based upon stress, I was suffering from eating and sleeping issues and an inability to make decisions. My foreman and supervisors singled me out for harassment, retaliation and discrimination based upon this physical disability. I had taken urine and hair analysis tests, and United Airlines refused to consider these results. The tests confirmed that I had high levels of toxic metals in my body, and my doctors concluded that these high levels of such metals, including mercury and manganese, caused an anxiety, depression and a bi-polar condition.

Based on these test results, I have had ongoing intravenous treatments to flush the metals out of my system, and I have had ongoing psychological treatment for the anxiety, depression and bi-polar condition.    I have complained to management about the harassment, retaliation and discrimination, and I was placed on an extended leave of absence. The foreman, Vinnie Agvateesiri and Manager, Jim Boland, miscalculated my approved sick leave and leave of absence, resulting in a loss of seniority and pay for me.    I filed grievances related to these issues which relate back to 2004 and these claims are ongoing and continuous.

On June 30, 2006, I met with a United Airlines nurse to obtain medical clearance to return to work. My personal doctors had cleared me to return to work, full time, starting in July of 2006. Ms. Garner, the nurse, stated that she could not make the decision to clear me without a full clinical narrative. I brought back a

 

narrative on July 10, 2006. Ms. Garner refused to return me back to work, stating that there was not enough detail.

On July 11, 2006, I met with Dr. Hodges, the Head of United Airlines' Medical Department, to inform her that I was starting my swing shift within the hour, that I had clinical narratives from my doctors, and that I had been cleared to return to work. Dr. Hodges responded that she was hesitant to have me return to work unless I agreed to a full urinalysis. I agreed to the urinalysis if Dr. Hodges would promise to fill out a first report of injury, if the urinalysis showed a normal manganese level. This would prove that my claim of toxic exposure to metal poisoning was valid based upon previous tests taken in 2004.

Dr. Hodges agreed that if the urinalysis proved to be normal she would fill out the first report of injury. The urinalysis proved to be normal and the toxic exposure injury was confirmed. Dr. Hodges sent the first report of injury form to my foreman, Vinnie Agvateesiri. On July 15, 2006, the test results clearly showed that, compared to the November 11, 2003 toxic analysis, the manganese level was within reference. I had suffered for two years from toxic metal poisoning. No one at United Airlines believed this condition existed or that it had serious medical consequences.

I reported to Vinnie Agvateesiri, the Foreman, with an unrestricted authorization to return to work. Mr. Agvateesiri was unprepared and complained that he had no warning of my return. Mr. Agvateesiri refused to give me a key card to punch in and out. Instead, I was told to work while management determined how to get a key card from security. I was forced to fill out handwritten exception forms to check in and out. Mr. Agvateesiri refused to sign and accept these forms, and he continued to refuse to fill out paperwork to release my key card. Further, Mr. Agvateesiri continued to refuse to give me any payroll exception and United Airlines refused to pay me.

Mr. Agvateesiri claimed that no one was at the Human Resources Department at 3:00 p.m. to correct this matter. He typed out a security authorization which security rejected because it was not an official form. Consequently, I was forced to input in the computer that I was receiving on the job training to prove that I was at work. Mr. Agvateesiri continued to refuse to give me a key card, reiterating that he was not ready for me to return to work, and asked that I leave the premises, but promising that he would pay me for eight hours of work.

I returned to work the next day and Mr. Agvateesiri continued to harass, retaliate, and discriminate against me by refusing to sign a payroll exception form. I filled the form out and Mr. Agvateesiri refused to sign. Mr. Agvateesiri claimed that he did not know how to obtain a key card to allow me to return to

# * * EMPLOYMENT *

**COMPLAINT OF DISCRIMINATION UNDER**  **DFEH #** __0607M1504-00-apc__
**THE PROVISIONS OF THE CALIFORNIA**
**FAIR EMPLOYMENT AND HOUSING ACT**

DFEH USE ONLY

---

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME (indicate Mr. or Ms.)
Larry Oilund

TELEPHONE NUMBER (INCLUDE AREA CODE)

ADDRESS
211 San Luis Avenue

CITY/STATE/ZIP
San Bruno, Ca  94066

COUNTY

COUNTY CODE

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP
COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME

NAME
UNITED AIRLINES / WORLD HEADQUARTERS

TELEPHONE NUMBER (Include Area Code)

ADDRESS
1200 East Algonquin Road

DFEH USE ONLY

CITY/STATE/ZIP
Elk Grove Township, Ill  60007

COUNTY

COUNTY CODE

NO. OF EMPLOYEES/MEMBERS (if known)

DATE MOST RECENT OR CONTINUING DISCRIMINATION
TOOK PLACE (month, day, and year)

RESPONDENT CODE

THE PARTICULARS ARE:

On __July 10, 2007__   I was ___ fired
        XX  laid off
        ___ demoted
        XX  harassed
        ___ genetic characteristics testing
        ___ forced to quit

XX  denied employment
___ denied promotion
___ denied transfer
XX  denied accommodation
___ impermissible non-job-related inquiry
XX  other (specify)  INSERT #1

XX  denied family or medical leave
___ denied pregnancy leave
___ denied equal pay
___ denied right to wear pants
___ denied pregnancy accommodation

by __INSERT #2__
   Name of Person                          Job Title (supervisor/manager/personnel director/etc.)

because of my  ___ sex
               XX  age
               XX  religion
               ___ race/color
               ___ national origin/ancestry
               ___ marital status
               ___ sexual orientation
               ___ association
XX  physical disability    ___ cancer
XX  mental disability      ___ genetic characteristic
XX  other (specify)  INSERT #3

XX  (Circle one) filing;
protesting; participating in
investigation (retaliation for)

the reason given by _____
                         Name of Person and Job Title

Was because of _____
[please state
what you believe          INSERT #4
to be reason(s)]

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information, _____ matters I believe it to be true.

APR 1 9 2007
Dated

COMPLAINANT'S SIGNATURE
LARRY OILUND

At  San Mateo, Ca
        City

**RECEIVED**

DATE FILED:

DFEH-300-03 (01/05)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

Department of Fair
Employment and Housing
Oakland District Office

Legal
Solutions
Q Plus

STATE OF CALIFORNIA
LS-DFEH1

 

work. Mr. Agvateesiri was one of the Supervisors who harassed, retaliated and discriminated against me throughout my disabilities since 2002, 2003 and 2004. Because of Mr. Agvateesiri and Mr. Boland, management incorrectly miscalculated my leave of absence status while I was out on extended medical leave. Because of this miscalculation, I lost over 1,017 hours of industrial sick leave at $28.00 per hour, amounting to $28,476.00. Further, I lost benefits and stock disbursement of approximately $22,000.00, and my seniority has been affected. There have been other damages, including loss of 1/3 of my pension plan.

On July 13, 2006, I requested a meeting with Mr. Boland to discuss these issues. I complained that I was still refused a key card and that there were monies still owed to me. I complained about the manner in which I was being treated by management and United Airlines' doctors.' I filed three petitions of grievances regarding these incidents. I complained to Mr. Boland because the Company refused to return me to work and then after receiving clearance, the Company refused to give me a security card and refused to pay me.

On July 17, 2006 I met with Mr. Boland and Mr. Agvateesiri complaining about the additional monies owed. At this meeting Mr. Boland agreed to pay me five weeks and two days vacation. On July 24, 2006 and July 25, 2006 Dr. Hodges reversed her clearance without reason. Dr. Hodges demanded that further documentation was necessary to return me back to work, including the urinalysis report and a full clinical narrative.

Dr. Hodges' change of mind and refusal to return me back to work caused further confusion and hostility. Mr. Agvateesiri demanded that I bring in a clinical note before I could re-enter the premises. I brought in the documentation on September 11, 2006 including the urine reports. I was given an unrestricted return to work for a second time, however, the Payroll' Department claimed that they lost the forms and were refusing to pay me for any time that I already worked in July 2006. I complained to Mr. Boland about the refusal to pay my wages and Mr. Boland claimed that he could not answer for Payroll.

Despite my urinalysis documentation, Dr. Hodges once again refused to allow me to return to work without a full clinical narrative. I was distressed over the ongoing harassment, retaliation and discrimination. Nevertheless, I came in on September 11 and September 13, 2006 with test results and on September 14, 2006 I submitted another clinical narrative for Dr. Hodges' review. United Airlines continued to harass and retaliate and discriminate against me. On September 23, 2006, Dr. Hodges demanded to speak with me regarding the manganese results before approving me to return to work.



These actions have caused me to suffer further clinical depression and anxiety and on July 13, 2006 I was out on a recommended medical leave for clinical depression. Dr. Hodges has continued to demand any and all clinical narratives from 2004, including prescriptions, covering any and all absences past and present, including *"proposed or expected treatment"*. Meanwhile, I have been told by United Airlines' doctors and members of management that I should consider working somewhere else.

I have submitted narratives on the United Airlines' official form for the past several years. The clinical narratives on the Company forms have been accepted and signed by management in the past. However, Dr. Hodges now claims she does not have a full and complete copy of any and all clinical narrative forms submitted by me. Dr. Hodges continues to demand these forms be submitted to her again and that they include any *"proposed or expected future treatment"*.

I have been harassed to such an extent that I have suffered from another episode of clinical depression. Despite the fact that these forms have been signed and accepted in the past, Dr. Hodges has now refused to recognize the form and sign the form. I complained to the Industrial Relations Representative, Ron Rich, and met with other members of management about these actions. I have been singled out, treated unfairly, harassed, retaliated against, and discriminated against for the past two years and this has been an ongoing, continuous and abusive employment relationship. I have been told that United still does not have all of the paperwork I have already submitted to Dr. Hodges and to management.

I am currently out for clinical depression. I have submitted, on a regular basis, the clinical narratives which have been required by the Company. Despite my submission of these records, Dr. Hodges has demanded that I resubmit other clinical narratives that must be signed by a medical doctor. I am currently being treated by Dr. Myrna Astillero, a Psychiatrist and medical doctor. United Airlines continues to send demands to me to submit the clinical narratives which I have already submitted, effectively duplicating the paperwork required by Union Contract.

A letter was sent on November 9, 2006 to me from United Airlines stating that medical documentation from my treating physicians substantiating my absence from work since September 29, 2006 had not been received. This letter further stated that Dr. Hodges demanded medical documentation on October 25, 2006 for my continued absence from work. According to this letter, there was not sufficient information to authorize my continued absence. I continue to be

RIGHT TO SUE:
LARRY OILUND                                                              5

 

harassed by United Airlines because he has submitted clinical narratives signed by my psychologist, my psychiatrist, and my medical doctor for this absence.

Dr. Hodges' demand for information goes beyond United Airlines' policies and procedures.    In the alternative, I was directed to see Dr. Hodges by November 27, 2006 if a clinical narrative could not be provided.    I in fact provided a third clinical narrative filled out by Dr. Cervantes and the first copy of my most recent November 3, 2006 toxic report showing elevated mercury levels in my system. Those items were faxed to United Airlines.

Despite these clinical narratives, Dr. Hodges, Barbara Liautaud and Mr. Agvateesiri threatened me that I may be terminated for job abandonment. Under the Collective Bargaining Agreement, and state and federal laws, I am allowed extended medical leave status.    I have telephoned the Company and have faxed information to them, including clinical narratives on October 24, 2006 and again on December 6, 2006.  Despite my continued efforts, United Airlines continues to send memos, including one dated December 11, 2006 claiming that there was no personal record of a clinical narrative received by United Airlines concerning my case.  Again, the Company demanded that a clinical narrative be submitted by December 26, 2006.  These actions violate the Collective Bargaining Agreement related to Section 11.2 et.seq. "*illness leave of absence*".  Further, these actions violate State and federal statutes prohibiting harassment, retaliation and discrimination against an employee for reasons based upon physical disabilities.

I continue to suffer both mental and physical disabilities directly related to my +employment relationship with United Airlines.



STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY                                 ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2941  TTY (800) 700-2320  Fax (510) 622-2951
www.dfeh.ca.gov

May 24, 2007

Elladene Lee Katz
Attorney



327 N San Mateo Dr
San Mateo, CA 94401

RE: E200607M1504-01-apc
    OILUND/TILTON, GLEN, As an individual

Dear Elladene Lee Katz:

## NOTICE TO COMPLAINANT'S ATTORNEY

Enclosed is a copy of your client's complaint of discrimination filed with the Department of Fair Employment and Housing on 5/22/2007 pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also enclosed is a copy of your client's Notice of Case Closure, which constitutes your client's right-to-sue notice.

Please note that under Government Code section 12962, you are responsible for **service of the complaint** on respondent(s). You should also enclose a copy of the Notice of Case Closure along with the complaint. These documents must be served within **60 days** of the filing date of the complaint. Government Code section 12962(b) further provides that complaints must be served either personally or by certified mail with return receipt requested.

For additional information, please read the enclosed Notice of Case Closure that explains the conditions for filing a private lawsuit in the State of California.

Sincerely,
Allan H. Pederson   *Allan H. Pederson*
District Administrator


Enclosure:   Complaint of Discrimination
             Notice of Case Closure

DFEH-200-06 (01/05)

STATE OF CALIFORNIA - STATE AND CONSUMER  ES    ICY                                                   ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

1515 Clay Street, Suite 701, Oakland, CA  94612
(510) 622-2941  TTY (800) 700-2320  Fax (510) 622-2951
www.dfeh.ca.gov



May 24, 2007


Elladene Lee Katz
Attorney

327 N San Mateo Dr
San Mateo, CA  94401

RE:    E200607M1504-01-apc
       OILUND/TILTON, GLEN, As an individual

Dear Elladene Lee Katz:

### NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective
May 22, 2007 because an immediate right-to-sue notice was requested.  DFEH will
take no further action on the complaint.

This letter is also the Right-To-Sue Notice.  According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the
Fair Employment and Housing Act against the person, employer, labor organization
or employment agency named in the above-referenced complaint.  The civil action
must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment
Opportunity Commission (EEOC) must be visited to file a complaint within 30 days
of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged
discriminatory act, whichever is earlier.



Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless
the case is still open at the end of the three-year period.

Sincerely, *Pederson*

Allan H. Pederson
District Administrator

cc:    Case File

H R Department
UNITED AIRLINES/WORLD HEADQUARTERS
1200 East Algonquin Rd
Elk Grove Township, IL  6007

DFEH-200-43 (06/06)

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

DFEH # E-07M1504-01-apc
DFEH USE ONLY

CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

| YOUR NAME (indicate Mr. or Ms.) | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|
| Larry Oilund | |

ADDRESS
211 San Luis Avenue

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| San Bruno, Ca 94066 | | |

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME.

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| Glen F. Tilton, CEO -- United Airlines | |

| ADDRESS | DFEH USE ONLY |
|---|---|
| Box 66100 | |

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| Chicago, Ill 60666 | | |

| NO. OF EMPLOYEES/MEMBERS (If known) | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year) | RESPONDENT CODE |
|---|---|---|

THE PARTICULARS ARE:

On __July 10, 2007__ I was ___ fired
XX laid off
___ demoted
XX harassed
___ genetic characteristics testing
___ forced to quit

XX denied employment
___ denied promotion
___ denied transfer
XX denied accommodation
___ impermissible non-job-related inquiry
XX other (specify) Insert #1

XX denied family or medical leave
___ denied pregnancy leave
___ denied equal pay
___ denied right to wear pants
___ denied pregnancy accommodation

by ___Insert #2___
Name of Person          Job Title (supervisor/manager/personnel director/etc.)

because of my ___ sex
XX age
___ religion
XX race/color

___ national origin/ancestry
___ marital status
___ sexual orientation
___ association

XX physical disability
XX mental disability
XX other (specify) Insert #3

___ cancer
___ genetic characteristic

XX (Circle one) filing, protesting, participating in investigation (retaliation for)

the reason given by _____
Name of Person and Job Title

Was because of
please state        Insert #4
what you believe
to be reason(s)]

wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated ___APR 1 9 2007___

San Mateo, Ca
City

RECEIVED

DATE FILED

Department of Fair
Employment and Housing
Oakland District Office

COMPLAINANT'S SIGNATURE

LARRY OILUND



EH-300-03 (01/05)
PARTMENT OF FAIR EMPLOYMENT AND HOUSING

Legal
Solutions
& Plus

STATE OF CALIFORNIA
LS-DFEH1

# RIG   D-SUE COMPLAINT INFORMATION SHEET

DFEH needs a separate signed complaint for each employer, person, labor organization, employment agency, apprenticeship committee, state or local government agency you wish to file against. If you are filing against both a company and an individual(s), please complete separate complaint forms naming the company or an individual in the appropriate area.

Please complete the following so that DFEH can process your complaint and for DFEH for statistical purposes, and return with your signed complaint(s):

YOUR RACE/ETHNICITY (Check one)
___ African-American
___ African - Other
___ Asian/Pacific Islander (specify) _____
XX  Caucasian (Non-Hispanic)
___ Native American
___ Hispanic (specify) _____

YOUR PRIMARY LANGUAGE (specify)
English

YOUR AGE:  46

IF FILING BECAUSE OF YOUR NATIONAL ORIGIN/ANCESTRY,
YOUR NATIONAL ORIGIN/ANCESTRY (specify):

_____

IF FILING BECAUSE OF DISABILITY,
YOUR DISABILITY:
___ AIDS
XX  Blood/Circulation
XX  Brain/Nerves/Muscles
XX  Digestive/Urinary/Reproduction
XX  Hearing
XX  Heart
XX  Limbs (Arms/Legs)
XX  Mental
___ Sight
XX  Speech/Respiratory
XX  Spinal/Back

IF FILING BECAUSE OF MARITAL STATUS,
YOUR MARITAL STATUS: (Check one)
___ Cohabitation
___ Divorced
___ Married
___ Single

IF FILING BECAUSE OF RELIGION,
YOUR RELIGION: (specify)

_____

IF FILING BECAUSE OF SEX, THE REASON:
___ Harassment
___ Orientation
___ Pregnancy
___ Denied Right to Wear Pants
___ Other Allegations (List) _____

YOUR GENDER: ___ Female   XX Male

YOUR OCCUPATION:
___ Clerical
___ Craft
___ Equipment Operator
___ Laborer
___ Manager
___ Paraprofessional
___ Professional
___ Sales
___ Service
___ Supervisor
XX  Technician

HOW YOU HEARD ABOUT DFEH:
XX  Attorney
___ Bus/BART Advertisement
___ Community Organization
___ EEOC
___ EDD
___ Friend
___ Human Relations Commission
___ Labor Standards Enforcement
___ Local Government Agency
___ Poster
___ Prior Contact with DFEH
___ Radio
___ Telephone Book
___ TV
___ DFEH Web Site

DO YOU HAVE AN ATTORNEY WHO HAS AGREED
TO REPRESENT YOU ON YOUR EMPLOYMENT
DISCRIMINATION CLAIMS IN COURT? IF YOU CHECK
"YES", YOU WILL BE RESPONSIBLE FOR HAVING
YOUR ATTORNEY SERVE THIS DFEH COMPLAINT.

X  Yes    ___ No

PLEASE PROVIDE YOUR ATTORNEY'S NAME,
ADDRESS AND PHONE NUMBER:
Elladene Lee Katz, Esq. 650.348.8078
327 N.SM Drive, #9, San Mateo, Ca  94401

_____

Your Signature                          4/19/07
LARRY OILUND                               Date

Legal

DFEH-300-03-1 (01/05)
Department of Fair Employment and Housing
State of California

 

### INSERT #1

I have been harassed, discriminated against, and retaliated against for reasons based upon my **age, mental and physical disabilities.**

### INSERT #2

**United Airlines/World Headquarters; Glen F. Tilton, CEO; Barbara Liataud; Ron Rich, Industrial Relations Representative; Jim Boland, Manager; Vinnie Aguateesiri, Foreman; Andre St. Louis**

### INSERT #3

I have been harassed, retaliated against and discriminated against for reasons based upon my **age, mental and physical disabilities.**

### INSERT #4

I was first hired by United Airlines on March 10, 1986 and my most recent position was Engine Parts Inspector. Over this extensive employment relationship with United Airlines, I have suffered from specific injuries on the job, including lower and upper back injuries in 1988 and 1998 respectively. The most recent industrial claims are as follows:   a stress claim which was filed regarding an incident on May 21, 2004, a toxic exposure claim filed in February 2004 and a hearing loss claim which was both denied and accepted stemming from injury in 2003. Unfortunately, United Airlines' policy regarding Worker's Compensation claims has been to single the employee out, and create an adversarial relationship, threatening termination. These wrongful actions have given rise to my claims of harassment, retaliation and discrimination for reasons based upon my age, mental and physical disabilities.

I have worked with steel, tin, copper, magnesium and aluminum and in October of 2002 I suffered from symptoms of toxic exposure. After taking tests regarding urinalysis and hair analysis it was determined that there were toxic levels of metal in my body. I filed a claim of toxic poisoning in February of 2004.

In 2003, I was experiencing a serious hearing loss. Initially, after I filed a claim, United Airlines representative denied this claim and then accepted it on the same dates signed by the same person. United Airlines intentionally tried to prevent me from taking a hearing test. However, I discovered other crew members were tested and when I was tested, I had significant hearing loss. I complained that the work area was too noisy because the grit blaster was placed near the employees, and that this level violated State laws. I notified OSHA and they conducted a decibel level test. However, at the time that OSHA came out to

 

conduct the test, the machines were not in use.    Other employees and I
continued to complain to OSHA. United Airlines later built a wall between the
employees and the grid blaster. However, by this time, I was perceived as a
*"trouble maker"* by supervisors and management. This hearing condition could
also be related to toxic metal levels and mercury in particular.

In May of 2004, my claim for toxic exposure poisoning was denied and I became
increasingly depressed because of management's refusal to acknowledge my
severe condition of toxic poisoning and because management had become
hostile towards me. Further, United Airlines conducted a water survey which
resulted in a finding of arsenic content in the water supply. This survey was
conducted by outside vendor in 2003 and resulted in bottled water being used in
the shop. At this same time, I took samples where the outside vendor had
disturbed known asbestos locations.    I complained to management and they
ridiculed me.    I had the samples tested and it was proven to be asbestos.
Consequently,    I was considered by management to be a trouble maker and a
malingerer.    My stress claim which was filed on May 28, 2004 was denied.
Further, on August 11, 2004 my claim for toxic exposure was denied.

In May of 2004, when I went out for a disability leave based upon stress, I was
suffering from eating and sleeping issues and an inability to make decisions. My
foreman and supervisors singled me out for harassment, retaliation and
discrimination based upon this physical disability.    I had taken urine and hair
analysis tests, and United Airlines refused to consider these results. The tests
confirmed that I had high levels of toxic metals in my body, and my doctors
concluded that these high levels of such metals, including mercury and
manganese, caused    an anxiety, depression and a bi-polar condition.

Based on these test results, I have had ongoing intravenous treatments to flush
the metals out of my system, and I have had ongoing psychological treatment
for the anxiety, depression and bi-polar condition.    I have complained to
management about the harassment, retaliation and discrimination, and I was
placed on an extended leave of absence.    The foreman, Vinnie Agvateesiri and
Manager, Jim Boland, miscalculated my approved sick leave and leave of
absence,    resulting in a loss of seniority and pay for me.    I filed grievances
related to these issues which relate back to 2004 and these claims are ongoing
and continuous.

On June 30, 2006, I met with a United Airlines nurse to obtain medical clearance
to return to work.    My personal doctors had cleared me to return to work, full
time, starting in July of 2006.    Ms. Garner, the nurse, stated that she could not
make the decision to clear me without a full clinical narrative.    I brought back a



narrative on July 10, 2006. Ms. Garner refused to return me back to work, stating that there was not enough detail.

On July 11, 2006, I met with Dr. Hodges, the Head of United Airlines' Medical Department, to inform her that I was starting my swing shift within the hour, that I had clinical narratives from my doctors, and that I had been cleared to return to work. Dr. Hodges responded that she was hesitant to have me return to work unless I agreed to a full urinalysis. I agreed to the urinalysis if Dr. Hodges would promise to fill out a first report of injury, if the urinalysis showed a normal manganese level. This would prove that my claim of toxic exposure to metal poisoning was valid based upon previous tests taken in 2004.

Dr. Hodges agreed that if the urinalysis proved to be normal she would fill out the first report of injury. The urinalysis proved to be normal and the toxic exposure injury was confirmed. Dr. Hodges sent the first report of injury form to my foreman, Vinnie Agvateesiri. On July 15, 2006, the test results clearly showed that, compared to the November 11, 2003 toxic analysis, the manganese level was within reference. I had suffered for two years from toxic metal poisoning. No one at United Airlines believed this condition existed or that it had serious medical consequences.

I reported to Vinnie Agvateesiri, the Foreman, with an unrestricted authorization to return to work. Mr. Agvateesiri was unprepared and complained that he had no warning of my return. Mr. Agvateesiri refused to give me a key card to punch in and out. Instead, I was told to work while management determined how to get a key card from security. I was forced to fill out handwritten exception forms to check in and out. Mr. Agvateesiri refused to sign and accept these forms, and he continued to refuse to fill out paperwork to release my key card. Further, Mr. Agvateesiri continued to refuse to give me any payroll exception and United Airlines refused to pay me.

Mr. Agvateesiri claimed that no one was at the Human Resources Department at 3:00 p.m. to correct this matter. He typed out a security authorization which security rejected because it was not an official form. Consequently, I was forced to input in the computer that I was receiving on the job training to prove that I was at work. Mr. Agvateesiri continued to refuse to give me a key card, reiterating that he was not ready for me to return to work, and asked that I leave the premises, but promising that he would pay me for eight hours of work.

I returned to work the next day and Mr. Agvateesiri continued to harass, retaliate, and discriminate against me by refusing to sign a payroll exception form. I filled the form out and Mr. Agvateesiri refused to sign. Mr. Agvateesiri claimed that he did not know how to obtain a key card to allow me to return to

RIGHT TO SUE:
LARRY OILUND                                                           3.

 

work. Mr. Agvateesiri was one of the Supervisors who harassed, retaliated and discriminated against me throughout my disabilities since 2002, 2003 and 2004. Because of Mr. Agvateesiri and Mr. Boland, management incorrectly miscalculated my leave of absence status while I was out on extended medical leave. Because of this miscalculation, I lost over 1,017 hours of industrial sick leave at $28.00 per hour, amounting to $28,476.00. Further, I lost benefits and stock disbursement of approximately $22,000.00, and my seniority has been affected. There have been other damages, including loss of 1/3 of my pension plan.

On July 13, 2006, I requested a meeting with Mr. Boland to discuss these issues. I complained that I was still refused a key card and that there were monies still owed to me. I complained about the manner in which I was being treated by management and United Airlines' doctors. I filed three petitions of grievances regarding these incidents. I complained to Mr. Boland because the Company refused to return me to work and then after receiving clearance, the Company refused to give me a security card and refused to pay me.

On July 17, 2006 I met with Mr. Boland and Mr. Agvateesiri complaining about the additional monies owed. At this meeting Mr. Boland agreed to pay me five weeks and two days vacation. On July 24, 2006 and July 25, 2006 Dr. Hodges reversed her clearance without reason. Dr. Hodges demanded that further documentation was necessary to return me back to work, including the urinalysis report and a full clinical narrative.

Dr. Hodges' change of mind and refusal to return me back to work caused further confusion and hostility. Mr. Agvateesiri demanded that I bring in a clinical note before I could re-enter the premises. I brought in the documentation on September 11, 2006 including the urine reports. I was given an unrestricted return to work for a second time, however, the Payroll Department claimed that they lost the forms and were refusing to pay me for any time that I already worked in July 2006. I complained to Mr. Boland about the refusal to pay my wages and Mr. Boland claimed that he could not answer for Payroll.

Despite my urinalysis documentation, Dr. Hodges once again refused to allow me to return to work without a full clinical narrative. I was distressed over the ongoing harassment, retaliation and discrimination. Nevertheless, I came in on September 11 and September 13, 2006 with test results and on September 14, 2006 I submitted another clinical narrative for Dr. Hodges' review. United Airlines continued to harass and retaliate and discriminate against me. On September 23, 2006, Dr. Hodges demanded to speak with me regarding the manganese results before approving me to return to work.

RIGHT TO SUE:
LARRY OILUND                                                                        4.



These actions have caused me to suffer further clinical depression and anxiety and on July 13, 2006 I was out on a recommended medical leave for clinical depression. Dr. Hodges has continued to demand any and all clinical narratives from 2004, including prescriptions, covering any and all absences past and present, including *"proposed or expected treatment".* Meanwhile, I have been told by United Airlines' doctors and members of management that I should consider working somewhere else.

I have submitted narratives on the United Airlines' official form for the past several years. The clinical narratives on the Company forms have been accepted and signed by management in the past. However, Dr. Hodges now claims she does not have a full and complete copy of any and all clinical narrative forms submitted by me. Dr. Hodges continues to demand these forms be submitted to her again and that they include any *"proposed or expected future treatment".*

I have been harassed to such an extent that I have suffered from another episode of clinical depression. Despite the fact that these forms have been signed and accepted in the past, Dr. Hodges has now refused to recognize the form and sign the form. I complained to the Industrial Relations Representative, Ron Rich, and met with other members of management about these actions. I have been singled out, treated unfairly, harassed, retaliated against, and discriminated against for the past two years and this has been an ongoing, continuous and abusive employment relationship. I have been told that United still does not have all of the paperwork I have already submitted to Dr. Hodges and to management.

I am currently out for clinical depression. I have submitted, on a regular basis, the clinical narratives which have been required by the Company. Despite my submission of these records, Dr. Hodges has demanded that I resubmit other clinical narratives that must be signed by a medical doctor. I am currently being treated by Dr. Myrna Astillero, a Psychiatrist and medical doctor. United Airlines continues to send demands to me to submit the clinical narratives which I have already submitted, effectively duplicating the paperwork required by Union Contract.

A letter was sent on November 9, 2006 to me from United Airlines stating that medical documentation from my treating physicians substantiating my absence from work since September 29, 2006 had not been received. This letter further stated that Dr. Hodges demanded medical documentation on October 25, 2006 for my continued absence from work. According to this letter, there was not sufficient information to authorize my continued absence. I continue to be

 

harassed by United Airlines because he has submitted clinical narratives signed by my psychologist, my psychiatrist, and my medical doctor for this absence.

Dr. Hodges' demand for information goes beyond United Airlines' policies and procedures.    In the alternative, I was directed to see Dr. Hodges by November 27, 2006 if a clinical narrative could not be provided.  I in fact provided a third clinical narrative filled out by Dr. Cervantes and the first copy of my most recent November 3, 2006 toxic report showing elevated mercury levels in my system. Those items were faxed to United Airlines.

Despite these clinical narratives, Dr. Hodges, Barbara Liautaud and Mr. Agvateesiri threatened  me that I may be terminated for job abandonment. Under the  Collective Bargaining Agreement, and state and federal laws,  I am allowed extended medical leave status.  I have telephoned the Company and have faxed information to them, including  clinical narratives on October 24, 2006 and again on December 6, 2006.  Despite my continued efforts, United Airlines continues to send memos, including one dated December 11, 2006 claiming that there was no personal record of a clinical narrative received by United Airlines concerning my case.  Again, the Company demanded that a clinical narrative be submitted by December 26, 2006.  These actions violate the Collective Bargaining Agreement related to Section 11.2 et.seq. "*illness leave of absence*".  Further, these actions violate State and federal statutes prohibiting harassment, retaliation and discrimination against an employee for reasons based upon physical disabilities.

I continue to suffer both mental and physical disabilities directly related to my +employment relationship with United Airlines.

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY                                                    ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2941  TTY (800) 700-2320  Fax (510) 622-2951
www.dfeh.ca.gov

May 24, 2007

MAY 29 2007

Elladene Lee Katz
Attorney

327 N San Mateo Dr
San Mateo, CA 94401

RE:  E200607M1504-04-apc
    OILUND/LIATAUD, BARBARA, As an individual

Dear Elladene Lee Katz:

# NOTICE TO COMPLAINANT'S ATTORNEY

Enclosed is a copy of your client's complaint of discrimination filed with the
Department of Fair Employment and Housing on 5/22/2007 pursuant to the
California Fair Employment and Housing Act, Government Code section 12900 et
seq. Also enclosed is a copy of your client's Notice of Case Closure, which
constitutes your client's right-to-sue notice.

Please note that under Government Code section 12962, you are responsible for
service of the complaint on respondent(s). You should also enclose a copy of the
Notice of Case Closure along with the complaint. These documents must be
served within **60 days** of the filing date of the complaint. Government Code
section 12962(b) further provides that complaints must be served either personally
or by certified mail with return receipt requested.

For additional information, please read the enclosed Notice of Case Closure that
explains the conditions for filing a private lawsuit in the State of California.

Sincerely,
Allan H. Pederson        Al Pederson
District Administrator

Enclosure:  Complaint of Discrimination
           Notice of Case Closure

DFEH-200-06 (01/05)

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY                                          ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2941  TTY (800) 700-2320  Fax (510) 622-2951
www.dfeh.ca.gov



May 24, 2007


Elladene Lee Katz
Attorney

327 N San Mateo Dr
San Mateo, CA 94401

RE:    E200607M1504-04-apc
       OILUND/LIATAUD, BARBARA, As an individual

Dear Elladene Lee Katz:

## NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective
May 22, 2007 because an immediate right-to-sue notice was requested. DFEH will
take no further action on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the
Fair Employment and Housing Act against the person, employer, labor organization
or employment agency named in the above-referenced complaint. The civil action
must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment
Opportunity Commission (EEOC) must be visited to file a complaint within 30 days
of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged
discriminatory act, whichever is earlier.

 

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely, Allan H. Pederson

Allan H. Pederson
District Administrator

cc:    Case File

H R Department
UNITED AIRLINES/WORLD HEADQUARTERS
1200 East Algonquin Rd
Elk Grove Township, IL 6007

COMPLAINT OF DISCRIMINATION UNDER
THE PROVISIONS OF THE CALIFORNIA
FAIR EMPLOYMENT AND HOUSING ACT

DFEH # E200    1504-04-apc
DFEH USE ONLY

CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

| YOUR NAME (indicate Mr. or Ms.) Larry Oilund | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|

ADDRESS 211 San Luis Avenue

| CITY/STATE/ZIP San Bruno, Ca 94066 | COUNTY | COUNTY CODE |
|---|---|---|

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME.

| NAME Barbara Liataud - United Airlines | TELEPHONE NUMBER (Include Area Code) |
|---|---|

| ADDRESS SFO Int'l, SFMC Bldg., Dept SFOPL | DFEH USE ONLY |
|---|---|

| CITY/STATE/ZIP San Francisco, Ca 94066 | COUNTY | COUNTY CODE |
|---|---|---|

| NO. OF EMPLOYEES/MEMBERS (If known) | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year) | RESPONDENT CODE |
|---|---|---|

THE PARTICULARS ARE:

On __July 10, 2007__ I was ___ fired    X X denied employment    X X denied family or medical leave
    X X laid off    ___ denied promotion    ___ denied pregnancy leave
    ___ demoted    ___ denied transfer    ___ denied equal pay
    X X harassed    X X denied accommodation    ___ denied right to wear pants
    ___ genetic characteristics testing    ___ impermissible non-job-related inquiry    ___ denied pregnancy accommodation
    ___ forced to quit    X X other (specify) Insert #1

by __Insert #2__
    Name of Person                Job Title (supervisor/manager/personnel director/etc.)

because of my: ___ sex    ___ national origin/ancestry    X physical disability    ___ cancer    X X (Circle one) filing:
    X age    ___ marital status    X mental disability    ___ genetic characteristic    protesting; participating in
    ___ religion    ___ sexual orientation                investigation (retaliation for)
    X race/color    ___ association    X other (specify) Insert #3

the reason given by _____
    •                        Name of Person and Job Title
                                •

Was because of _____
[please state
what you believe    Insert #4
to be reason(s)]    _____

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated APR 1 9 2007

RECEIVED COMPLAINANT'S SIGNATURE

At San Mateo, California    LARRY OILUND
    City

DATE FILED:    Department of Fair
    Employment and Housing
    Oakland District Office

Legal
Solutions
& Plus
STATE OF CALIFORNIA
LS-DFEH1

DFEH-300-03 (01/05)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

# RIGHT-TO-SUE COMPLAINT INFORMATION SHEET

DFEH needs a separate signed complaint for each employer, person, labor organization, employment agency, apprenticeship committee, state or local government agency you wish to file against. If you are filing against both a company and an individual(s), please complete separate complaint forms naming the company or an individual in the appropriate area.

Please complete the following so that DFEH can process your complaint and for DFEH for statistical purposes, and return with your signed complaint(s):

YOUR RACE/ETHNICITY (Check one)
___ African-American
___ African - Other
___ Asian/Pacific Islander (specify) _____
XX Caucasian (Non-Hispanic)
___ Native American
___ Hispanic (specify) _____

YOUR PRIMARY LANGUAGE (specify)
English

YOUR AGE: __46__

IF FILING BECAUSE OF YOUR NATIONAL ORIGIN/ANCESTRY,
YOUR NATIONAL ORIGIN/ANCESTRY (specify)

_____

IF FILING BECAUSE OF DISABILITY,
YOUR DISABILITY:
___ AIDS
XX Blood/Circulation
XX Brain/Nerves/Muscles
XX Digestive/Urinary/Reproduction
XX Hearing
XX Heart
XX Limbs (Arms/Legs)
XX Mental
___ Sight
XX Speech/Respiratory
XX Spinal/Back

IF FILING BECAUSE OF MARITAL STATUS,
YOUR MARITAL STATUS: (Check one)
___ Cohabitation
___ Divorced
___ Married
___ Single

IF FILING BECAUSE OF RELIGION,
YOUR RELIGION: (specify)

_____

IF FILING BECAUSE OF SEX, THE REASON:
___ Harassment
___ Orientation
___ Pregnancy
___ Denied Right to Wear Pants
___ Other Allegations (List) _____

YOUR GENDER: ___ Female    XX Male

YOUR OCCUPATION:
___ Clerical
___ Craft
___ Equipment Operator
___ Laborer
___ Manager
___ Paraprofessional
___ Professional
___ Sales
___ Service
___ Supervisor
XX Technician

HOW YOU HEARD ABOUT DFEH:
XX Attorney
___ Bus/BART Advertisement
___ Community Organization
___ EEOC
___ EDD
___ Friend
___ Human Relations Commission
___ Labor Standards Enforcement
___ Local Government Agency
___ Poster
___ Prior Contact with DFEH
___ Radio
___ Telephone Book
___ TV
___ DFEH Web Site

DO YOU HAVE AN ATTORNEY WHO HAS AGREED TO REPRESENT YOU ON YOUR EMPLOYMENT DISCRIMINATION CLAIMS IN COURT? IF YOU CHECK "YES", YOU WILL BE RESPONSIBLE FOR HAVING YOUR ATTORNEY SERVE THIS DFEH COMPLAINT.
_X_ Yes        ___ No
PLEASE PROVIDE YOUR ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:
Elladene Lee Katz, Esq. 650.348.8078
327 N.SM Drive, #9, San Mateo, Ca  94401

_____

Your Signature                    4/19/07
                                  Date
LARRY OILUND

Legal

## INSERT #1
I have been harassed, discriminated against, and retaliated against for reasons based upon my **age, mental and physical disabilities.**

## INSERT #2
**United Airlines/World Headquarters; Glen F. Tilton, CEO; Barbara Liataud; Ron Rich, Industrial Relations Representative; Jim Boland, Manager; Vinnie Aguateesiri, Foreman; Andre St. Louis**

## INSERT #3
I have been harassed, retaliated against and discriminated against for reasons based upon my **age, mental and physical disabilities.**

## INSERT #4
I was first hired by United Airlines on March 10, 1986 and my most recent position was Engine Parts Inspector. Over this extensive employment relationship with United Airlines, I have suffered from specific injuries on the job, including lower and upper back injuries in 1988 and 1998 respectively. The most recent industrial claims are as follows:   a stress claim which was filed regarding an incident on May 21, 2004, a toxic exposure claim filed in February 2004 and a hearing loss claim which was both denied and accepted stemming from injury in 2003. Unfortunately, United Airlines' policy regarding Worker's Compensation claims has been to single the employee out, and create an adversarial relationship, threatening termination. These wrongful actions have given rise to my claims of harassment, retaliation and discrimination for reasons based upon my age, mental and physical disabilities.

I have worked with steel, tin, copper, magnesium and aluminum and in October of 2002 I suffered from symptoms of toxic exposure. After taking tests regarding urinalysis and hair analysis it was determined that there were toxic levels of metal in my body. I filed a claim of toxic poisoning in February of 2004.

In 2003, I was experiencing a serious hearing loss. Initially, after I filed a claim, United Airlines representative denied this claim and then accepted it on the same dates signed by the same person. United Airlines intentionally tried to prevent me from taking a hearing test. However, I discovered other crew members were tested and when I was tested, I had significant hearing loss. I complained that the work area was too noisy because the grit blaster was placed near the employees, and that this level violated State laws. I notified OSHA and they conducted a decibel level test. However, at the time that OSHA came out to

conduct the test, the machines were not in use.   Other employees and I continued to complain to OSHA. United Airlines later built a wall between the employees and the grid blaster.  However, by this time, I was perceived as a *"trouble maker"* by supervisors and management.  This hearing condition could also be related to toxic metal levels and mercury in particular.

In May of 2004, my claim for toxic exposure poisoning was denied and I became increasingly depressed because of management's refusal to acknowledge my severe condition of toxic poisoning and because management had become hostile towards me.  Further, United Airlines conducted a water survey which resulted in a finding of arsenic content in the water supply.  This survey was conducted by outside vendor in 2003 and resulted in bottled water being used in the shop.  At this same time, I took samples where the outside vendor had disturbed known asbestos locations.  I complained to management and they ridiculed me.  I had the samples tested and it was proven to be asbestos. Consequently, I was considered by management to be a trouble maker and a malingerer.  My stress claim which was filed on May 28, 2004 was denied. Further, on August 11, 2004 my claim for toxic exposure was denied.

In May of 2004, when I went out for a disability leave based upon stress, I was suffering from eating and sleeping issues and an inability to make decisions.  My foreman and supervisors singled me out for harassment, retaliation and discrimination based upon this physical disability.  I had taken urine and hair analysis tests, and United Airlines refused to consider these results.  The tests confirmed that I had high levels of toxic metals in my body, and my doctors concluded that these high levels of such metals, including mercury and manganese, caused an anxiety, depression and a bi-polar condition.

Based on these test results, I have had ongoing intravenous treatments to flush the metals out of my system, and I have had ongoing psychological treatment     • for the anxiety, depression and bi-polar condition.   I have complained to management about the harassment, retaliation and discrimination, and I was placed on an extended leave of absence.  The foreman, Vinnie Agvateesiri and Manager, Jim Boland, miscalculated my approved sick leave and leave of absence, resulting in a loss of seniority and pay for me.  I filed grievances related to these issues which relate back to 2004 and these claims are ongoing and continuous.

On June 30, 2006, I met with a United Airlines nurse to obtain medical clearance to return to work.  My personal doctors had cleared me to return to work,  full time,  starting in July of 2006.  Ms. Garner, the nurse, stated that she could not make the decision to clear me without a full clinical narrative.  I brought back a

 

narrative on July 10, 2006. Ms. Garner refused to return me back to work, stating that there was not enough detail.

On July 11, 2006, I met with Dr. Hodges, the Head of United Airlines' Medical Department, to inform her that I was starting my swing shift within the hour, that I had clinical narratives from my doctors, and that I had been cleared to return to work. Dr. Hodges responded that she was hesitant to have me return to work unless I agreed to a full urinalysis. I agreed to the urinalysis if Dr. Hodges would promise to fill out a first report of injury, if the urinalysis showed a normal manganese level. This would prove that my claim of toxic exposure to metal poisoning was valid based upon previous tests taken in 2004.

Dr. Hodges agreed that if the urinalysis proved to be normal she would fill out the first report of injury. The urinalysis proved to be normal and the toxic exposure injury was confirmed. Dr. Hodges sent the first report of injury form to my foreman, Vinnie Agvateesiri. On July 15, 2006, the test results clearly showed that, compared to the November 11, 2003 toxic analysis, the manganese level was within reference. I had suffered for two years from toxic metal poisoning. No one at United Airlines believed this condition existed or that it had serious medical consequences.

I reported to Vinnie Agvateesiri, the Foreman, with an unrestricted authorization to return to work. Mr. Agvateesiri was unprepared and complained that he had no warning of my return. Mr. Agvateesiri refused to give me a key card to punch in and out. Instead, I was told to work while management determined how to get a key card from security. I was forced to fill out handwritten exception forms to check in and out. Mr. Agvateesiri refused to sign and accept these forms, and he continued to refuse to fill out paperwork to release my key card. Further, Mr. Agvateesiri continued to refuse to give me any payroll exception and United Airlines refused to pay me.

Mr. Agvateesiri claimed that no one was at the Human Resources Department at 3:00 p.m. to correct this matter. He typed out a security authorization which security rejected because it was not an official form. Consequently, I was forced to input in the computer that I was receiving on the job training to prove that I was at work. Mr. Agvateesiri continued to refuse to give me a key card, reiterating that he was not ready for me to return to work, and asked that I leave the premises, but promising that he would pay me for eight hours of work.

I returned to work the next day and Mr. Agvateesiri continued to harass, retaliate, and discriminate against me by refusing to sign a payroll exception form. I filled the form out and Mr. Agvateesiri refused to sign. Mr. Agvateesiri claimed that he did not know how to obtain a key card to allow me to return to



work. Mr. Agvateesiri was one of the Supervisors who harassed, retaliated and discriminated against me throughout my disabilities since 2002, 2003 and 2004. Because of Mr. Agvateesiri and Mr. Boland, management incorrectly miscalculated my leave of absence status while I was out on extended medical leave. Because of this miscalculation, I lost over 1,017 hours of industrial sick leave at $28.00 per hour, amounting to $28,476.00. Further, I lost benefits and stock disbursement of approximately $22,000.00, and my seniority has been affected. There have been other damages, including loss of 1/3 of my pension plan.

On July 13, 2006, I requested a meeting with Mr. Boland to discuss these issues. I complained that I was still refused a key card and that there were monies still owed to me. I complained about the manner in which I was being treated by management and United Airlines' doctors. I filed three petitions of grievances regarding these incidents. I complained to Mr. Boland because the Company refused to return me to work and then after receiving clearance, the Company refused to give me a security card and refused to pay me.

On July 17, 2006 I met with Mr. Boland and Mr. Agvateesiri complaining about the additional monies owed. At this meeting Mr. Boland agreed to pay me five weeks and two days vacation. On July 24, 2006 and July 25, 2006 Dr. Hodges reversed her clearance without reason. Dr. Hodges demanded that further documentation was necessary to return me back to work, including the urinalysis report and a full clinical narrative.

Dr. Hodges' change of mind and refusal to return me back to work caused further confusion and hostility. Mr. Agvateesiri demanded that I bring in a clinical note before I could re-enter the premises. I brought in the documentation on September 11, 2006 including the urine reports. I was given an unrestricted return to work for a second time, however, the Payroll Department claimed that they lost the forms and were refusing to pay me for any time that I already worked in July 2006. I complained to Mr. Boland about the refusal to pay my wages and Mr. Boland claimed that he could not answer for Payroll.

Despite my urinalysis documentation, Dr. Hodges once again refused to allow me to return to work without a full clinical narrative. I was distressed over the ongoing harassment, retaliation and discrimination. Nevertheless, I came in on September 11 and September 13, 2006 with test results and on September 14, 2006 I submitted another clinical narrative for Dr. Hodges' review. United Airlines continued to harass and retaliate and discriminate against me. On September 23, 2006, Dr. Hodges demanded to speak with me regarding the manganese results before approving me to return to work.



These actions have caused me to suffer further clinical depression and anxiety and on July 13, 2006 I was out on a recommended medical leave for clinical depression. Dr. Hodges has continued to demand any and all clinical narratives from 2004, including prescriptions, covering any and all absences past and present, including *"proposed or expected treatment".* Meanwhile, I have been told by United Airlines' doctors and members of management that I should consider working somewhere else.

I have submitted narratives on the United Airlines' official form for the past several years. The clinical narratives on the Company forms have been accepted and signed by management in the past. However, Dr. Hodges now claims she does not have a full and complete copy of any and all clinical narrative forms submitted by me. Dr. Hodges continues to demand these forms be submitted to her again and that they include any *"proposed or expected future treatment".*

I have been harassed to such an extent that I have suffered from another episode of clinical depression. Despite the fact that these forms have been signed and accepted in the past, Dr. Hodges has now refused to recognize the form and sign the form. I complained to the Industrial Relations Representative, Ron Rich, and met with other members of management about these actions. I have been singled out, treated unfairly, harassed, retaliated against, and discriminated against for the past two years and this has been an ongoing, continuous and abusive employment relationship. I have been told that United still does not have all of the paperwork I have already submitted to Dr. Hodges and to management.

I am currently out for clinical depression. I have submitted, on a regular basis, the clinical narratives which have been required by the Company. Despite my submission of these records, Dr. Hodges has demanded that I resubmit other clinical narratives that must be signed by a medical doctor. I am currently being treated by Dr. Myrna Astillero, a Psychiatrist and medical doctor. United Airlines continues to send demands to me to submit the clinical narratives which I have already submitted, effectively duplicating the paperwork required by Union Contract.

A letter was sent on November 9, 2006 to me from United Airlines stating that medical documentation from my treating physicians substantiating my absence from work since September 29, 2006 had not been received. This letter further stated that Dr. Hodges demanded medical documentation on October 25, 2006 for my continued absence from work. According to this letter, there was not sufficient information to authorize my continued absence. I continue to be

 

harassed by United Airlines because he has submitted clinical narratives signed by my psychologist, my psychiatrist, and my medical doctor for this absence.

Dr. Hodges' demand for information goes beyond United Airlines' policies and procedures.   In the alternative, I was directed to see Dr. Hodges by November 27, 2006 if a clinical narrative could not be provided. I in fact provided a third clinical narrative filled out by Dr. Cervantes'and the first copy of my most recent November 3, 2006 toxic report showing elevated mercury levels in my system. Those items were faxed to United Airlines.

Despite these clinical narratives, Dr. Hodges, Barbara Liautaud and Mr. Agvateesiri threatened  me that I may be terminated for job abandonment. Under the  Collective Bargaining Agreement, and state and federal laws,  I am allowed extended medical leave status.  I have telephoned the Company and have faxed information to them, including  clinical narratives on October 24, 2006 and again on December 6, 2006.  Despite my continued efforts, United Airlines continues to send memos, including one dated December 11, 2006 claiming that there was no personal record of a clinical narrative received by United Airlines concerning my case.  Again, the Company demanded that a clinical narrative be submitted by December 26, 2006.  These actions violate the Collective Bargaining Agreement related to Section 11.2 et.seq. "*illness leave of absence*".  Further, these actions violate State and federal statutes prohibiting harassment, retaliation and discrimination against an employee for reasons based upon physical disabilities.

I continue to suffer both mental and physical disabilities directly related to my +employment relationship with United Airlines.

STATE OF CALIFORNIA - STATE AND CONSUMER ~~~~~ ENCY                                     ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2941 TTY (800) 700-2320 Fax (510) 622-2951
www.dfeh.ca.gov

May 24, 2007

Elladene Lee Katz
Attorney

327 N San Mateo Dr
San Mateo, CA 94401



RE: E200607M1504-05-apc
    OILUND/RICH, RON, As an individual

Dear Elladene Lee Katz:

## NOTICE TO COMPLAINANT'S ATTORNEY

Enclosed is a copy of your client's complaint of discrimination filed with the
Department of Fair Employment and Housing on 5/22/2007 pursuant to the
California Fair Employment and Housing Act, Government Code section 12900 et
seq. Also enclosed is a copy of your client's Notice of Case Closure, which
constitutes your client's right-to-sue notice.

Please note that under Government Code section 12962, you are responsible for
service of the complaint on respondent(s). You should also enclose a copy of the
Notice of Case Closure along with the complaint. These documents must be
served within 60 days of the filing date of the complaint. Government Code
section 12962(b) further provides that complaints must be served either personally
or by certified mail with return receipt requested.

For additional information, please read the enclosed Notice of Case Closure that
explains the conditions for filing a private lawsuit in the State of California.

Sincerely,
Allan H. Pederson
District Administrator

Enclosure:    Complaint of Discrimination
              Notice of Case Closure

DFEH-200-06 (01/05)

STATE OF CALIFORNIA - STATE AND CONSUMER S                    CY                                              ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR E LOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2941  TTY (800) 700-2320  Fax (510) 622-2951
www.dfeh.ca.gov



May 24, 2007


Elladene Lee Katz
Attorney

327 N San Mateo Dr
San Mateo, CA 94401

RE:     E200607M1504-05-apc
        OILUND/RICH, RON, As an individual

Dear Elladene Lee Katz:

### NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective
May 22, 2007 because an immediate right-to-sue notice was requested.  DFEH will
take no further action on the complaint.

This letter is also the Right-To-Sue Notice.  According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the
Fair Employment and Housing Act against the person, employer, labor organization
or employment agency named in the above-referenced complaint.  The civil action
must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment
Opportunity Commission (EEOC) must be visited to file a complaint within 30 days
of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged
discriminatory act, whichever is earlier.



Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless
the case is still open at the end of the three-year period.

Sincerely,

~~H. Pederson~~
District Administrator

cc:    Case File

H R Department
UNITED AIRLINES/WORLD HEADQUARTERS
1200 East Algonquin Rd
Elk Grove Township, IL  6007

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

DFEH # E 07M1504-05-apc
DFEH USE ONLY

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

| YOUR NAME (Indicate Mr. or Ms.) | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|
| Larry Oilund | |

ADDRESS 211 San Luis Avenue

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| San Bruno, Ca 94066 | | |

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| Ron Rich, United Airlines | |

| ADDRESS | DFEH USE ONLY |
|---|---|
| SFO Int'l, SFMC Bldg., Department SFOLR | |

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| San Francisco, Ca 94066 | | |

| NO. OF EMPLOYEES/MEMBERS (If known) | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year) | RESPONDENT CODE |
|---|---|---|

THE PARTICULARS ARE:

On __July 10, 2007__ I was ___ fired
___ XX laid off
___ demoted
___ XX harassed
___ genetic characteristics testing
___ forced to quit

XX denied employment
___ denied promotion
___ denied transfer
XX denied accommodation
___ impermissible non-job-related inquiry
XX other (specify) Insert #1

XX denied family or medical leave
___ denied pregnancy leave
___ denied equal pay
___ denied right to wear pants
___ denied pregnancy accommodation

by __Insert #2__
Name of Person / Job Title (supervisor/manager/personnel director/etc.)

because of my: ___ sex
XX age
___ religion
XX race/color
___ national origin/ancestry
___ marital status
___ sexual orientation
___ association
XX physical disability
XX mental disability
XX other (specify) Insert #3
___ cancer
___ genetic characteristic

XX (Circle one) filing,
protesting; participating in
investigation (retaliation for)

the reason given by _____
Name of Person and Job Title

Was because of
[please state
what you believe
to be reason(s)] _____ Insert #4 _____

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated __APR 1 9 2007__

RECEIVED

COMPLAINANT'S SIGNATURE

At __San Mateo, Ca__
City

LARRY OILUND

DATE FILED:

Department of Fair
Employment and Housing
Oakland District Office

Legal Solutions Plus
STATE OF CALIFORNIA
LS-DFEH1

DFEH-300-03 (01/05)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

# RIG⬤-SUE COMPLAINT INFORMATION SHEET

DFEH needs a separate signed complaint for each employer, person, labor organization, employment agency, apprenticeship committee, state or local government agency you wish to file against. If you are filing against both a company and an individual(s), please complete separate complaint forms naming the company or an individual in the appropriate area.

Please complete the following so that DFEH can process your complaint and for DFEH for statistical purposes, and return with your signed complaint(s):

YOUR RACE/ETHNICITY (Check one)
___ African-American
___ African - Other
___ Asian/Pacific Islander (specify) _____
XX Caucasian (Non-Hispanic)
___ Native American
___ Hispanic (specify) _____

YOUR PRIMARY LANGUAGE (specify)
English

YOUR AGE: 46

IF FILING BECAUSE OF YOUR NATIONAL ORIGIN/ANCESTRY,
YOUR NATIONAL ORIGIN/ANCESTRY (specify)
_____
_____

IF FILING BECAUSE OF DISABILITY,
YOUR DISABILITY:
___ AIDS
XX Blood/Circulation
XX Brain/Nerves/Muscles
XX Digestive/Urinary/Reproduction
XX Hearing
XX Heart
XX Limbs (Arms/Legs)
XX Mental
___ Sight
XX Speech/Respiratory
XX Spinal/Back

IF FILING BECAUSE OF MARITAL STATUS,
YOUR MARITAL STATUS: (Check one)
___ Cohabitation
___ Divorced
___ Married
___ Single

IF FILING BECAUSE OF RELIGION,
YOUR RELIGION: (specify)
_____
_____

IF FILING BECAUSE OF SEX, THE REASON:
___ Harassment
___ Orientation
___ Pregnancy
___ Denied Right to Wear Pants
___ Other Allegations (List) _____

YOUR GENDER: ___ Female   XX Male
YOUR OCCUPATION:
___ Clerical
___ Craft
___ Equipment Operator
___ Laborer
___ Manager
___ Paraprofessional
___ Professional
___ Sales
___ Service
___ Supervisor
XX Technician

HOW YOU HEARD ABOUT DFEH:
XX Attorney
___ Bus/BART Advertisement
___ Community Organization
___ EEOC
___ EDD
___ Friend
___ Human Relations Commission
___ Labor Standards Enforcement
___ Local Government Agency
___ Poster
___ Prior Contact with DFEH
___ Radio
___ Telephone Book
___ TV
___ DFEH Web Site

DO YOU HAVE AN ATTORNEY WHO HAS AGREED
TO REPRESENT YOU ON YOUR EMPLOYMENT
DISCRIMINATION CLAIMS IN COURT? IF YOU CHECK
"YES", YOU WILL BE RESPONSIBLE FOR HAVING
YOUR ATTORNEY SERVE THIS DFEH COMPLAINT.
X Yes   ___ No
PLEASE PROVIDE YOUR ATTORNEY'S NAME,
ADDRESS AND PHONE NUMBER:
Elladene Lee Katz, Esq. 650.348.8078
327 N.SM Drive, #9, San Mateo, Ca  94401
_____

Your Signature     4/19/07
                   Date
LARRY OILUND

DFEH-300-03-1 (01/05)
Department of Fair Employment and Housing
State of California

## INSERT #1
I have been harassed, discriminated against, and retaliated against for reasons based upon my **age, mental and physical disabilities.**

## INSERT #2
**United Airlines/World Headquarters; Glen F. Tilton, CEO; Barbara Liataud; Ron Rich, Industrial Relations Representative; Jim Boland, Manager; Vinnie Aguateesiri, Foreman; Andre St. Louis**

## INSERT #3
I have been harassed, retaliated against and discriminated against for reasons based upon my **age, mental and physical disabilities.**

## INSERT #4
I was first hired by United Airlines on March 10, 1986 and my most recent position was Engine Parts Inspector. Over this extensive employment relationship with United Airlines, I have suffered from specific injuries on the job, including lower and upper back injuries in 1988 and 1998 respectively. The most recent industrial claims are as follows:   a stress claim which was filed regarding an incident on May 21, 2004, a toxic exposure claim filed in February 2004 and a hearing loss claim which was both denied and accepted stemming from injury in 2003. Unfortunately, United Airlines' policy regarding Worker's Compensation claims has been to single the employee out, and create an adversarial relationship, threatening termination. These wrongful actions have given rise to my claims of harassment, retaliation and discrimination for reasons based upon my age, mental and physical disabilities.

I have worked with steel, tin, copper, magnesium and aluminum and in October of 2002 I suffered from symptoms of toxic exposure. After taking tests regarding urinalysis and hair analysis it was determined that there were toxic levels of metal in my body. I filed a claim of toxic poisoning in February of 2004.

In 2003, I was experiencing a serious hearing loss. Initially, after I filed a claim, United Airlines representative denied this claim and then accepted it on the same dates signed by the same person. United Airlines intentionally tried to prevent me from taking a hearing test. However, I discovered other crew members were tested and when I was tested, I had significant hearing loss.   I complained that the work area was too noisy because the grit blaster was placed near the employees, and that this level violated State laws.   I notified OSHA and they conducted a decibel level test. However, at the time that OSHA came out to

conduct the test, the machines were not in use.   Other employees and I
continued to complain to OSHA. United Airlines later built a wall between the
employees and the grid blaster.  However, by this time, I was perceived as a
"trouble maker" by supervisors and management.  This hearing condition could
also be related to toxic metal levels and mercury in particular.

In May of 2004, my claim for toxic exposure poisoning was denied and I became
increasingly depressed because of management's refusal to acknowledge my
severe condition of toxic poisoning and because management had become
hostile towards me.  Further, United Airlines conducted a water survey which
resulted in a finding of arsenic content in the water supply.  This survey was
conducted by outside vendor in 2003 and resulted in bottled water being used in
the shop.  At this same time, I took samples where the outside vendor had
disturbed known asbestos locations.  I complained to management and they
ridiculed me.  I had the samples tested and it was proven to be asbestos.
Consequently, I was considered by management to be a trouble maker and a
malingerer.  My stress claim which was filed on May 28, 2004 was denied.
Further, on August 11, 2004 my claim for toxic exposure was denied.

In May of 2004, when I went out for a disability leave based upon stress, I was
suffering from eating and sleeping issues and an inability to make decisions.  My
foreman and supervisors singled me out for harassment, retaliation and
discrimination based upon this physical disability.  I had taken urine and hair
analysis tests, and United Airlines refused to consider these results.  The tests
confirmed that I had high levels of toxic metals in my body, and my doctors
concluded that these high levels of such metals, including mercury and
manganese, caused  an anxiety, depression and a bi-polar condition.

Based on these test results, I have had ongoing intravenous treatments to flush
the metals out of my system, and I have had ongoing psychological treatment
for the anxiety, depression and bi-polar condition.   I have complained to
management about the harassment, retaliation and discrimination, and I was
placed on an extended leave of absence.  The foreman, Vinnie Agvateesiri and
Manager, Jim Boland, miscalculated my approved sick leave and leave of
absence, resulting in a loss of seniority and pay for me.  I filed grievances
related to these issues which relate back to 2004 and these claims are ongoing
and continuous.

On June 30, 2006, I met with a United Airlines nurse to obtain medical clearance
to return to work. My personal doctors had cleared me to return to work, full
time, starting in July of 2006.  Ms. Garner, the nurse, stated that she could not
make the decision to clear me without a full clinical narrative.  I brought back a

narrative on July 10, 2006. Ms. Garner refused to return me back to work, stating that there was not enough detail.

On July 11, 2006, I met with Dr. Hodges, the Head of United Airlines' Medical Department, to inform her that I was starting my swing shift within the hour, that I had clinical narratives from my doctors, and that I had been cleared to return to work. Dr. Hodges responded that she was hesitant to have me return to work unless I agreed to a full urinalysis. I agreed to the urinalysis if Dr. Hodges would promise to fill out a first report of injury, if the urinalysis showed a normal manganese level. This would prove that my claim of toxic exposure to metal poisoning was valid based upon previous tests taken in 2004.

Dr. Hodges agreed that if the urinalysis proved to be normal she would fill out the first report of injury. The urinalysis proved to be normal and the toxic exposure injury was confirmed. Dr. Hodges sent the first report of injury form to my foreman, Vinnie Agvateesiri. On July 15, 2006, the test results clearly showed that, compared to the November 11, 2003 toxic analysis, the manganese level was within reference. I had suffered for two years from toxic metal poisoning. No one at United Airlines believed this condition existed or that it had serious medical consequences.

I reported to Vinnie Agvateesiri, the Foreman, with an unrestricted authorization to return to work. Mr. Agvateesiri was unprepared and complained that he had no warning of my return. Mr. Agvateesiri refused to give me a key card to punch in and out. Instead, I was told to work while management determined how to get a key card from security. I was forced to fill out handwritten exception forms to check in and out. Mr. Agvateesiri refused to sign and accept these forms, and he continued to refuse to fill out paperwork to release my key card. Further, Mr. Agvateesiri continued to refuse to give me any payroll exception and United Airlines refused to pay me.

Mr. Agvateesiri claimed that no one was at the Human Resources Department at 3:00 p.m. to correct this matter. He typed out a security authorization which security rejected because it was not an official form. Consequently, I was forced to input in the computer that I was receiving on the job training to prove that I was at work. Mr. Agvateesiri continued to refuse to give me a key card, reiterating that he was not ready for me to return to work, and asked that I leave the premises, but promising that he would pay me for eight hours of work.

I returned to work the next day and Mr. Agvateesiri continued to harass, retaliate, and discriminate against me by refusing to sign a payroll exception form. I filled the form out and Mr. Agvateesiri refused to sign. Mr. Agvateesiri claimed that he did not know how to obtain a key card to allow me to return to

RIGHT TO SUE:
LARRY OILUND                                                        3.

work. Mr. Agvateesiri was one of the Supervisors who harassed, retaliated and discriminated against me throughout my disabilities since 2002, 2003 and 2004. Because of Mr. Agvateesiri and Mr. Boland, management incorrectly miscalculated my leave of absence status while I was out on extended medical leave. Because of this miscalculation, I lost over 1,017 hours of industrial sick leave at $28.00 per hour, amounting to $28,476.00. Further, I lost benefits and stock disbursement of approximately $22,000.00, and my seniority has been affected. There have been other damages, including loss of 1/3 of my pension plan.

On July 13, 2006, I requested a meeting with Mr. Boland to discuss these issues. I complained that I was still refused a key card and that there were monies still owed to me. I complained about the manner in which I was being treated by management and United Airlines' doctors. I filed three petitions of grievances regarding these incidents. I complained to Mr. Boland because the Company refused to return me to work and then after receiving clearance, the Company refused to give me a security card and refused to pay me.

On July 17, 2006 I met with Mr. Boland and Mr. Agvateesiri complaining about the additional monies owed. At this meeting Mr. Boland agreed to pay me five weeks and two days vacation. On July 24, 2006 and July 25, 2006 Dr. Hodges reversed her clearance without reason. Dr. Hodges demanded that further documentation was necessary to return me back to work, including the urinalysis report and a full clinical narrative.

Dr. Hodges' change of mind and refusal to return me back to work caused further confusion and hostility. Mr. Agvateesiri demanded that I bring in a clinical note before I could re-enter the premises. I brought in the documentation on September 11, 2006 including the urine reports. I was given an unrestricted return to work for a second time, however, the Payroll Department claimed that they lost the forms and were refusing to pay me for any time that I already worked in July 2006. I complained to Mr. Boland about the refusal to pay my wages and Mr. Boland claimed that he could not answer for Payroll.

Despite my urinalysis documentation, Dr. Hodges once again refused to allow me to return to work without a full clinical narrative. I was distressed over the ongoing harassment, retaliation and discrimination. Nevertheless, I came in on September 11 and September 13, 2006 with test results and on September 14, 2006 I submitted another clinical narrative for Dr. Hodges' review. United Airlines continued to harass and retaliate and discriminate against me. On September 23, 2006, Dr. Hodges demanded to speak with me regarding the manganese results before approving me to return to work.



These actions have caused me to suffer further clinical depression and anxiety and on July 13, 2006 I was out on a recommended medical leave for clinical depression. Dr. Hodges has continued to demand any and all clinical narratives from 2004, including prescriptions, covering any and all absences past and present, including *"proposed or expected treatment"*. Meanwhile, I have been told by United Airlines' doctors and members of management that I should consider working somewhere else.

I have submitted narratives on the United Airlines' official form for the past several years. The clinical narratives on the Company forms have been accepted and signed by management in the past. However, Dr. Hodges now claims she does not have a full and complete copy of any and all clinical narrative forms submitted by me. Dr. Hodges continues to demand these forms be submitted to her again and that they include any *"proposed or expected future treatment"*.

I have been harassed to such an extent that I have suffered from another episode of clinical depression. Despite the fact that these forms have been signed and accepted in the past, Dr. Hodges has now refused to recognize the form and sign the form. I complained to the Industrial Relations Representative, Ron Rich, and met with other members of management about these actions. I have been singled out, treated unfairly, harassed, retaliated against, and discriminated against for the past two years and this has been an ongoing, continuous and abusive employment relationship. I have been told that United still does not have all of the paperwork I have already submitted to Dr. Hodges and to management.

I am currently out for clinical depression. I have submitted, on a regular basis, the clinical narratives which have been required by the Company. Despite my submission of these records, Dr. Hodges has demanded that I resubmit other clinical narratives that must be signed by a medical doctor. I am currently being treated by Dr. Myrna Astillero, a Psychiatrist and medical doctor. United Airlines continues to send demands to me to submit the clinical narratives which I have already submitted, effectively duplicating the paperwork required by Union Contract.

A letter was sent on November 9, 2006 to me from United Airlines stating that medical documentation from my treating physicians substantiating my absence from work since September 29, 2006 had not been received. This letter further stated that Dr. Hodges demanded medical documentation on October 25, 2006 for my continued absence from work. According to this letter, there was not sufficient information to authorize my continued absence. I continue to be

RIGHT TO SUE:
LARRY OILUND                                                                                         5.

harassed by United Airlines because he has submitted clinical narratives signed by my psychologist, my psychiatrist, and my medical doctor for this absence.

Dr. Hodges' demand for information goes beyond United Airlines' policies and procedures. In the alternative, I was directed to see Dr. Hodges by November 27, 2006 if a clinical narrative could not be provided. I in fact provided a third clinical narrative filled out by Dr. Cervantes and the first copy of my most recent November 3, 2006 toxic report showing elevated mercury levels in my system. Those items were faxed to United Airlines.

Despite these clinical narratives, Dr. Hodges, Barbara Liautaud and Mr. Agvateesiri threatened me that I may be terminated for job abandonment. Under the Collective Bargaining Agreement, and state and federal laws, I am allowed extended medical leave status. I have telephoned the Company and have faxed information to them, including clinical narratives on October 24, 2006 and again on December 6, 2006. Despite my continued efforts, United Airlines continues to send memos, including one dated December 11, 2006 claiming that there was no personal record of a clinical narrative received by United Airlines concerning my case. Again, the Company demanded that a clinical narrative be submitted by December 26, 2006. These actions violate the Collective Bargaining Agreement related to Section 11.2 et.seq. "*illness leave of absence*". Further, these actions violate State and federal statutes prohibiting harassment, retaliation and discrimination against an employee for reasons based upon physical disabilities.

I continue to suffer both mental and physical disabilities directly related to my +employment relationship with United Airlines.

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2941 TTY (800) 700-2320 Fax (510) 622-2951
www.dfeh.ca.gov

ARNOLD SCHWARZENEGGER, Governor

May 24, 2007

Elladene Lee Katz
Attorney

MAY 2 9 2007

327 N San Mateo Dr
San Mateo, CA 94401

RE: E200607M1504-02-apc
OILUND/BOLAND, JIM, As an individual

Dear Elladene Lee Katz:

## NOTICE TO COMPLAINANT'S ATTORNEY

Enclosed is a copy of your client's complaint of discrimination filed with the
Department of Fair Employment and Housing on 5/22/2007 pursuant to the
California Fair Employment and Housing Act, Government Code section 12900 et
seq. Also enclosed is a copy of your client's Notice of Case Closure, which
constitutes your client's right-to-sue notice.

Please note that under Government Code section 12962, you are responsible for
**service of the complaint** on respondent(s). You should also enclose a copy of the
Notice of Case Closure along with the complaint. These documents must be
served within **60 days** of the filing date of the complaint. Government Code
section 12962(b) further provides that complaints must be served either personally
or by certified mail with return receipt requested.

For additional information, please read the enclosed Notice of Case Closure that
explains the conditions for filing a private lawsuit in the State of California.

Sincerely,
Allan H. Pederson
District Administrator

Enclosure: Complaint of Discrimination
Notice of Case Closure

DFEH-200-06 (01/05)

STATE OF CALIFORNIA - STATE AND CONSUMER S...            CY                                    ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2941  TTY (800) 700-2320  Fax (510) 622-2951
www.dfeh.ca.gov



May 24, 2007

Elladene Lee Katz
Attorney

327 N San Mateo Dr
San Mateo, CA 94401

RE:   E200607M1504-05-apc
      OILUND/RICH, RON, As an individual

Dear Elladene Lee Katz:

### NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective
May 22, 2007 because an immediate right-to-sue notice was requested.  DFEH will
take no further action on the complaint.

This letter is also the Right-To-Sue Notice.  According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the
Fair Employment and Housing Act against the person, employer, labor organization
or employment agency named in the above-referenced complaint.  The civil action
must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment
Opportunity Commission (EEOC) must be visited to file a complaint within 30 days
of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged
discriminatory act, whichever is earlier.

# * EMPLOYMENT * * *

**COMPLAINT OF DISCRIMINATION UNDER
THE PROVISIONS OF THE CALIFORNIA
FAIR EMPLOYMENT AND HOUSING ACT**

DFEH # E 07M1504-05-apc
DFEH USE ONLY

---

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

| YOUR NAME (Indicate Mr. or Ms.)<br>Larry Oilund | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|

ADDRESS 211 San Luis Avenue

| CITY/STATE/ZIP San Bruno, Ca 94066 | COUNTY | COUNTY CODE |
|---|---|---|

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP
COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

| NAME<br>Ron Rich, United Airlines | TELEPHONE NUMBER (Include Area Code) |
|---|---|

| ADDRESS SFO Int'l, SFMC Bldg., Department SFOLR | DFEH USE ONLY |
|---|---|

| CITY/STATE/ZIP San Francisco, Ca 94066 | COUNTY | COUNTY CODE |
|---|---|---|

| NO. OF EMPLOYEES/MEMBERS (if known) | DATE MOST RECENT OR CONTINUING DISCRIMINATION<br>TOOK PLACE (month, day, and year) | RESPONDENT CODE |
|---|---|---|

THE PARTICULARS ARE:

On ___July 10, 2007___ I was ___ fired
___ XX laid off
___ demoted
___ XX harassed
___ genetic characteristics testing
___ forced to quit

XX denied employment
___ denied promotion
___ denied transfer
XX denied accommodation
___ impermissible non-job-related inquiry
XX other (specify) Insert #1

XX denied family or medical leave
___ denied pregnancy leave
___ denied equal pay
___ denied right to wear pants
___ denied pregnancy accommodation

by ___Insert #2___
Name of Person                    Job Title (supervisor/manager/personnel director/etc.)

because of my:   ___ sex          ___ national origin/ancestry   XX physical disability   ___ cancer     XX (Circle one) filing;
XX age          ___ marital status           XX mental disability    ___ genetic characteristic    protesting; participating in
___ religion      ___ sexual orientation                                                          investigation (retaliation for)
XX race/color   ___ association         XX other (specify) Insert #3

the reason given by _____
                              Name of Person and Job Title

Was because of _____
[please state
what you believe          Insert #4
to be reason(s)]

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

| Dated   APR 1 9 2007 | RECEIVED | COMPLAINANT'S SIGNATURE |
|---|---|---|

At   San Mateo, Ca
        City

LARRY OILUND

DATE FILED:    Department of Fair
                  Employment and Housing
                  Oakland District Office

DFEH-300-03 (01/05)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

Legal
Solutions
& Plus

STATE OF CALIFORNIA
LS-DFEH1

# RIG   O-SUE COMPLAINT INFORMATION SHEET

DFEH needs a separate signed complaint for each employer, person, labor organization, employment agency, apprenticeship committee, state or local government agency you wish to file against. If you are filing against both a company and an individual(s), please complete separate complaint forms naming the company or an individual in the appropriate area.

Please complete the following so that DFEH can process your complaint and for DFEH for statistical purposes, and return with your signed complaint(s):

YOUR RACE/ETHNICITY (Check one)
___ African-American
___ African - Other
___ Asian/Pacific Islander (specify) _____
XX Caucasian (Non-Hispanic)
___ Native American
___ Hispanic (specify) _____

YOUR PRIMARY LANGUAGE (specify)
English

YOUR AGE:   46

IF FILING BECAUSE OF YOUR NATIONAL ORIGIN/ANCESTRY,
YOUR NATIONAL ORIGIN/ANCESTRY (specify)

_____

IF FILING BECAUSE OF DISABILITY,
YOUR DISABILITY:
___ AIDS
XX Blood/Circulation
XX Brain/Nerves/Muscles
XX Digestive/Urinary/Reproduction
XX Hearing
XX Heart
XX Limbs (Arms/Legs)
XX Mental
___ Sight
XX Speech/Respiratory
XX Spinal/Back

IF FILING BECAUSE OF MARITAL STATUS,
YOUR MARITAL STATUS: (Check one)
___ Cohabitation
___ Divorced
___ Married
___ Single

IF FILING BECAUSE OF RELIGION,
YOUR RELIGION: (specify)

_____

IF FILING BECAUSE OF SEX, THE REASON:
___ Harassment
___ Orientation
___ Pregnancy
___ Denied Right to Wear Pants
___ Other Allegations (List) _____

YOUR GENDER:   ___ Female   XX Male

YOUR OCCUPATION:
___ Clerical
___ Craft
___ Equipment Operator
___ Laborer
___ Manager
___ Paraprofessional
___ Professional
___ Sales
___ Service
___ Supervisor
XX Technician

HOW YOU HEARD ABOUT DFEH:
XX Attorney
___ Bus/BART Advertisement
___ Community Organization
___ EEOC
___ EDD
___ Friend
___ Human Relations Commission
___ Labor Standards Enforcement
___ Local Government Agency
___ Poster
___ Prior Contact with DFEH
___ Radio
___ Telephone Book
___ TV
___ DFEH Web Site

DO YOU HAVE AN ATTORNEY WHO HAS AGREED
TO REPRESENT YOU ON YOUR EMPLOYMENT
DISCRIMINATION CLAIMS IN COURT? IF YOU CHECK
"YES", YOU WILL BE RESPONSIBLE FOR HAVING
YOUR ATTORNEY SERVE THIS DFEH COMPLAINT.

X  Yes   ___ No

PLEASE PROVIDE YOUR ATTORNEY'S NAME,
ADDRESS AND PHONE NUMBER:
Elladene Lee Katz, Esq. 650.348.8078
327 N. SM Drive, #9, San Mateo, Ca  94401

_____

Your Signature                            Date  4/19/07
LARRY OILUND

c-Legal

)FEH-300-03-1 (01/05)
)epartment of Fair Employment and Housing
tate of California

## INSERT #1
I have been harassed, discriminated against, and retaliated against for reasons based upon my **age, mental and physical disabilities.**

## INSERT #2
**United Airlines/World Headquarters; Glen F. Tilton, CEO; Barbara Liataud; Ron Rich, Industrial Relations Representative; Jim Boland, Manager; Vinnie Aguateesiri, Foreman; Andre St. Louis**

## INSERT #3
I have been harassed, retaliated against and discriminated against for reasons based upon my **age, mental and physical disabilities.**

## INSERT #4
I was first hired by United Airlines on March 10, 1986 and my most recent position was Engine Parts Inspector. Over this extensive employment relationship with United Airlines, I have suffered from specific injuries on the job, including lower and upper back injuries in 1988 and 1998 respectively. The most recent industrial claims are as follows:    a stress claim which was filed regarding an incident on May 21, 2004, a toxic exposure claim filed in February 2004 and a hearing loss claim which was both denied and accepted stemming from injury in 2003. Unfortunately, United Airlines' policy regarding Worker's Compensation claims has been to single the employee out, and create an adversarial relationship, threatening termination. These wrongful actions have given rise to my claims of harassment, retaliation and discrimination for reasons based upon my age, mental and physical disabilities.

I have worked with steel, tin, copper, magnesium and aluminum and in October of 2002 I suffered from symptoms of toxic exposure. After taking tests regarding urinalysis and hair analysis it was determined that there were toxic levels of metal in my body. I filed a claim of toxic poisoning in February of 2004.

In 2003, I was experiencing a serious hearing loss. Initially, after I filed a claim, United Airlines representative denied this claim and then accepted it on the same dates signed by the same person. United Airlines intentionally tried to prevent me from taking a hearing test. However, I discovered other crew members were tested and when I was tested, I had significant hearing loss. I complained that the work area was too noisy because the grit blaster was placed near the employees, and that this level violated State laws. I notified OSHA and they conducted a decibel level test. However, at the time that OSHA came out to

conduct the test, the machines were not in use.   Other employees and I continued to complain to OSHA. United Airlines later built a wall between the employees and the grid blaster. However, by this time, I was perceived as a *"trouble maker"* by supervisors and management. This hearing condition could also be related to toxic metal levels and mercury in particular.

In May of 2004, my claim for toxic exposure poisoning was denied and I became increasingly depressed because of management's refusal to acknowledge my severe condition of toxic poisoning and because management had become hostile towards me. Further, United Airlines conducted a water survey which resulted in a finding of arsenic content in the water supply. This survey was conducted by outside vendor in 2003 and resulted in bottled water being used in the shop. At this same time, I took samples where the outside vendor had disturbed known asbestos locations. I complained to management and they ridiculed me. I had the samples tested and it was proven to be asbestos. Consequently, I was considered by management to be a trouble maker and a malingerer. My stress claim which was filed on May 28, 2004 was denied. Further, on August 11, 2004 my claim for toxic exposure was denied.

In May of 2004, when I went out for a disability leave based upon stress, I was suffering from eating and sleeping issues and an inability to make decisions. My foreman and supervisors singled me out for harassment, retaliation and discrimination based upon this physical disability. I had taken urine and hair analysis tests, and United Airlines refused to consider these results. The tests confirmed that I had high levels of toxic metals in my body, and my doctors concluded that these high levels of such metals, including mercury and manganese, caused an anxiety, depression and a bi-polar condition.

Based on these test results, I have had ongoing intravenous treatments to flush the metals out of my system, and I have had ongoing psychological treatment for the anxiety, depression and bi-polar condition. I have complained to management about the harassment, retaliation and discrimination, and I was placed on an extended leave of absence. The foreman, Vinnie Agvateesiri and Manager, Jim Boland, miscalculated my approved sick leave and leave of absence, resulting in a loss of seniority and pay for me. I filed grievances related to these issues which relate back to 2004 and these claims are ongoing and continuous.

On June 30, 2006, I met with a United Airlines nurse to obtain medical clearance to return to work. My personal doctors had cleared me to return to work, full time, starting in July of 2006. Ms. Garner, the nurse, stated that she could not make the decision to clear me without a full clinical narrative. I brought back a

narrative on July 10, 2006. Ms. Garner refused to return me back to work, stating that there was not enough detail.

On July 11, 2006, I met with Dr. Hodges, the Head of United Airlines' Medical Department, to inform her that I was starting my swing shift within the hour, that I had clinical narratives from my doctors, and that I had been cleared to return to work. Dr. Hodges responded that she was hesitant to have me return to work unless I agreed to a full urinalysis. I agreed to the urinalysis if Dr. Hodges would promise to fill out a first report of injury, if the urinalysis showed a normal manganese level. This would prove that my claim of toxic exposure to metal poisoning was valid based upon previous tests taken in 2004.

Dr. Hodges agreed that if the urinalysis proved to be normal she would fill out the first report of injury. The urinalysis proved to be normal and the toxic exposure injury was confirmed. Dr. Hodges sent the first report of injury form to my foreman, Vinnie Agvateesiri. On July 15, 2006, the test results clearly showed that, compared to the November 11, 2003 toxic analysis, the manganese level was within reference. I had suffered for two years from toxic metal poisoning. No one at United Airlines believed this condition existed or that it had serious medical consequences.

I reported to Vinnie Agvateesiri, the Foreman, with an unrestricted authorization to return to work. Mr. Agvateesiri was unprepared and complained that he had no warning of my return. Mr. Agvateesiri refused to give me a key card to punch in and out. Instead, I was told to work while management determined how to get a key card from security. I was forced to fill out handwritten exception forms to check in and out. Mr. Agvateesiri refused to sign and accept these forms, and he continued to refuse to fill out paperwork to release my key card. Further, Mr. Agvateesiri continued to refuse to give me any payroll exception and United Airlines refused to pay me.

Mr. Agvateesiri claimed that no one was at the Human Resources Department at 3:00 p.m. to correct this matter. He typed out a security authorization which security rejected because it was not an official form. Consequently, I was forced to input in the computer that I was receiving on the job training to prove that I was at work. Mr. Agvateesiri continued to refuse to give me a key card, reiterating that he was not ready for me to return to work, and asked that I leave the premises, but promising that he would pay me for eight hours of work.

I returned to work the next day and Mr. Agvateesiri continued to harass, retaliate, and discriminate against me by refusing to sign a payroll exception form. I filled the form out and Mr. Agvateesiri refused to sign. Mr. Agvateesiri claimed that he did not know how to obtain a key card to allow me to return to



work. Mr. Agvateesiri was one of the Supervisors who harassed, retaliated and discriminated against me throughout my disabilities since 2002, 2003 and 2004. Because of Mr. Agvateesiri and Mr. Boland, management incorrectly miscalculated my leave of absence status while I was out on extended medical leave. Because of this miscalculation, I lost over 1,017 hours of industrial sick leave at $28.00 per hour, amounting to $28,476.00. Further, I lost benefits and stock disbursement of approximately $22,000.00, and my seniority has been affected. There have been other damages, including loss of 1/3 of my pension plan.

On July 13, 2006, I requested a meeting with Mr. Boland to discuss these issues. I complained that I was still refused a key card and that there were monies still owed to me. I complained about the manner in which I was being treated by management and United Airlines' doctors. I filed three petitions of grievances regarding these incidents. I complained to Mr. Boland because the Company refused to return me to work and then after receiving clearance, the Company refused to give me a security card and refused to pay me.

On July 17, 2006 I met with Mr. Boland and Mr. Agvateesiri complaining about the additional monies owed. At this meeting Mr. Boland agreed to pay me five weeks and two days vacation. On July 24, 2006 and July 25, 2006 Dr. Hodges reversed her clearance without reason. Dr. Hodges demanded that further documentation was necessary to return me back to work, including the urinalysis report and a full clinical narrative.

Dr. Hodges' change of mind and refusal to return me back to work caused further confusion and hostility. Mr. Agvateesiri demanded that I bring in a clinical note before I could re-enter the premises. I brought in the documentation on September 11, 2006 including the urine reports. I was given an unrestricted return to work for a second time, however, the Payroll Department claimed that they lost the forms and were refusing to pay me for any time that I already worked in July 2006. I complained to Mr. Boland about the refusal to pay my wages and Mr. Boland claimed that he could not answer for Payroll.

Despite my urinalysis documentation, Dr. Hodges once again refused to allow me to return to work without a full clinical narrative. I was distressed over the ongoing harassment, retaliation and discrimination. Nevertheless, I came in on September 11 and September 13, 2006 with test results and on September 14, 2006 I submitted another clinical narrative for Dr. Hodges' review. United Airlines continued to harass and retaliate and discriminate against me. On September 23, 2006, Dr. Hodges demanded to speak with me regarding the manganese results before approving me to return to work.

These actions have caused me to suffer further clinical depression and anxiety and on July 13, 2006 I was out on a recommended medical leave for clinical depression. Dr. Hodges has continued to demand any and all clinical narratives from 2004, including prescriptions, covering any and all absences past and present, including *"proposed or expected treatment".* Meanwhile, I have been told by United Airlines' doctors and members of management that I should consider working somewhere else.

I have submitted narratives on the United Airlines' official form for the past several years. The clinical narratives on the Company forms have been accepted and signed by management in the past. However, Dr. Hodges now claims she does not have a full and complete copy of any and all clinical narrative forms submitted by me. Dr. Hodges continues to demand these forms be submitted to her again and that they include any *"proposed or expected future treatment".*

I have been harassed to' such an extent that I have suffered from another · episode of clinical depression. Despite the fact that these forms have been signed and accepted in the past, Dr. Hodges has now refused to recognize the form and sign the form. I complained to the Industrial Relations Representative, Ron Rich, and met with other members of management about these actions. I have been singled out, treated unfairly, harassed, retaliated against, and discriminated against for the past two years and this has been an ongoing, continuous and abusive employment relationship. I have been told that United still does not have all of the paperwork I have already submitted to Dr. Hodges and to management.

I am currently out for clinical depression. I have submitted, on a regular basis, the clinical narratives which have been required by the Company. Despite my submission of these records, Dr. Hodges has demanded that I resubmit other clinical narratives that must be signed by a medical doctor. I am currently being treated by Dr. Myrna Astillero, a Psychiatrist and medical doctor. United Airlines continues to send demands to me to submit the clinical narratives which I have already submitted, effectively duplicating the paperwork required by Union Contract.

A letter was sent on November 9, 2006 to me from United Airlines stating that medical documentation from my treating physicians substantiating my absence from work since September 29, 2006 had not been received. This letter further stated that Dr. Hodges demanded medical documentation on October 25, 2006 for my continued absence from work. According to this letter, there was not sufficient information to authorize my continued absence. I continue to be

harassed by United Airlines because he has submitted clinical narratives signed by my psychologist, my psychiatrist, and my medical doctor for this absence.

Dr. Hodges' demand for information goes beyond United Airlines' policies and procedures. In the alternative, I was directed to see Dr. Hodges by November 27, 2006 if a clinical narrative could not be provided. I in fact provided a third clinical narrative filled out by Dr. Cervantes and the first copy of my most recent November 3, 2006 toxic report showing elevated mercury levels in my system. Those items were faxed to United Airlines.

Despite these clinical narratives, Dr. Hodges, Barbara Liautaud and Mr. Agvateesiri threatened me that I may be terminated for job abandonment. Under the Collective Bargaining Agreement, and state and federal laws, I am allowed extended medical leave status. I have telephoned the Company and have faxed information to them, including clinical narratives on October 24, 2006 and again on December 6, 2006. Despite my continued efforts, United Airlines continues to send memos, including one dated December 11, 2006 claiming that there was no personal record of a clinical narrative received by United Airlines concerning my case. Again, the Company demanded that a clinical narrative be submitted by December 26, 2006. These actions violate the Collective Bargaining Agreement related to Section 11.2 et.seq. "*illness leave of absence*". Further, these actions violate State and federal statutes prohibiting harassment, retaliation and discrimination against an employee for reasons based upon physical disabilities.

I continue to suffer both mental and physical disabilities directly related to my +employment relationship with United Airlines.

STATE OF CALIFORNIA - STATE AND CONSUMER... ...ENCY                                                                ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2941  TTY (800) 700-2320  Fax (510) 622-2951
www.dfeh.ca.gov



May 24, 2007

Elladene Lee Katz
Attorney


MAY 2 9 2007

327 N San Mateo Dr
San Mateo, CA 94401

RE:  E200607M1504-02-apc
     OILUND/BOLAND, JIM, As an individual

Dear Elladene Lee Katz:

## NOTICE TO COMPLAINANT'S ATTORNEY

Enclosed is a copy of your client's complaint of discrimination filed with the
Department of Fair Employment and Housing on 5/22/2007 pursuant to the
California Fair Employment and Housing Act, Government Code section 12900 et
seq. Also enclosed is a copy of your client's Notice of Case Closure, which
constitutes your client's right-to-sue notice.

Please note that under Government Code section 12962, you are responsible for
service of the complaint on respondent(s). You should also enclose a copy of the
Notice of Case Closure along with the complaint. These documents must be
served within **60 days** of the filing date of the complaint. Government Code
section 12962(b) further provides that complaints must be served either personally
or by certified mail with return receipt requested.

For additional information, please read the enclosed Notice of Case Closure that
explains the conditions for filing a private lawsuit in the State of California.

Sincerely,
Allan H. Pederson
District Administrator

Enclosure:  Complaint of Discrimination
            Notice of Case Closure

DFEH-200-06 (01/05)

STATE OF CALIFORNIA - STATE AND CONSUMER    AGENCY                    ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2941  TTY (800) 700-2320  Fax (510) 622-2951
www.dfeh.ca.gov



May 24, 2007


Elladene Lee Katz
Attorney

327 N San Mateo Dr
San Mateo, CA 94401

RE:    E200607M1504-02-apc
       OILUND/BOLAND, JIM, As an individual

Dear Elladene Lee Katz:

### NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective
May 22, 2007 because an immediate right-to-sue notice was requested.  DFEH will
take no further action on the complaint.

This letter is also the Right-To-Sue Notice.  According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the
Fair Employment and Housing Act against the person, employer, labor organization
or employment agency named in the above-referenced complaint.  The civil action
must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment
Opportunity Commission (EEOC) must be visited to file a complaint within 30 days
of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged
discriminatory act, whichever is earlier.



Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless
the case is still open at the end of the three-year period.

Sincerely,

Allan H. Pederson
District Administrator

cc:    Case File

H R Department
UNITED AIRLINES/WORLD HEADQUARTERS
1200 East Algonquin Rd
Elk Grove Township, IL  6007

DFEH-200-43 (06/06)

**COMPLAINT OF DISCRIMINATION UNDER**
**THE PROVISIONS OF THE CALIFORNIA**
**FAIR EMPLOYMENT AND HOUSING ACT**

EMPLOYMENT
DFEH # E200 · · 504-02-apc
DFEH USE ONLY

CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

| YOUR NAME (indicate Mr. or Ms.) | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|
| Larry Oilund | |

ADDRESS    211 San Luis Avenue

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| San Bruno, Ca 94066 | | |

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP
COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| Jim Boland, Manager -- United Airlines | |

| ADDRESS | DFEH USE ONLY |
|---|---|
| SFO Int'l SFMC Bldg., Dept SFOPI | |

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| San Francisco, Ca 94066 | | |

| NO. OF EMPLOYEES/MEMBERS (if known) | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year) | RESPONDENT CODE |
|---|---|---|

THE PARTICULARS ARE:

On __July 10, 2007__ I was ___ fired

 X  laid off
 ___ demoted
 X  harassed
 ___ genetic characteristics testing
 ___ forced to quit

XX denied employment
___ denied promotion
___ denied transfer
XX denied accommodation
___ impermissible non-job-related inquiry
XX other (specify) __Insert #1__

X X denied family or medical leave
___ denied pregnancy leave
___ denied equal pay
___ denied right to wear pants
___ denied pregnancy accommodation

Insert #2

by _____
    Name of Person

Job Title (supervisor/manager/personnel director/etc.)

because of my: ___ sex
 XX age
 ___ religion
 XX race/color

___ national origin/ancestry
___ marital status
___ sexual orientation
___ association

XX physical disability    ___ cancer
XX mental disability    ___ genetic characteristic
XX other (specify) __Insert #3__

 XX (Circle one) filing;
protesting; participating in
investigation (retaliation for)

the reason given by _____

Name of Person and Job Title

Was because of _____
[please state                        Insert #4
what you believe
to be reason(s)]

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated ____APR 1 9 2007____

At San Mateo, Ca
      City

RECEIVED

COMPLAINANT'S SIGNATURE

LARRY OILUND

DATE FILED

Department of Fair
Employment and Housing
Oakland District Office

Legal
Solutions
& Plus

STATE OF CALIFORNIA
LS-DFEH1

DFEH-300-03 (01/05)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

# RIGHT TO-SUE COMPLAINT INFORMATION SHEET

DFEH needs a separate signed complaint for each employer, person, labor organization, employment agency, apprenticeship committee, state or local government agency you wish to file against. If you are filing against both a company and an individual(s), please complete separate complaint forms naming the company or an individual in the appropriate area.

Please complete the following so that DFEH can process your complaint and for DFEH for statistical purposes, and return with your signed complaint(s):

YOUR RACE/ETHNICITY (Check one)
___ African-American
___ African - Other
___ Asian/Pacific Islander (specify) _____
XX Caucasian (Non-Hispanic)
___ Native American
___ Hispanic (specify) _____

YOUR PRIMARY LANGUAGE (specify)
English

YOUR AGE: 46

IF FILING BECAUSE OF YOUR NATIONAL ORIGIN/ANCESTRY,
YOUR NATIONAL ORIGIN/ANCESTRY (specify)
_____

IF FILING BECAUSE OF DISABILITY,
YOUR DISABILITY:
___ AIDS
XX Blood/Circulation
XX Brain/Nerves/Muscles
XX Digestive/Urinary/Reproduction
XX Hearing
XX Heart
XX Limbs (Arms/Legs)
XX Mental
___ Sight
XX Speech/Respiratory
XX Spinal/Back

IF FILING BECAUSE OF MARITAL STATUS,
YOUR MARITAL STATUS: (Check one)
___ Cohabitation
___ Divorced
___ Married
___ Single

IF FILING BECAUSE OF RELIGION,
YOUR RELIGION: (specify)
_____

IF FILING BECAUSE OF SEX, THE REASON:
___ Harassment
___ Orientation
___ Pregnancy
___ Denied Right to Wear Pants
___ Other Allegations (List) _____

YOUR GENDER: ___ Female    XX Male

YOUR OCCUPATION:
___ Clerical
___ Craft
___ Equipment Operator
___ Laborer
___ Manager
___ Paraprofessional
___ Professional
___ Sales
___ Service
___ Supervisor
XX Technician

HOW YOU HEARD ABOUT DFEH:
XX Attorney
___ Bus/BART Advertisement
___ Community Organization
___ EEOC
___ EDD
___ Friend
___ Human Relations Commission
___ Labor Standards Enforcement
___ Local Government Agency
___ Poster
___ Prior Contact with DFEH
___ Radio
___ Telephone Book
___ TV
___ DFEH Web Site

DO YOU HAVE AN ATTORNEY WHO HAS AGREED
TO REPRESENT YOU ON YOUR EMPLOYMENT
DISCRIMINATION CLAIMS IN COURT? IF YOU CHECK
"YES", YOU WILL BE RESPONSIBLE FOR HAVING
YOUR ATTORNEY SERVE THIS DFEH COMPLAINT.
X Yes    ___ No

PLEASE PROVIDE YOUR ATTORNEY'S NAME,
ADDRESS AND PHONE NUMBER:
Elladene Lee Katz, Esq. 650.348.8078
327 N.SM Drive, #9, San Mateo, Ca  94401

_____

Your Signature    4/19/07  Date
LARRY OILUND

### INSERT #1

I have been harassed, discriminated against, and retaliated against for reasons based upon my **age, mental and physical disabilities.**

### INSERT #2

**United Airlines/World Headquarters; Glen F. Tilton, CEO; Barbara Liataud; Ron Rich, Industrial Relations Representative; Jim Boland, Manager; Vinnie Aguateesiri, Foreman; Andre St. Louis**

### INSERT #3

I have been harassed, retaliated against and discriminated against for reasons based upon my **age, mental and physical disabilities.**

### INSERT #4

I was first hired by United Airlines on March 10, 1986 and my most recent position was Engine Parts Inspector. Over this extensive employment relationship with United Airlines, I have suffered from specific injuries on the job, including lower and upper back injuries in 1988 and 1998 respectively. The most recent industrial claims are as follows:   a stress claim which was filed regarding an incident on May 21, 2004, a toxic exposure claim filed in February 2004 and a hearing loss claim which was both denied and accepted stemming from injury in 2003. Unfortunately, United Airlines' policy regarding Worker's Compensation claims has been to single the employee out, and create an adversarial relationship, threatening termination. These wrongful actions have given rise to my claims of harassment, retaliation and discrimination for reasons based upon my age, mental and physical disabilities.

I have worked with steel, tin, copper, magnesium and aluminum and in October of 2002 I suffered from symptoms of toxic exposure. After taking tests regarding urinalysis and hair analysis it was determined that there were toxic levels of metal in my body. I filed a claim of toxic poisoning in February of 2004.

In 2003, I was experiencing a serious hearing loss. Initially, after I filed a claim, United Airlines representative denied this claim and then accepted it on the same dates signed by the same person. United Airlines intentionally tried to prevent me from taking a hearing test. However, I discovered other crew members were tested and when I was tested, I had significant hearing loss. I complained that the work area was too noisy because the grit blaster was placed near the employees, and that this level violated State laws. I notified OSHA and they conducted a decibel level test. However, at the time that OSHA came out to

RIGHT TO SUE:
LARRY OILUND                                                    1.

conduct the test, the machines were not in use.    Other employees and I continued to complain to OSHA. United Airlines later built a wall between the employees and the grid blaster. However, by this time, I was perceived as a *"trouble maker"* by supervisors and management. This hearing condition could also be related to toxic metal levels and mercury in particular.

In May of 2004, my claim for toxic exposure poisoning was denied and I became increasingly depressed because of management's refusal to acknowledge my severe condition of toxic poisoning and because management had become hostile towards me. Further, United Airlines conducted a water survey which resulted in a finding of arsenic content in the water supply. This survey was conducted by outside vendor in 2003 and resulted in bottled water being used in the shop. At this same time, I took samples where the outside vendor had disturbed known asbestos locations. I complained to management and they ridiculed me. I had the samples tested and it was proven to be asbestos. Consequently, I was considered by management to be a trouble maker and a malingerer. My stress claim which was filed on May 28, 2004 was denied. Further, on August 11, 2004 my claim for toxic exposure was denied.

In May of 2004, when I went out for a disability leave based upon stress, I was suffering from eating and sleeping issues and an inability to make decisions. My foreman and supervisors singled me out for harassment, retaliation and discrimination based upon this physical disability. I had taken urine and hair analysis tests, and United Airlines refused to consider these results. The tests confirmed that I had high levels of toxic metals in my body, and my doctors concluded that these high levels of such metals, including mercury and manganese, caused an anxiety, depression and a bi-polar condition.

Based on these test results, I have had ongoing intravenous treatments to flush the metals out of my system, and I have had ongoing psychological treatment   · for the anxiety, depression and bi-polar condition.    I have complained to management about the harassment, retaliation and discrimination, and I was placed on an extended leave of absence. The foreman, Vinnie Agvateesiri and Manager, Jim Boland, miscalculated my approved sick leave and leave of absence, resulting in a loss of seniority and pay for me. I filed grievances related to these issues which relate back to 2004 and these claims are ongoing and continuous.

On June 30, 2006, I met with a United Airlines nurse to obtain medical clearance to return to work. My personal doctors had cleared me to return to work, full time, starting in July of 2006. Ms. Garner, the nurse, stated that she could not make the decision to clear me without a full clinical narrative. I brought back a

narrative on July 10, 2006. Ms. Garner refused to return me back to work, stating that there was not enough detail.

On July 11, 2006, I met with Dr. Hodges, the Head of United Airlines' Medical Department, to inform her that I was starting my swing shift within the hour, that I had clinical narratives from my doctors, and that I had been cleared to return to work. Dr. Hodges responded that she was hesitant to have me return to work unless I agreed to a full urinalysis. I agreed to the urinalysis if Dr. Hodges would promise to fill out a first report of injury, if the urinalysis showed a normal manganese level. This would prove that my claim of toxic exposure to metal poisoning was valid based upon previous tests taken in 2004.

Dr. Hodges agreed that if the urinalysis proved to be normal she would fill out the first report of injury. The urinalysis proved to be normal and the toxic exposure injury was confirmed. Dr. Hodges sent the first report of injury form to my foreman, Vinnie Agvateesiri. On July 15, 2006, the test results clearly showed that, compared to the November 11, 2003 toxic analysis, the manganese level was within reference. I had suffered for two years from toxic metal poisoning. No one at United Airlines believed this condition existed or that it had serious medical consequences.

I reported to Vinnie Agvateesiri, the Foreman, with an unrestricted authorization to return to work. Mr. Agvateesiri was unprepared and complained that he had no warning of my return. Mr. Agvateesiri refused to give me a key card to punch in and out. Instead, I was told to work while management determined how to get a key card from security. I was forced to fill out handwritten exception forms to check in and out. Mr. Agvateesiri refused to sign and accept these forms, and he continued to refuse to fill out paperwork to release my key card. Further, Mr. Agvateesiri continued to refuse to give me any payroll exception and United Airlines refused to pay me. •

Mr. Agvateesiri claimed that no one was at the Human Resources Department at 3:00 p.m. to correct this matter. He typed out a security authorization which security rejected because it was not an official form. Consequently, I was forced to input in the computer that I was receiving on the job training to prove that I was at work. Mr. Agvateesiri continued to refuse to give me a key card, reiterating that he was not ready for me to return to work, and asked that I leave the premises, but promising that he would pay me for eight hours of work.

I returned to work the next day and Mr. Agvateesiri continued to harass, retaliate, and discriminate against me by refusing to sign a payroll exception form. I filled the form out and Mr. Agvateesiri refused to sign. Mr. Agvateesiri claimed that he did not know how to obtain a key card to allow me to return to

work. Mr. Agvateesiri was one of the Supervisors who harassed, retaliated and discriminated against me throughout my disabilities since 2002, 2003 and 2004. Because of Mr. Agvateesiri and Mr. Boland, management incorrectly miscalculated my leave of absence status while I was out on extended medical leave. Because of this miscalculation, I lost over 1,017 hours of industrial sick leave at $28.00 per hour, amounting to $28,476.00. Further, I lost benefits and stock disbursement of approximately $22,000.00, and my seniority has been affected. There have been other damages, including loss of 1/3 of my pension plan.

On July 13, 2006, I requested a meeting with Mr. Boland to discuss these issues. I complained that I was still refused a key card and that there were monies still owed to me. I complained about the manner in which I was being treated by management and United Airlines' doctors. I filed three petitions of grievances regarding these incidents. I complained to Mr. Boland because the Company refused to return me to work and then after receiving clearance, the Company refused to give me a security card and refused to pay me.

On July 17, 2006 I met with Mr. Boland and Mr. Agvateesiri complaining about the additional monies owed. At this meeting Mr. Boland agreed to pay me five weeks and two days vacation. On July 24, 2006 and July 25, 2006 Dr. Hodges reversed her clearance without reason. Dr. Hodges demanded that further documentation was necessary to return me back to work, including the urinalysis report and a full clinical narrative.

Dr. Hodges' change of mind and refusal to return me back to work caused further confusion and hostility. Mr. Agvateesiri demanded that I bring in a clinical note before I could re-enter the premises. I brought in the documentation on September 11, 2006 including the urine reports. I was given an unrestricted return to work for a second time, however, the Payroll Department claimed that they lost the forms and were refusing to pay me for any time that I already worked in July 2006. I complained to Mr. Boland about the refusal to pay my wages and Mr. Boland claimed that he could not answer for Payroll.

Despite my urinalysis documentation, Dr. Hodges once again refused to allow me to return to work without a full clinical narrative. I was distressed over the ongoing harassment, retaliation and discrimination. Nevertheless, I came in on September 11 and September 13, 2006 with test results and on September 14, 2006 I submitted another clinical narrative for Dr. Hodges' review. United Airlines continued to harass and retaliate and discriminate against me. On September 23, 2006, Dr. Hodges demanded to speak with me regarding the manganese results before approving me to return to work.



These actions have caused me to suffer further clinical depression and anxiety and on July 13, 2006 I was out on a recommended medical leave for clinical depression. Dr. Hodges has continued to demand any and all clinical narratives from 2004, including prescriptions, covering any and all absences past and present, including *"proposed or expected treatment"*. Meanwhile, I have been told by United Airlines' doctors and members of management that I should consider working somewhere else.

I have submitted narratives on the United Airlines' official form for the past several years. The clinical narratives on the Company forms have been accepted and signed by management in the past. However, Dr. Hodges now claims she does not have a full and complete copy of any and all clinical narrative forms submitted by me. Dr. Hodges continues to demand these forms be submitted to her again and that they include any *"proposed or expected future treatment"*.

I have been harassed to such an extent that I have suffered from another episode of clinical depression. Despite the fact that these forms have been signed and accepted in the past, Dr. Hodges has now refused to recognize the form and sign the form. I complained to the Industrial Relations Representative, Ron Rich, and met with other members of management about these actions. I have been singled out, treated unfairly, harassed, retaliated against, and discriminated against for the past two years and this has been an ongoing, continuous and abusive employment relationship. I have been told that United still does not have all of the paperwork I have already submitted to Dr. Hodges and to management.

I am currently out for clinical depression. I have submitted, on a regular basis, the clinical narratives which have been required by the Company. Despite my submission of these records, Dr. Hodges has demanded that I resubmit other clinical narratives that must be signed by a medical doctor. I am currently being treated by Dr. Myrna Astillero, a Psychiatrist and medical doctor. United Airlines continues to send demands to me to submit the clinical narratives which I have already submitted, effectively duplicating the paperwork required by Union Contract.

A letter was sent on November 9, 2006 to me from United Airlines stating that medical documentation from my treating physicians substantiating my absence from work since September 29, 2006 had not been received. This letter further stated that Dr. Hodges demanded medical documentation on October 25, 2006 for my continued absence from work. According to this letter, there was not sufficient information to authorize my continued absence. I continue to be



harassed by United Airlines because he has submitted clinical narratives signed by my psychologist, my psychiatrist, and my medical doctor for this absence.

Dr. Hodges' demand for information goes beyond United Airlines' policies and procedures.    In the alternative, I was directed to see Dr. Hodges by November 27, 2006 if a clinical narrative could not be provided.  I in fact provided a third clinical narrative filled out by Dr. Cervantes and the first copy of my most recent November 3, 2006 toxic report showing elevated mercury levels in my system. Those items were faxed to United Airlines.

Despite these clinical narratives, Dr. Hodges, Barbara Liautaud and Mr. Agvateesiri threatened me that I may be terminated for job abandonment. Under the  Collective Bargaining Agreement, and state and federal laws,  I am allowed extended medical leave status.  I have telephoned the Company and have faxed information to them, including  clinical narratives on October 24, 2006 and again on December 6, 2006. Despite my continued efforts, United Airlines continues to send memos, including one dated December 11, 2006 claiming that there was no personal record of a clinical narrative received by United Airlines concerning my case.  Again, the Company demanded that a clinical narrative be submitted by December 26, 2006.  These actions violate the Collective Bargaining Agreement related to Section 11.2 et.seq. "*illness leave of absence*".  Further, these actions violate State and federal statutes prohibiting harassment, retaliation and discrimination against an employee for reasons based upon physical disabilities.

I continue to suffer both mental and physical disabilities directly related to my +employment relationship with United Airlines.

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY

ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2941  TTY (800) 700-2320  Fax (510) 622-2951
www.dfeh.ca.gov

May 24, 2007

Elladene Lee Katz
Attorney

MAY 2 9 2007

327 N San Mateo Dr
San Mateo, CA 94401

RE:  E200607M1504-03-apc
     OILUND/AGVATEERIRI, VINNIE, As an individual

Dear Elladene Lee Katz:

# NOTICE TO COMPLAINANT'S ATTORNEY

Enclosed is a copy of your client's complaint of discrimination filed with the
Department of Fair Employment and Housing on 5/22/2007 pursuant to the
California Fair Employment and Housing Act, Government Code section 12900 et
seq. Also enclosed is a copy of your client's Notice of Case Closure, which
constitutes your client's right-to-sue notice.

Please note that under Government Code section 12962, you are responsible for
service of the complaint on respondent(s). You should also enclose a copy of the
Notice of Case Closure along with the complaint. These documents must be
served within 60 days of the filing date of the complaint. Government Code
section 12962(b) further provides that complaints must be served either personally
or by certified mail with return receipt requested.

For additional information, please read the enclosed Notice of Case Closure that
explains the conditions for filing a private lawsuit in the State of California.

Sincerely,
Allan H. Pederson
District Administrator

Enclosure:   Complaint of Discrimination
             Notice of Case Closure

DFEH-200-06 (01/05)

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2941 TTY (800) 700-2320 Fax (510) 622-2951
www.dfeh.ca.gov



May 24, 2007

Elladene Lee Katz
Attorney

327 N San Mateo Dr
San Mateo, CA 94401

RE: E200607M1504-03-apc
 OILUND/AGVATEERIRI, VINNIE, As an individual

Dear Elladene Lee Katz:

## NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective May 22, 2007 because an immediate right-to-sue notice was requested. DFEH will take no further action on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act, whichever is earlier.

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

*Allan H. Pederson*

Allan H. Pederson
District Administrator

cc:    Case File

H R Department
UNITED AIRLINES/WORLD HEADQUARTERS
1200 East Algonquin Rd
Elk Grove Township, IL  6007

**EMPLOYMENT**

COMPLAINT OF DISCRIMINATION UNDER   DFEH # E200___7M1504-03-apc
THE PROVISIONS OF THE CALIFORNIA                DFEH USE ONLY
FAIR EMPLOYMENT AND HOUSING ACT

CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

| YOUR NAME (Indicate Mr. or Ms.) | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|
| Larry Oilund | |

ADDRESS
211 San Luis Avenue

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| San Bruno, Ca  94066 | | |

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| Vinnie Agvateesiri, Foreman -- United Airlines | |

| ADDRESS | | DFEH USE ONLY |
|---|---|---|
| SFO Int'l SFMC Bldg., Dept SFOPI | | |

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| San Francisco, Ca  94066 | | |

| NO. OF EMPLOYEES/MEMBERS (If known) | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year) | RESPONDENT CODE |
|---|---|---|

THE PARTICULARS ARE

On __July 10, 2007__ I was ___ fired
 __XX__ laid off
 ___ demoted
 __XX__ harassed
 ___ genetic characteristics testing
 ___ forced to quit

 __XX__ denied employment
 ___ denied promotion
 ___ denied transfer
 __XX__ denied accommodation
 ___ impermissible non-job-related inquiry
 __XX__ other (specify) __Insert #1__

 __XX__ denied family or medical leave
 ___ denied pregnancy leave
 ___ denied equal pay
 ___ denied right to wear pants
 ___ denied pregnancy accommodation

Insert #2

by _____
    Name of Person

Job Title (supervisor/manager/personnel director/etc.)

because of my: ___ sex
 __XX__ age
 ___ religion
 __XX__ race/color

 ___ national origin/ancestry
 ___ marital status
 ___ sexual orientation
 ___ association

 __XX__ physical disability
 __XX__ mental disability
 
 __XX__ other (specify)

 ___ cancer
 ___ genetic characteristic
 Insert #3

 __XX__ (Circle one) filing, protesting, participating in Investigation (retaliation for)

the reason given by _____
                              •
                         Name of Person and Job Title

was because of
please state
that you believe
the reason(s)]

Insert #4

With to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

Have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated   APR 1 9 2007

_____
COMPLAINANT'S SIGNATURE

San Mateo, Ca
    City

RECEIVED   LARRY OILUND

DATE FILED

DFEH-300-03 (01/05)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

Department of Fair
Employment and Housing
Oakland District Office

Legal
Solutions
Co. Plus

STATE OF CALIFORNIA
LS-DFEH1

# RIGHT-TO-SUE COMPLAINT INFORMATION SHEET

DFEH needs a separate signed complaint for each employer, person, labor organization, employment agency, apprenticeship committee, state or local government agency you wish to file against. If you are filing against both a company and an individual(s), please complete separate complaint forms naming the company or an individual in the appropriate area.

Please complete the following so that DFEH can process your complaint and for DFEH for statistical purposes, and return with your signed complaint(s):

YOUR RACE/ETHNICITY (Check one)
___ African-American
___ African - Other
___ Asian/Pacific Islander (specify) _____
XX Caucasian (Non-Hispanic)
___ Native American
___ Hispanic (specify) _____

YOUR PRIMARY LANGUAGE (specify)
English

YOUR AGE: 46

IF FILING BECAUSE OF YOUR NATIONAL ORIGIN/ANCESTRY,
YOUR NATIONAL ORIGIN/ANCESTRY (specify)

_____

IF FILING BECAUSE OF DISABILITY,
YOUR DISABILITY:
___ AIDS
XX Blood/Circulation
XX Brain/Nerves/Muscles
XX Digestive/Urinary/Reproduction
XX Hearing
XX Heart
XX Limbs (Arms/Legs)
XX Mental
___ Sight
XX Speech/Respiratory
XX Spinal/Back

IF FILING BECAUSE OF MARITAL STATUS,
YOUR MARITAL STATUS: (Check one)
___ Cohabitation
___ Divorced
___ Married
___ Single

IF FILING BECAUSE OF RELIGION,
YOUR RELIGION: (specify)

_____

IF FILING BECAUSE OF SEX, THE REASON:
___ Harassment
___ Orientation
___ Pregnancy
___ Denied Right to Wear Pants
___ Other Allegations (List) _____

YOUR GENDER: ___ Female  XX Male

YOUR OCCUPATION:
___ Clerical
___ Craft
___ Equipment Operator
___ Laborer
___ Manager
___ Paraprofessional
___ Professional
___ Sales
___ Service
___ Supervisor
XX Technician

HOW YOU HEARD ABOUT DFEH:
XX Attorney
___ Bus/BART Advertisement
___ Community Organization
___ EEOC
___ EDD
___ Friend
___ Human Relations Commission
___ Labor Standards Enforcement
___ Local Government Agency
___ Poster
___ Prior Contact with DFEH
___ Radio
___ Telephone Book
___ TV
___ DFEH Web Site

DO YOU HAVE AN ATTORNEY WHO HAS AGREED TO REPRESENT YOU ON YOUR EMPLOYMENT DISCRIMINATION CLAIMS IN COURT? IF YOU CHECK "YES", YOU WILL BE RESPONSIBLE FOR HAVING YOUR ATTORNEY SERVE THIS DFEH COMPLAINT.

X Yes    ___ No

PLEASE PROVIDE YOUR ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER.
Elladene Lee Katz, Esq. 650.348.8078
327 N.SM Drive, #9, San Mateo, Ca  94401

_____

Your Signature          Date 4/19/07
LARRY OILUND

Legal

DFEH-300-03-1 (01/05)
Department of Fair Employment and Housing
State of California

## INSERT #1

I have been harassed, discriminated against, and retaliated against for reasons based upon my **age, mental and physical disabilities.**

## INSERT #2

**United Airlines/World Headquarters; Glen F. Tilton, CEO; Barbara Liataud; Ron Rich, Industrial Relations Representative; Jim Boland, Manager; Vinnie Aguateesiri, Foreman; Andre St. Louis**

## INSERT #3

I have been harassed, retaliated against and discriminated against for reasons based upon my **age, mental and physical disabilities.**

## INSERT #4

I was first hired by United Airlines on March 10, 1986 and my most recent position was Engine Parts Inspector. Over this extensive employment relationship with United Airlines, I have suffered from specific injuries on the job, including lower and upper back injuries in 1988 and 1998 respectively. The most recent industrial claims are as follows:    a stress claim which was filed regarding an incident on May 21, 2004, a toxic exposure claim filed in February 2004 and a hearing loss claim which was both denied and accepted stemming from injury in 2003. Unfortunately, United Airlines' policy regarding Worker's Compensation claims has been to single the employee out, and create an adversarial relationship, threatening termination. These wrongful actions have given rise to my claims of harassment, retaliation and discrimination for reasons based upon my age, mental and physical disabilities.

I have worked with steel, tin, copper, magnesium and aluminum and in October of 2002 I suffered from symptoms of toxic exposure. After taking tests regarding urinalysis and hair analysis it was determined that there were toxic levels of metal in my body. I filed a claim of toxic poisoning in February of 2004.

In 2003, I was experiencing a serious hearing loss. Initially, after I filed a claim, United Airlines representative denied this claim and then accepted it on the same dates signed by the same person. United Airlines intentionally tried to prevent me from taking a hearing test. However, I discovered other crew members were tested and when I was tested, I had significant hearing loss.   I complained that the work area was too noisy because the grit blaster was placed near the employees, and that this level violated State laws.   I notified OSHA and they conducted a decibel level test.  However, at the time that OSHA came out to

RIGHT TO SUE:
LARRY OILUND                                                                                            1.

conduct the test, the machines were not in use.   Other employees and I continued to complain to OSHA. United Airlines later built a wall between the employees and the grid blaster. However, by this time, I was perceived as a *"trouble maker"* by supervisors and management.  This hearing condition could also be related to toxic metal levels and mercury in particular.

In May of 2004, my claim for toxic exposure poisoning was denied and I became increasingly depressed because of management's refusal to acknowledge my severe condition of toxic poisoning and because management had become hostile towards me.  Further, United Airlines conducted a water survey which resulted in a finding of arsenic content in the water supply.  This survey was conducted by outside vendor in 2003 and resulted in bottled water being used in the shop.  At this same time, I took samples where the outside vendor had disturbed known asbestos locations.  I complained to management and they ridiculed me.  I had the samples tested and it was proven to be asbestos. Consequently, I was considered by management to be a trouble maker and a. malingerer.  My stress claim which was filed on May 28, 2004 was denied. Further, on August 11, 2004 my claim for toxic exposure was denied.

In May of 2004, when I went out for a disability leave based upon stress, I was suffering from eating and sleeping issues and an inability to make decisions.  My foreman and supervisors singled me out for harassment, retaliation and discrimination based upon this physical disability.  I had taken urine and hair analysis tests, and United Airlines refused to consider these results.  The tests confirmed that I had high levels of toxic metals in my body, and my doctors concluded that these high levels of such metals, including mercury and manganese, caused  an anxiety, depression and a bi-polar condition.

Based on these test results, I have had ongoing intravenous treatments to flush the metals out of my system, and I have had ongoing 'psychological treatment for the anxiety, depression and bi-polar condition.   I have complained to management about the harassment, retaliation and discrimination, and I was placed on an extended leave of absence.  The foreman, Vinnie Agvateesiri and Manager, Jim Boland, miscalculated my approved sick leave and leave of absence,  resulting in a loss of seniority and pay for me.  I filed grievances related to these issues which relate back to 2004 and these claims are ongoing and continuous.

On June 30, 2006, I met with a United Airlines nurse to obtain medical clearance to return to work. My personal doctors had cleared me to return to work,  full time,  starting in July of 2006. Ms. Garner, the nurse, stated that she could not make the decision to clear me without a full clinical narrative.  I brought back a

narrative on July 10, 2006. Ms. Garner refused to return me back to work, stating that there was not enough detail.

On July 11, 2006, I met with Dr. Hodges, the Head of United Airlines' Medical Department, to inform her that I was starting my swing shift within the hour, that I had clinical narratives from my doctors, and that I had been cleared to return to work. Dr. Hodges responded that she was hesitant to have me return to work unless I agreed to a full urinalysis. I agreed to the urinalysis if Dr. Hodges would promise to fill out a first report of injury, if the urinalysis showed a normal manganese level. This would prove that my claim of toxic exposure to metal poisoning was valid based upon previous tests taken in 2004.

Dr. Hodges agreed that if the urinalysis proved to be normal she would fill out the first report of injury. The urinalysis proved to be normal and the toxic exposure injury was confirmed. Dr. Hodges sent the first report of injury form to my foreman, Vinnie Agvateesiri. On July 15, 2006, the test results clearly showed that, compared to the November 11, 2003 toxic analysis, the manganese level was within reference. I had suffered for two years from toxic metal poisoning. No one at United Airlines believed this condition existed or that it had serious medical consequences.

I reported to Vinnie Agvateesiri, the Foreman, with an unrestricted authorization to return to work. Mr. Agvateesiri was unprepared and complained that he had no warning of my return. Mr. Agvateesiri refused to give me a key card to punch in and out. Instead, I was told to work while management determined how to get a key card from security. I was forced to fill out handwritten exception forms to check in and out. Mr. Agvateesiri refused to sign and accept these forms, and he continued to refuse to fill out paperwork to release my key card. Further, Mr. Agvateesiri continued to refuse to give me any payroll exception and United Airlines refused to pay me.

Mr. Agvateesiri claimed that no one was at the Human Resources Department at 3:00 p.m. to correct this matter. He typed out a security authorization which security rejected because it was not an official form. Consequently, I was forced to input in the computer that I was receiving on the job training to prove that I was at work. Mr. Agvateesiri continued to refuse to give me a key card, reiterating that he was not ready for me to return to work, and asked that I leave the premises, but promising that he would pay me for eight hours of work.

I returned to work the next day and Mr. Agvateesiri continued to harass, retaliate, and discriminate against me by refusing to sign a payroll exception form. I filled the form out and Mr. Agvateesiri refused to sign. Mr. Agvateesiri claimed that he did not know how to obtain a key card to allow me to return to

work. Mr. Agvateesiri was one of the Supervisors who harassed, retaliated and discriminated against me throughout my disabilities since 2002, 2003 and 2004. Because of Mr. Agvateesiri and Mr. Boland, management incorrectly miscalculated my leave of absence status while I was out on extended medical leave. Because of this miscalculation, I lost over 1,017 hours of industrial sick leave at $28.00 per hour, amounting to $28,476.00. Further, I lost benefits and stock disbursement of approximately $22,000.00, and my seniority has been affected. There have been other damages, including loss of 1/3 of my pension plan.

On July 13, 2006, I requested a meeting with Mr. Boland to discuss these issues. I complained that I was still refused a key card and that there were monies still owed to me. I complained about the manner in which I was being treated by management and United Airlines' doctors. I filed three petitions of grievances regarding these incidents. I complained to Mr. Boland because the Company refused to return me to work and then after receiving clearance, the Company refused to give me a security card and refused to pay me.

On July 17, 2006 I met with Mr. Boland and Mr. Agvateesiri complaining about the additional monies owed. At this meeting Mr. Boland agreed to pay me five weeks and two days vacation. On July 24, 2006 and July 25, 2006 Dr. Hodges reversed her clearance without reason. Dr. Hodges demanded that further documentation was necessary to return me back to work, including the urinalysis report and a full clinical narrative.

Dr. Hodges' change of mind and refusal to return me back to work caused further confusion and hostility. Mr. Agvateesiri demanded that I bring in a clinical note before I could re-enter the premises. I brought in the documentation on September 11, 2006 including the urine reports. I was given an unrestricted return to work for a second time, however, the Payroll Department claimed that they lost the forms and were refusing to pay me for any time that I already worked in July 2006. I complained to Mr. Boland about the refusal to pay my wages and Mr. Boland claimed that he could not answer for Payroll.

Despite my urinalysis documentation, Dr. Hodges once again refused to allow me to return to work without a full clinical narrative. I was distressed over the ongoing harassment, retaliation and discrimination. Nevertheless, I came in on September 11 and September 13, 2006 with test results and on September 14, 2006 I submitted another clinical narrative for Dr. Hodges' review. United Airlines continued to harass and retaliate and discriminate against me. On September 23, 2006, Dr. Hodges demanded to speak with me regarding the manganese results before approving me to return to work.

RIGHT TO SUE:
LARRY OILUND                                                            4.

These actions have caused me to suffer further clinical depression and anxiety and on July 13, 2006 I was out on a recommended medical leave for clinical depression. Dr. Hodges has continued to demand any and all clinical narratives from 2004, including prescriptions, covering any and all absences past and present, including *"proposed or expected treatment"*. Meanwhile, I have been told by United Airlines' doctors and members of management that I should consider working somewhere else.

I have submitted narratives on the United Airlines' official form for the past several years. The clinical narratives on the Company forms have been accepted and signed by management in the past. However, Dr. Hodges now claims she does not have a full and complete copy of any and all clinical narrative forms submitted by me. Dr. Hodges continues to demand these forms be submitted to her again and that they include any *"proposed or expected future treatment"*.

I have been harassed to such an extent that I have suffered from another episode of clinical depression. Despite the fact that these forms have been signed and accepted in the past, Dr. Hodges has now refused to recognize the form and sign the form. I complained to the Industrial Relations Representative, Ron Rich, and met with other members of management about these actions. I have been singled out, treated unfairly, harassed, retaliated against, and discriminated against for the past two years and this has been an ongoing, continuous and abusive employment relationship. I have been told that United still does not have all of the paperwork I have already submitted to Dr. Hodges and to management.

I am currently out for clinical depression. I have submitted, on a regular basis, the clinical narratives which have been required by the Company. Despite my submission of these records, Dr. Hodges has demanded that I resubmit other clinical narratives that must be signed by a medical doctor. I am currently being treated by Dr. Myrna Astillero, a Psychiatrist and medical doctor. United Airlines continues to send demands to me to submit the clinical narratives which I have already submitted, effectively duplicating the paperwork required by Union Contract.

A letter was sent on November 9, 2006 to me from United Airlines stating that medical documentation from my treating physicians substantiating my absence from work since September 29, 2006 had not been received. This letter further stated that Dr. Hodges demanded medical documentation on October 25, 2006 for my continued absence from work. According to this letter, there was not sufficient information to authorize my continued absence. I continue to be

RIGHT TO SUE:
LARRY OILUND                                                                    5.

harassed by United Airlines because he has submitted clinical narratives signed by my psychologist, my psychiatrist, and my medical doctor for this absence.

Dr. Hodges' demand for information goes beyond United Airlines' policies and procedures.   In the alternative, I was directed to see Dr. Hodges by November 27, 2006 if a clinical narrative could not be provided.  I in fact provided a third clinical narrative filled out by Dr. Cervantes and the first copy of my most recent November 3, 2006 toxic report showing elevated mercury levels in my system. Those items were faxed to United Airlines.

Despite these clinical narratives, Dr. Hodges, Barbara Liautaud and Mr. Agvateesiri threatened  me that I may be terminated for job abandonment. Under the Collective Bargaining Agreement, and state and federal laws, I am allowed extended medical leave status.   I have telephoned the Company and have faxed information to them, including clinical narratives on October 24, 2006 and again on December 6, 2006. Despite my continued efforts, United Airlines continues to send memos, including one dated December 11, 2006 claiming that there was no personal record of a clinical narrative received by United Airlines concerning my case. Again, the Company demanded that a clinical narrative be submitted by December 26, 2006. These actions violate the Collective Bargaining Agreement related to Section 11.2 et.seq. "*illness leave of absence*". Further, these actions violate State and federal statutes prohibiting harassment, retaliation and discrimination against an employee for reasons based upon physical disabilities.

I continue to suffer both mental and physical disabilities directly related to my +employment relationship with United Airlines.

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY                                                ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2941 TTY (800) 700-2320 Fax (510) 622-2951
www.dfeh.ca.gov

May 24, 2007

Elladene Lee Katz
Attorney

> RECEIVED
>
> MAY 2 9 2007

327 N San Mateo Dr
San Mateo, CA 94401

RE: E200607M1504-06-apc
    OILUND/ST. LOUIS, ANDRE, As an individual

Dear Elladene Lee Katz:

# NOTICE TO COMPLAINANT'S ATTORNEY

Enclosed is a copy of your client's complaint of discrimination filed with the Department of Fair Employment and Housing on 5/22/2007 pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also enclosed is a copy of your client's Notice of Case Closure, which constitutes your client's right-to-sue notice.

Please note that under Government Code section 12962, you are responsible for service of the complaint on respondent(s). You should also enclose a copy of the Notice of Case Closure along with the complaint. These documents must be served within 60 days of the filing date of the complaint. Government Code section 12962(b) further provides that complaints must be served either personally or by certified mail with return receipt requested.

For additional information, please read the enclosed Notice of Case Closure that explains the conditions for filing a private lawsuit in the State of California.

Sincerely,
Allan H. Pederson
District Administrator

Enclosure:   Complaint of Discrimination
             Notice of Case Closure

DFEH-200-06 (01/05)

STATE OF CALIFORNIA - STATE AND CONSUMER SE          CY                                        ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2941 TTY (800) 700-2320 Fax (510) 622-2951
www.dfeh.ca.gov



May 24, 2007


Elladene Lee Katz
Attorney

327 N San Mateo Dr
San Mateo, CA 94401

RE:    E200607M1504-06-apc
        OILUND/ST. LOUIS, ANDRE, As an individual

Dear Elladene Lee Katz:

### NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective
May 22, 2007 because an immediate right-to-sue notice was requested. DFEH will
take no further action on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the
Fair Employment and Housing Act against the person, employer, labor organization
or employment agency named in the above-referenced complaint. The civil action
must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment
Opportunity Commission (EEOC) must be visited to file a complaint within 30 days
of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged
discriminatory act, whichever is earlier.

·Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless
the case is still open at the end of the three-year period.

Sincerely Pederson

Allan H. Pederson
District Administrator

cc:    Case File

H R Department
UNITED AIRLINES/WORLD HEADQUARTERS
1200 East Algonquin Rd
Elk Grove Township, IL 6007

DFEH-200-43 (06/06)

**EMPLOYMENT**

**COMPLAINT OF DISCRIMINATION UNDER**
**THE PROVISIONS OF THE CALIFORNIA**
**FAIR EMPLOYMENT AND HOUSING ACT**

DFEH # ____607M1504-06-apc
DFEH USE ONLY

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

| YOUR NAME (indicate Mr. or Ms.) Larry Oilund | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|

| ADDRESS 211 San Luis Avenue | | |
|---|---|---|
| CITY/STATE/ZIP San Bruno, Ca 94066 | COUNTY | COUNTY CODE |

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP
COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

| NAME Addre St. Louis -- UnitedAirlines | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| ADDRESS SFO Int'l SFMC Bldg., Dept SFOPI | DFEH USE ONLY |

| CITY/STATE/ZIP San Francisco, Ca 94066 | COUNTY | COUNTY CODE |
|---|---|---|

| NO. OF EMPLOYEES/MEMBERS (if known) | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year) | RESPONDENT CODE |
|---|---|---|

THE PARTICULARS ARE:

On July 10, 2007 ____ I was ____ fired

| | | |
|---|---|---|
| __XX__ laid off | __XX__ denied employment | __XX__ denied family or medical leave |
| ____ demoted | ____ denied promotion | ____ denied pregnancy leave |
| __XX__ harassed | ____ denied transfer | ____ denied equal pay |
| ____ genetic characteristics testing | __XX__ denied accommodation | ____ denied right to wear pants |
| ____ forced to quit | ____ impermissible non-job-related inquiry | ____ denied pregnancy accommodation |
| | __XX__ other (specify) __Insert #1__ | |

Insert #2

by _____
Name of Person         Job Title (supervisor/manager/personnel director/etc.)

because of my:
____ sex          ____ national origin/ancestry      __XX__ physical disability      ____ cancer
__XX__ age         ____ marital status               __XX__ mental disability        ____ genetic characteristic
____ religion     ____ sexual orientation
__XX__ race/color  ____ association                  __XX__ other (specify) __Insert #3__

__XX__ (Circle one) filing;
protesting; participating in
investigation (retaliation for)

the reason given by _____
Name of Person and Job Title

Was because of
[please state                    Insert #4
what you believe
to be reason(s)]

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated ____APR 1 9 2007____

_____
COMPLAINANT'S SIGNATURE

At San Mateo Ca
         City

RECEIVED  IARRY OILUND

DATE FILED

DFEH-300-03 (01/05)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

Department of Fair
Employment and Housing
Oakland District Office


Legal
Solutions
Plus

STATE OF CALIFORNIA
LS-DFEHi

# RIG'    -SUE COMPLAINT INFO    ATION SHEET

DFEH needs a separate signed complaint for each employer, person, labor organization, employment agency, apprenticeship committee, state or local government agency you wish to file against. If you are filing against both a company and an individual(s), please complete separate complaint forms naming the company or an individual in the appropriate area.

Please complete the following so that DFEH can process your complaint and for DFEH for statistical purposes, and return with your signed complaint(s):

YOUR RACE:/ETHNICITY (Check one)
___ African-American
___ African - Other
___ Asian/Pacific Islander (specify) _____
XX  Caucasian (Non-Hispanic)
___ Native American
___ Hispanic (specify) _____

YOUR PRIMARY LANGUAGE (specify)
English

YOUR AGE:  __ 46

IF FILING BECAUSE OF YOUR NATIONAL ORIGIN/ANCESTRY,
YOUR NATIONAL ORIGIN/ANCESTRY (specify)

IF FILING BECAUSE OF DISABILITY,
YOUR DISABILITY:
___ AIDS
XX  Blood/Circulation
XX  Brain/Nerves/Muscles
XX  Digestive/Urinary/Reproduction
XX  Hearing
XX  Heart
XX  Limbs (Arms/Legs)
XX  Mental
___ Sight
XX  Speech/Respiratory
XX  Spinal/Back

IF FILING BECAUSE OF MARITAL STATUS,
YOUR MARITAL STATUS: (Check one)
___ Cohabitation
___ Divorced
___ Married
___ Single

IF FILING BECAUSE OF RELIGION,
YOUR RELIGION: (specify)

IF FILING BECAUSE OF SEX, THE REASON
___ Harassment
___ Orientation
___ Pregnancy
___ Denied Right to Wear Pants
___ Other Allegations (List) _____

YOUR GENDER:  ___ Female    XX Male
YOUR OCCUPATION:
___ Clerical
___ Craft
___ Equipment Operator
___ Laborer
___ Manager
___ Paraprofessional
___ Professional
___ Sales
___ Service
___ Supervisor
XX  Technician  ,

HOW YOU HEARD ABOUT DFEH:
XX  Attorney
___ Bus/BART Advertisement
___ Community Organization
___ EEOC
___ EDD
___ Friend
___ Human Relations Commission
___ Labor Standards Enforcement
___ Local Government Agency
___ Poster
___ Prior Contact with DFEH
___ Radio
___ Telephone Book
___ TV
___ DFEH Web Site

DO YOU HAVE AN ATTORNEY WHO HAS AGREED
TO REPRESENT YOU ON YOUR EMPLOYMENT
DISCRIMINATION CLAIMS IN COURT? IF YOU CHECK
"YES", YOU WILL BE RESPONSIBLE FOR HAVING
YOUR ATTORNEY SERVE THIS DFEH COMPLAINT.
X  Yes      ___ No

PLEASE PROVIDE YOUR ATTORNEY'S NAME,
ADDRESS AND PHONE NUMBER:
Elladene Lee Katz, Esq. 650.348.8078
327 N.SM Drive, #9, San Mateo, Ca  94401

_____     4/19/07
Your Signature                  Date
LARRY OILUND

DFEH-300-03-1 (01/05)
Department of Fair Employment and Housing
State of California

Legal
Solutions

### INSERT #1
I have been harassed, discriminated against, and retaliated against for reasons based upon my **age, mental and physical disabilities.**

### INSERT #2
**United Airlines/World Headquarters; Glen F. Tilton, CEO; Barbara Liataud; Ron Rich, Industrial Relations Representative; Jim Boland, Manager; Vinnie Aguateesiri, Foreman; Andre St. Louis**

### INSERT #3
I have been harassed, retaliated against and discriminated against for reasons based upon my **age, mental and physical disabilities.**

### INSERT #4
I was first hired by United Airlines on March 10, 1986 and my most recent position was Engine Parts Inspector. Over this extensive employment relationship with United Airlines, I have suffered from specific injuries on the job, including lower and upper back injuries in 1988 and 1998 respectively. The most recent industrial claims are as follows:   a stress claim which was filed regarding an incident on May 21, 2004, a toxic exposure claim filed in February 2004 and a hearing loss claim which was both denied and accepted stemming from injury in 2003. Unfortunately, United Airlines' policy regarding Worker's Compensation claims has been to single the employee out, and create an adversarial relationship, threatening termination. These wrongful actions have given rise to my claims of harassment, retaliation and discrimination for reasons based upon my age, mental and physical disabilities.

I have worked with steel, tin, copper, magnesium and aluminum and in October of 2002 I suffered from symptoms of toxic exposure. After taking tests regarding urinalysis and hair analysis it was determined that there were toxic levels of metal in my body. I filed a claim of toxic poisoning in February of 2004.

In 2003, I was experiencing a serious hearing loss. Initially, after I filed a claim, United Airlines representative denied this claim and then accepted it on the same dates signed by the same person. United Airlines intentionally tried to prevent me from taking a hearing test. However, I discovered other crew members were tested and when I was tested, I had significant hearing loss. I complained that the work area was too noisy because the grit blaster was placed near the employees, and that this level violated State laws. I notified OSHA and they conducted a decibel level test. However, at the time that OSHA came out to

conduct the test, the machines were not in use. Other employees and I continued to complain to OSHA. United Airlines later built a wall between the employees and the grid blaster. However, by this time, I was perceived as a *"trouble maker"* by supervisors and management. This hearing condition could also be related to toxic metal levels and mercury in particular.

In May of 2004, my claim for toxic exposure poisoning was denied and I became increasingly depressed because of management's refusal to acknowledge my severe condition of toxic poisoning and because management had become hostile towards me. Further, United Airlines conducted a water survey which resulted in a finding of arsenic content in the water supply. This survey was conducted by outside vendor in 2003 and resulted in bottled water being used in the shop. At this same time, I took samples where the outside vendor had disturbed known asbestos locations. I complained to management and they ridiculed me. I had the samples tested and it was proven to be asbestos. Consequently, I was considered by management to be a trouble maker and a malingerer. My stress claim which was filed on May 28, 2004 was denied. Further, on August 11, 2004 my claim for toxic exposure was denied.

In May of 2004, when I went out for a disability leave based upon stress, I was suffering from eating and sleeping issues and an inability to make decisions. My foreman and supervisors singled me out for harassment, retaliation and discrimination based upon this physical disability. I had taken urine and hair analysis tests, and United Airlines refused to consider these results. The tests confirmed that I had high levels of toxic metals in my body, and my doctors concluded that these high levels of such metals, including mercury and manganese, caused an anxiety, depression and a bi-polar condition.

Based on these test results, I have had ongoing intravenous treatments to flush the metals out of my system, and I have had ongoing psychological treatment. for the anxiety, depression and bi-polar condition. I have complained to management about the harassment, retaliation and discrimination, and I was placed on an extended leave of absence. The foreman, Vinnie Agvateesiri and Manager, Jim Boland, miscalculated my approved sick leave and leave of absence, resulting in a loss of seniority and pay for me. I filed grievances related to these issues which relate back to 2004 and these claims are ongoing and continuous.

On June 30, 2006, I met with a United Airlines nurse to obtain medical clearance to return to work. My personal doctors had cleared me to return to work, full time, starting in July of 2006. Ms. Garner, the nurse, stated that she could not make the decision to clear me without a full clinical narrative. I brought back a

narrative on July 10, 2006. Ms. Garner refused to return me back to work, stating that there was not enough detail.

On July 11, 2006, I met with Dr. Hodges, the Head of United Airlines' Medical Department, to inform her that I was starting my swing shift within the hour, that I had clinical narratives from my doctors, and that I had been cleared to return to work. Dr. Hodges responded that she was hesitant to have me return to work unless I agreed to a full urinalysis. I agreed to the urinalysis if Dr. Hodges would promise to fill out a first report of injury, if the urinalysis showed a normal manganese level. This would prove that my claim of toxic exposure to metal poisoning was valid based upon previous tests taken in 2004.

Dr. Hodges agreed that if the urinalysis proved to be normal she would fill out the first report of injury. The urinalysis proved to be normal and the toxic exposure injury was confirmed. Dr. Hodges sent the first report of injury form to my foreman, Vinnie Agvateesiri. On July 15, 2006, the test results clearly showed that, compared to the November 11, 2003 toxic analysis, the manganese level was within reference. I had suffered for two years from toxic metal poisoning. No one at United Airlines believed this condition existed or that it had serious medical consequences.

I reported to Vinnie Agvateesiri, the Foreman, with an unrestricted authorization to return to work. Mr. Agvateesiri was unprepared and complained that he had no warning of my return. Mr. Agvateesiri refused to give me a key card to punch in and out. Instead, I was told to work while management determined how to get a key card from security. I was forced to fill out handwritten exception forms to check in and out. Mr. Agvateesiri refused to sign and accept these forms, and he continued to refuse to fill out paperwork to release my key card. Further, Mr. Agvateesiri continued to refuse to give me any payroll exception and United Airlines refused to pay me.

Mr. Agvateesiri claimed that no one was at the Human Resources Department at 3:00 p.m. to correct this matter. He typed out a security authorization which security rejected because it was not an official form. Consequently, I was forced to input in the computer that I was receiving on the job training to prove that I was at work. Mr. Agvateesiri continued to refuse to give me a key card, reiterating that he was not ready for me to return to work, and asked that I leave the premises, but promising that he would pay me for eight hours of work.

I returned to work the next day and Mr. Agvateesiri continued to harass, retaliate, and discriminate against me by refusing to sign a payroll exception form. I filled the form out and Mr. Agvateesiri refused to sign. Mr. Agvateesiri claimed that he did not know how to obtain a key card to allow me to return to

RIGHT TO SUE:
LARRY OILUND                                                                                    3.

work. Mr. Agvateesiri was one of the Supervisors who harassed, retaliated and discriminated against me throughout my disabilities since 2002, 2003 and 2004. Because of Mr. Agvateesiri and Mr. Boland, management incorrectly miscalculated my leave of absence status while I was out on extended medical leave. Because of this miscalculation, I lost over 1,017 hours of industrial sick leave at $28.00 per hour, amounting to $28,476.00. Further, I lost benefits and stock disbursement of approximately $22,000.00, and my seniority has been affected. There have been other damages, including loss of 1/3 of my pension plan.

On July 13, 2006, I requested a meeting with Mr. Boland to discuss these issues. I complained that I was still refused a key card and that there were monies still owed to me. I complained about the manner in which I was being treated by management and United Airlines' doctors. I filed three petitions of grievances regarding these incidents. I complained to Mr. Boland because the Company refused to return me to work and then after receiving clearance, the Company refused to give me a security card and refused to pay me.

On July 17, 2006 I met with Mr. Boland and Mr. Agvateesiri complaining about the additional monies owed. At this meeting Mr. Boland agreed to pay me five weeks and two days vacation. On July 24, 2006 and July 25, 2006 Dr. Hodges reversed her clearance without reason. Dr. Hodges demanded that further documentation was necessary to return me back to work, including the urinalysis report and a full clinical narrative.

Dr. Hodges' change of mind and refusal to return me back to work caused further confusion and hostility. Mr. Agvateesiri demanded that I bring in a clinical note before I could re-enter the premises. I brought in the documentation on September 11, 2006 including the urine reports. I was given an unrestricted return to work for a second time, however, the Payroll Department claimed that they lost the forms and were refusing to pay me for any time that I already worked in July 2006. I complained to Mr. Boland about the refusal to pay my wages and Mr. Boland claimed that he could not answer for Payroll.

Despite my urinalysis documentation, Dr. Hodges once again refused to allow me to return to work without a full clinical narrative. I was distressed over the ongoing harassment, retaliation and discrimination. Nevertheless, I came in on September 11 and September 13, 2006 with test results and on September 14, 2006 I submitted another clinical narrative for Dr. Hodges' review. United Airlines continued to harass and retaliate and discriminate against me. On September 23, 2006, Dr. Hodges demanded to speak with me regarding the manganese results before approving me to return to work.

RIGHT TO SUE:
LARRY OILUND                                                                    4.

These actions have caused me to suffer further clinical depression and anxiety and on July 13, 2006 I was out on a recommended medical leave for clinical depression. Dr. Hodges has continued to demand any and all clinical narratives from 2004, including prescriptions, covering any and all absences past and present, including *"proposed or expected treatment".* Meanwhile, I have been told by United Airlines' doctors and members of management that I should consider working somewhere else.

I have submitted narratives on the United Airlines' official form for the past several years. The clinical narratives on the Company forms have been accepted and signed by management in the past. However, Dr. Hodges now claims she does not have a full and complete copy of any and all clinical narrative forms submitted by me. Dr. Hodges continues to demand these forms be submitted to her again and that they include any *"proposed or expected future treatment".*

I have been harassed to such an extent that I have suffered from another episode of clinical depression. Despite the fact that these forms have been signed and accepted in the past, Dr. Hodges has now refused to recognize the form and sign the form. I complained to the Industrial Relations Representative, Ron Rich, and met with other members of management about these actions. I have been singled out, treated unfairly, harassed, retaliated against, and discriminated against for the past two years and this has been an ongoing, continuous and abusive employment relationship. I have been told that United still does not have all of the paperwork I have already submitted to Dr. Hodges and to management.

I am currently out for clinical depression. I have submitted, on a regular basis, the clinical narratives which have been required by the Company. Despite my submission of these records, Dr. Hodges has demanded that I resubmit other clinical narratives that must be signed by a medical doctor. I am currently being treated by Dr. Myrna Astillero, a Psychiatrist and medical doctor. United Airlines continues to send demands to me to submit the clinical narratives which I have already submitted, effectively duplicating the paperwork required by Union Contract.

A letter was sent on November 9, 2006 to me from United Airlines stating that medical documentation from my treating physicians substantiating my absence from work since September 29, 2006 had not been received. This letter further stated that Dr. Hodges demanded medical documentation on October 25, 2006 for my continued absence from work. According to this letter, there was not sufficient information to authorize my continued absence. I continue to be

RIGHT TO SUE:
LARRY OILUND                                                                    5.

harassed by United Airlines because he has submitted clinical narratives signed by my psychologist, my psychiatrist, and my medical doctor for this absence.

Dr. Hodges' demand for information goes beyond United Airlines' policies and procedures.     In the alternative, I was directed to see Dr. Hodges by November 27, 2006 if a clinical narrative could not be provided.     I in fact provided a third clinical narrative filled out by Dr. Cervantes and the first copy of my most recent November 3, 2006 toxic report showing elevated mercury levels in my system. Those items were faxed to United Airlines.

Despite these clinical narratives, Dr. Hodges, Barbara Liautaud and Mr. Agvateesiri threatened me that I may be terminated for job abandonment. Under the Collective Bargaining Agreement, and state and federal laws, I am allowed extended medical leave status. I have telephoned the Company and have faxed information to them, including clinical narratives on October 24, 2006 and again on December 6, 2006. Despite my continued efforts, United Airlines continues to send memos, including one dated December 11, 2006 claiming that there was no personal record of a clinical narrative received by United Airlines concerning my case. Again, the Company demanded that a clinical narrative be submitted by December 26, 2006. These actions violate the Collective Bargaining Agreement related to Section 11.2 et.seq. "*illness leave of absence*". Further, these actions violate State and federal statutes prohibiting harassment, retaliation and discrimination against an employee for reasons based upon physical disabilities.

I continue to suffer both mental and physical disabilities directly related to my +employment relationship with United Airlines.

# NOTICE OF CASE MANAGEMENT CONFERENCE

**CIV 4 7 3 0 6 2**

_C ollund_

Case No. _____

**ENDORSED FILED**
**SAN MATEO COUNTY**

Date: _____ OCT 0 3 2008

vs.

MAY 2 2 2008

Time. 9:00 a.m.

_United Airlines_

**Clerk of the Superior Court**
**By G. Jackson**
**DEPUTY CLERK**

Dept. 3 – on Tuesday & Thursday
Dept. 28 – on Wednesday & Friday

You are hereby given notice of your Case Management Conference. The date, time and department have been written above.

1. In accordance with applicable California Rules of Court and Local Rules 2.3(d)1-4 and 2.3(m), you are hereby ordered to:
   a. **Serve** all named defendants and file proofs of service on those defendants with the court within **60 days** of filing the complaint (CRC 201.7).
   b. **Serve** a copy of this notice, Case Management Statement and ADR Information Sheet on all named parties in this action.
   c. **File and serve** a completed Case Management Statement at least **15 days** before the Case Management Conference [CRC 212(g)]. Failure to do so may result in monetary sanctions.
   d. **Meet and confer**, in person or by telephone, to consider each of the issues identified in CRC 212(f) no later than **30 days** before the date set for the Case Management Conference.

2. **If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order To Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.**

3. Continuances of case management conferences are highly disfavored unless good cause is shown.
4. Parties may proceed to an appropriate dispute resolution process ("ADR") by filing a Stipulation To ADR and Proposed Order (see attached form.). If plaintiff files a Stipulation To ADR and Proposed Order electing to proceed to judicial arbitration, the Case Management Conference will be taken off the court calendar and the case will be referred to the Arbitration Administrator. If plaintiffs and defendants file a **completed stipulation** to another ADR process (e.g., mediation) **10 days** prior to the first scheduled case management conference, the case management conference will be continued for 90 days to allow parties time to complete their ADR session. The court will notify parties of their new case management conference date.
5. If you have filed a default or a judgment has been entered, your case is not automatically taken off the Case Management Conference Calendar. If "Does", "Roes", etc. are named in your complaint, they must be dismissed in order to close the case. If any party is in bankruptcy, the case is stayed only as to that named party.
6. You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.
7. The Case Management judge will issue orders at the conclusion of the conference that may include:
   a. Referring parties to voluntary ADR and setting an ADR completion date;
   b. Dismissing or severing claims or parties;
   c. Setting a trial date.
8. The Case Management judge may be the trial judge in this case.

For further information regarding case management policies and procedures, see the court website at www.sanmateocourt.org.

* Telephonic appearances at case management conferences are available by contacting CourtCall, LLC, an independent vendor, at least 5 business days prior to the scheduled conference (see attached CourtCall information).

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:          FAX NO. (Optional): | |
| E-MAIL ADDRESS (Optional): | |
| ATTORNEY FOR (Name): | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

STREET ADDRESS:    Superior Court of California
MAILING ADDRESS:   County of San Mateo
CITY AND ZIP CODE:  400 County Center
BRANCH NAME:       Redwood City, CA 94063-1655

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| CASE MANAGEMENT STATEMENT | CASE NUMBER |
|---|---|
| (Check one):  ☐ UNLIMITED CASE    ☐ LIMITED CASE<br>(Amount demanded         (Amount demanded is $25,000<br>exceeds $25,000)         or less) | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:                    Time:                    Dept.:              Div.:              Room:

Address of court (if different from the address above):

INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.

1. **Party or parties** (answer one):
   a. ☐ This statement is submitted by party (name):
   b. ☐ This statement is submitted jointly by parties (names):

2. **Complaint and cross-complaint** (to be answered by plaintiffs and cross-complainants only)
   a. The complaint was filed on (date):
   b. ☐ The cross-complaint, if any, was filed on (date):

3. **Service** (to be answered by plaintiffs and cross-complainants only)
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served (specify names and explain why not):

      (2) ☐ have been served but have not appeared and have not been dismissed (specify names):

      (3) ☐ have had a default entered against them (specify names):

   c. ☐ The following additional parties may be added (specify names, nature of involvement in case, and the date by which they may be served):

4. **Description of case**
   a. Type of case in ☐ complaint    ☐ cross-complaint    (describe, including causes of action):

Page 1 of 4

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2007]

CASE MANAGEMENT STATEMENT

Cal. Rules of Court,
rules 3.720–3.730
www.courtinfo.ca.gov

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4.  b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐  *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**
The party or parties request  ☐ a jury trial  ☐ a nonjury trial  *(if more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**
a.  ☐  The trial has been set for *(date):*
b.  ☐  No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.  ☐  days *(specify number):*
b.  ☐  hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial  ☐ by the attorney or party listed in the caption  ☐ by the following:
a.  Attorney:
b.  Firm:
c.  Address:
d.  Telephone number:
e.  Fax number:
f.  E-mail address:
g.  Party represented:
☐  Additional representation is described in Attachment 8.

9.  **Preference**
☐  This case is entitled to preference *(specify code section):*

10.  **Alternative Dispute Resolution (ADR)**
a.  Counsel  ☐ has  ☐ has not  provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
b.  ☐  All parties have agreed to a form of ADR. ADR will be completed by *(date):*
c.  ☐  The case has gone to an ADR process *(indicate status):*

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.    The party or parties are willing to participate in *(check all that apply)*:
    (1) ☐ Mediation
    (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before
             arbitration under Cal. Rules of Court, rule 3.822)
    (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days
             before trial; order required under Cal. Rules of Court, rule 3.822)
    (4) ☐ Binding judicial arbitration
    (5) ☐ Binding private arbitration
    (6) ☐ Neutral case evaluation
    (7) ☐ Other *(specify)*:

   e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.
   f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil
        Procedure section 1141.11.
   g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption)*:

**11. Settlement conference**
    ☐ The party or parties are willing to participate in an early settlement conference *(specify when)*:

**12. Insurance**
   a. ☐ Insurance carrier, if any, for party filing this statement *(name)*:
   b. Reservation of rights: ☐ Yes ☐ No
   c. ☐ Coverage issues will significantly affect resolution of this case *(explain)*:

**13. Jurisdiction**
Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
   ☐ Bankruptcy ☐ Other *(specify)*:
   Status:

**14. Related cases, consolidation, and coordination**
   a. ☐ There are companion, underlying, or related cases.
       (1) Name of case:
       (2) Name of court:
       (3) Case number:
       (4) Status:
     ☐ Additional cases are described in Attachment 14a.
   b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party)*:

**15. Bifurcation**
   ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of
      action *(specify moving party, type of motion, and reasons)*:

**16. Other motions**
   ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER |
|---|---|
| DEFENDANT/RESPONDENT: | |

**Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues are anticipated *(specify):*

**Economic Litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**Case management orders**

Previous case management orders in this case are *(check one):*    ☐ none    ☐ attached as Attachment 21.

Total number of pages attached *(if any):* _____

n completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues ted by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management ference, including the written authority of the party where required.

le:

▶

_____         _____
(TYPE OR PRINT NAME)                  (SIGNATURE OF PARTY OR ATTORNEY)

▶

_____         _____
(TYPE OR PRINT NAME)                  (SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached

110 [Rev. January 1, 2007]                **CASE MANAGEMENT STATEMENT**                          Page 4 of 4



Superior Court of California - County of San Mateo

## ADR Stipulation and Evaluation Instructions

In accordance with *Local Rule 2.3(i)(3)*, all parties going to ADR must complete a Stipulation and Order to ADR and file it with the Clerk of the Superior Court. The Office of the Clerk is located at:

Clerk of the Superior Court, Civil Division
Attention: Case Management Conference Clerk
Superior Court of California, County of San Mateo
400 County Center
Redwood City, CA 94063-1655

There is no filing fee for filing the stipulation. An incomplete stipulation will be returned to the parties by the Clerk's Office. All stipulations must include the following:

          ❑ Original signatures for all attorneys (and/or parties in pro per);
          ❑ The name of the neutral;
          ❑ Date of the ADR session; and
          ❑ Service List (Counsel need not serve the stipulation on parties).

Parties mutually agree on a neutral and schedule ADR sessions directly with the neutral. If parties would like a copy of the San Mateo County Superior Court's ADR Panelist List and information sheets on individual panelists, they may go to the court's website (see below) or contact the ADR Coordinator at (650) 363-1962 or (650) 599-1070.

### If Filing the Stipulation Prior to an Initial Case Management Conference

To stipulate to ADR prior to the initial case management conference, parties must file a completed stipulation at least 10 days before the scheduled case management conference. The clerk will send notice of a new case management conference date approximately 90 days from the current date to allow time for the ADR process to be completed.

### If Filing Stipulation Following a Case Management Conference

When parties come to an agreement at a case management conference to utilize ADR, they have 21 days from the date of the case management conference to file a Stipulation and Order to ADR with the court [*Local Rule 2.3(i)(3)*].

### Post-ADR Session Evaluations

*Local Rule 2.3(i)(5)* requires submission of post-ADR session evaluations within 10 days of completion of the ADR process. Evaluations are to be filled out by both attorneys and clients. A copy of the Evaluation By Attorneys and Client Evaluation are attached to the ADR Panelist List or can be found on the court's web site.

### Non-Binding Judicial Arbitration

Names and dates are not needed for stipulations to judicial arbitration. The Judicial Arbitration Administrator will send a list of names to parties once a stipulation has been submitted. The Judicial Arbitration Administrator can be contacted at (650) 363-4896. For further information regarding San Mateo Superior Court's ADR program, contact the ADR offices at (650) 599-1070 or the court's ADR web site at http//www.co.sanmateo.ca.us.sanmateocourts/adr.htm.

ADR-CV-1 [Rev. 9/04]                                         www.sanmateocourt.org

# Appropriate Dispute Resolution (ADR) Information Sheet
Superior Court of California, San Mateo County

*Appropriate Dispute Resolution (ADR) is a way of solving legal problems without going to trial. All types of disputes can be resolved through ADR. The Court encourages you to use some form of ADR before you proceed to trial. The most popular form of ADR is mediation. The Multi-Option ADR Project can help you choose the option that is best for your case and refer you to an experienced ADR provider*

## What are the Advantages of Using ADR?

□ *Faster* – Traditional litigation can take years to complete but ADR usually takes weeks or months.

□ *Cheaper* – Parties can save on attorneys' fees and litigation costs.

□ *More control & flexibility* – Parties choose the ADR process most appropriate for their case.

□ *Cooperative & less stressful* – In mediation, parties cooperate to find a mutually agreeable solution to their dispute.

## What are the Disadvantages of Using ADR?

□ *You may go to Court anyway* – If you can't resolve your case using ADR, you may still have to spend time and money on your lawsuit.

□ *Not free* – The neutrals charge fees (except in judicial arbitration), but you may qualify for financial aid.

## Are There Different Kinds of ADR?

□ **Mediation** - A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options and agree on a solution that is acceptable to all sides.

□ **Judicial Arbitration** – Is an informal hearing where a neutral person (arbitrator) reviews the evidence, hears arguments and makes a decision on your case. In non-binding judicial arbitration, parties have the right to reject the arbitrator's decision and proceed to trial. For more information regarding judicial arbitration, please see the attached sheet or call (650) 363-4896.

□ **Binding Arbitration** - The parties agree ahead of time to accept the arbitrator's decision as final. Parties who choose binding arbitration give up their right to go to Court and their right to appeal the arbitrator's decision.

□ **Neutral Evaluation** - A neutral person (evaluator) listens to the parties, asks them questions about their case, reviews evidence and may hear witness testimony. The evaluator helps the parties identify the most important legal issues in their case and gives them an analysis of the strengths and weaknesses of each side's case. Special neutral evaluation guidelines are available on the Court's website at www.sanmateocourt.org/adr.

□ **Settlement Conference** – Although similar to mediation, the neutral (a judge) may take more control in encouraging parties to settle. Settlement conferences take place at the courthouse. All cases have a mandatory settlement conference approximately 2-3 weeks before the trial date. For questions regarding settlement conferences, call (650) 599-1076.

Appropriate Dispute Resolution Information Sheet

Form adopted for Mandatory Use
Local Court Form ADR-CV-8 [New September, 2007]

[CA Rule of Court §3.221]
www.sanmateocourt.org

## How Does Voluntary Mediation/Neutral Evaluation Work in San Mateo County?

❑  The person who files the lawsuit (the plaintiff) must include this ADR Information Sheet with the complaint when serving the defendants in the case.

❑  All the parties in your case will meet with a judge at your first Case Management Conference (CMC), which is scheduled within 120 days of the filing of the complaint. The judge will speak to you about your voluntary ADR options, encourage you to participate in ADR and ask you to meet with Court ADR staff.

❑  If you and the parties decide to use ADR, Local Rule 2.3(i)(3) states that you must file a *Stipulation and Order to ADR* with the Court Clerk's Office. This form lets the Court know both whom you have selected as your ADR neutral and the date of the ADR session.

❑  You and the other parties can find your own ADR neutral for the case or use a neutral who is on the Court's ADR Panel.
   o  For a list of Court ADR neutrals and their resumes, visit the Court's website at www.sanmateocourt.org/adr. (Go to "Civil ADR Program," "Civil ADR Program Panelist List" and click on any provider's name.)

❑  If you decide to do ADR and file a *Stipulation and Order to ADR* at least 10 days before your first CMC, the Court will postpone (continue) your first CMC for 90 days to allow the parties time to resolve the case using ADR. The Clerk's Office will send you a notice with your new CMC date.

❑  Within 10 days of completing ADR, you and your lawyer (if you have one) must fill out either an Evaluation By Attorneys or Client Evaluation and mail or fax it to the ADR offices at: 400 County Center, Courtroom 2F, Redwood City, CA 94063; (650) 599-1754 (fax).

### Do I Have to Pay to Use ADR?

❑  Yes. You and the other parties will pay the ADR neutral directly. However, you do not have to pay the Court for either judicial arbitration or for the mandatory settlement conference that is scheduled before your trial.

❑  If you expect to have difficulty paying the ADR provider's fee, ask the ADR Coordinator for a financial aid application. You will need to fill out this application to determine whether or not you qualify for financial assistance.

---

In San Mateo County, parties also can take their case to the community mediation organization, the Peninsula Conflict Resolution Center ("PCRC"), and have their case mediated by PCRC's panel of trained and experienced volunteer mediators. To learn more about programs and fees, contact PCRC's Manager of Mediation Programs at (650) 513-0330.

---

**For more information, visit the court website at www.sanmateocourt.org/adr or contact the Multi-Option ADR Project: 400 County Center, Courtroom 2F, Redwood City, CA 94063. (650) 599-1070, (650) 599-1073/fax: (650) 599-1754**

Appropriate Dispute Resolution Information Sheet

Form adopted for Mandatory Use
Local Court Form ADR-CV-8 [New September, 2007]

[CA Rule of Court §3.221]
www.sanmateocourt.org

*Judicial Arbitration, one of the available Appropriate Dispute Resolution (ADR) options, differs from other options in that it is usually court-ordered, unless the parties agree to it.*

## What are the Advantages of Using Judicial Arbitration?

- ❑ *Free* - Parties do not have to pay for the arbitrator's fee.

- ❑ *Fast* - Parties are usually given 120 days from the date of the Case Management Conference (CMC) to have their case heard by the appointed arbitrator.

- ❑ *Informal* - The hearing is conducted by an arbitrator who issues an award. (Arbitrators are usually attorneys who practice or have practiced in San Mateo County.)

## What are the Disadvantages of Using Judicial Arbitration?

- ❑ The award issued by the arbitrator is not always binding (unless the parties stipulated otherwise). If any party requests a trial within 30 days of the award, the award becomes void and the case continues on to trial.

## How Does Judicial Arbitration Work in San Mateo County?

- ❑ During your first CMC hearing, the judge may decide to order you to judicial arbitration. You will then receive instructions and a proposed list of arbitrators in the mail.

- ❑ Parties also may agree to judicial arbitration by filing a *Stipulation and Order to ADR* form at least 10 days before the first CMC. The CMC clerk will then vacate your CMC hearing and send the case to arbitration. The parties will receive instructions and a proposed list of arbitrators in the mail.

- ❑ Parties can stipulate (agree) to an arbitrator on the Court's Judicial Arbitration Panel list. Otherwise, proposed names of arbitrators will be sent to the parties.

  - o For a list of arbitrators, their resumes, and other information, visit the Court's website at www.sanmateocourt.org/adr. (Go to "Judicial Arbitration Program," "Judicial Arbitration Panelist List" and click on the arbitrator's name. To view the arbitrators by subject matter, click on "Judicial Arbitration Panelists by Subject Matter.")

- ❑ After the arbitration hearing is held and the arbitrator issues an award, the parties have 30 days to turn down/reject the award by filing a Trial de Novo (unless they have stipulated that the award would be binding).

- ❑ If the parties reject the award and request a Trial de Novo, the Court will send out notices to the parties of the Mandatory Settlement Conference date and the trial date.

- ❑ Following your arbitration hearing, you will also receive an evaluation form to be filled out and returned to the Arbitration Administrator.

**For more information, visit the court website at www.sanmateocourt.org/adr or contact Judicial Arbitration: 400 County Center, First Floor, Redwood City, CA 94063. Phone: (650) 363-4896 and Fax: (650) 365-4897**

Appropriate Dispute Resolution Information Sheet

Form adopted for Mandatory Use
Local Court Form ADR-CV-8  [New September, 2007]

[CA Rule of Court §3.221]
www.sanmateocourt.org

| Attorney or Party without Attorney<br>(Name, Address, Telephone, Fax, State Bar membership number) | Court Use Only |
|---|---|
| **Superior Court of California, County of San Mateo**<br>Hall of Justice and Records<br>400 County Center<br>Redwood City, CA 94063-1655   (650) 363-4711 | |
| Plaintiff(s): | Case Number |
| Defendant(s): | Current CMC Date: |

## STIPULATION AND ORDER TO APPROPRIATE DISPUTE RESOLUTION

Plaintiff will file this stipulation with the Clerk's Office 10 days prior to or 3 weeks following the first Case Management Conference unless directed otherwise by the Court and ADR Director [*Local Rule 2.3(i)(3)*]. Please attach a Service List.

The parties hereby stipulate that all claims in this action shall be submitted to (select one):

☐ Voluntary Mediation                     ☐ Binding Arbitration (private)
☐ Neutral Evaluation                      ☐ Settlement Conference (private)
☐ **Non-Binding Judicial Arbitration CCP 1141.12**     ☐ Summary Jury Trial
☐Other: _____

Case Type: _____

Neutral's name and telephone number: _____

Date of session: _____
(Required for continuance of CMC except for non-binding judicial arbitration)
Identify by name the parties to attend ADR session: _____

---

ORIGINAL SIGNATURES

_____          _____
Type or print name of ☐Party without attorney          ☐Attorney for (Signature)

☐Plaintiff/Petitioner ☐Defendant/Respondent/Contestant          Attorney or Party without attorney

_____          _____
Type or print name of ☐Party without attorney          ☐Attorney for (Signature)

☐Plaintiff/Petitioner ☐Defendant/Respondent/Contestant          Attorney or Party without attorney

## STIPULATION AND ORDER TO APPROPRIATE DISPUTE RESOLUTION

_____

Type or print name of □Party without attorney

□Plaintiff/Petitioner □Defendant/Respondent/Contestant

_____

□Attorney for (Signature)

Attorney or Party without attorney


_____

Type or print name of □Party without attorney

□Plaintiff/Petitioner □Defendant/Respondent/Contestant

_____

□Attorney for (Signature)

Attorney or Party without attorney


**IT IS SO ORDERED:**


DATE:

_____

JUDGE OF THE SUPERIOR COURT OF SAN MATEO COUNTY

Superior Court of California, County of San Mateo

## DIVISION II
## COURT MANAGEMENT - SUPERIOR COURT

### CHAPTER 1.  FORM AND SERVICE OF PAPERS

Rule 2.0  Transfer of Court-Related Functions of the County Clerk to the Superior Court

Pursuant to the authority contained in Government Code section 69898, the court hereby transfers from the County Clerk to the Superior Court Executive Officer, under the direction of the Presiding Judge, all of the powers, duties, and responsibilities required or permitted to be executed or performed by the County Clerk in connection with judicial actions proceedings, and records.

(Adopted, effective July 1, 1996.)

Rule 2.1  Form of Papers Presented for Filing

Reference, CRC, rule 2.100, et seq.

(Adopted, effective July 1, 1996) (Amended effective January 1, 2000) (Amended, effective January 1, 2007)

Rule 2.1.1 Citations to Non-California Authorities

(Adopted, effective July 1, 1996)(Repealed, effective January 1, 1999)

Rule 2.1.2  Requests for Judicial Notice

(Adopted, effective July 1, 1996)(Repealed, effective January 1, 1999)

Rule 2.1.3 California Environmental Quality Act (CEQA)

If a petition for writ of mandate includes claims under CEQA (Public Resources Code section 21000 et. seq.), the case will be assigned to a judge designated to hear CEQA actions pursuant to Public Resources Code section 21167.1. Plaintiff shall identify the petition as being filed pursuant to "CEQA" on the face of the petition.

(Adopted, effective January 1, 1999)(renumbered from 2.1.4 effective January 1,2000)

Rule 2.1.4 Documents Produced Through a Nonparty

If a party proposes to obtain documents in the custody of a nonparty, as by a subpoena duces tecum, and such documents may be produced by certification or otherwise in lieu of personal appearance by a witness custodian, the request for such documents should specify that they be delivered not later than the first day for which the trial is calendared

(Adopted, effective January 1, 2000)

Superior Court of California, County of San Mateo

## CHAPTER 2. CIVIL TRIAL COURT MANAGEMENT RULES
## PART 1. MANAGEMENT DUTIES

### Rule 2.2    Trial Court Management

Reference CRC, rules 3.700, 3.710-3.713, 10.900, 10.901

(Adopted, effective January 1, 2000) (Amended, effective January 1, 2007)

### PART 2. CASEFLOW MANAGEMENT

### Rule 2.3  New Case Management

This rule applies to all civil cases with the exception of the following. (1) juvenile court matters; (2) probate matters; (3) family law matters; and (4) civil cases which, based on subject matter, have been assigned to a judge, or to more than one judge, for all purposes. For rules applicable to these exceptions, see CRC 2.20, 2.30, 2.570-2.573, 2.585, 2.810-2.819, 2.830-2.834, 3.650, 3.700-3.735, 3.920-3.927, 3.1370, 3.1380-3.1385, 3.1590-3.1591, 3.1806, 5.590, 10.900-10.901, 10.910, 10.950-10.953,.

(a)    Purposes and Goals

The purposes and goals of the San Mateo Superior Court Civil Case Management System effective January 1, 1992 are.

(1)    To manage fairly and efficiently, from commencement to disposition, the processing of civil litigation.

(2)    To prepare the bench and bar for full implementation of the Trial Court Delay Reduction Act (A.B 3820) on July 1, 1992; and

(3)    To encourage parties to agree to informal discovery early in the life of the case, to use standard form interrogatories and to promote alternative dispute resolution. Nothing in these rules is intended to prevent the parties from stipulating to an earlier intervention by the court by way of a case management conference, settlement conference or any other intervention that seems appropriate.

(4)    In accordance with Sections 3.710-3.715, 10.900, 10.901 of the California Rules of Court, Local Rule 2.3 is adopted to advance the goals of Section 68603 of the Government Code and Section 2.1 of the Standards of Judicial Administration recommended by the Judicial Council.

(b)    Team concept

Beginning January 1, 1994 civil litigation will be managed primarily by a team of two program judges.

The clerk will assign the case to a program judge at the time the complaint is filed. The case shall be managed by the assigned program judge until disposition or until the case is assigned to a trial department.

Superior Court of California, County of San Mateo .

(c)    Cases filed after July 1, 1992

Upon the filing of a complaint after July 1, 1992, the case shall be subject to all of the civil case management system rules set forth below. Cases filed before July 1, 1992 shall also be subject to these rules except for subsection (d) (Filing and service of pleadings; exceptions).

(d)    Filing and service of pleadings. exceptions.

(1)    Complaint. Except as provided in paragraph 5 below, plaintiff shall within 60 days after filing of the complaint serve the complaint on each defendant along with:

(A)    A blank copy of the Judicial Council Case Management Statement;

(B)    A copy of Local Rule 2.3;

(C)    The Notice of Case Management Conference.

If a matter has been submitted to arbitration pursuant to uninsured motorist insurance, the plaintiff shall file a notice to that effect with the court at the time of filing the complaint, or at the time the matter is submitted. The notice shall include the name, address and telephone number of the insurance company, along with the claim number or other designation under which the matter is being processed.

(2)    Cross-complaint: Except as provided in paragraph 5 below, each defendant shall within 30 days after answering the complaint file any cross-complaint (within 50 days if compliance with a governmental claims statute is a prerequisite to the cross-complaint) not already served with the answer under Code of Civil Procedure section. 428.50 and serve with that cross-complaint.

(A)    A blank copy of the Judicial Council Case Management Statement;

(B)    A copy of Local Rule 2.3;

(C)    The Notice of Case Management Conference.

(3)    Responsive pleadings: Except as provided in paragraph 5 below, each party served with a complaint or cross-complaint shall file and serve a response within 30 days after service. The parties may by written agreement stipulate to one 15-day extension to respond to a complaint or cross-complaint.

If the responsive pleading is a demurrer, motion to strike, motion to quash service of process, motion for a change of venue or a motion to stay or dismiss the case on forum non conveniens grounds, and the demurrer is overruled or the motion denied, a further responsive pleading shall be filed within 10 days following notice of the ruling unless otherwise ordered. If a demurrer is sustained or a motion to strike is granted with leave to amend, an amended complaint shall be filed within 10 days following notice of the ruling unless otherwise ordered. The court may fix a time for filing pleadings responsive to such amended complaint.

(4)    Proofs of service. Proofs of service must be filed at least 10 calendar days before the case management conference.

(5)    Exceptions for longer periods of time to serve or respond:

Superior Court of California, County of San Mateo

(A)    Time to serve may be extended for good cause: Upon ex parte application to the court, *in compliance with California Rule of Court 379(g)*, within 60 days of the date the complaint was filed, plaintiff may obtain an extension of time to serve to a date on or before the case management conference, if good cause is shown by declaration of counsel (or plaintiff filing in propria persona). An additional extension of the time to serve (an initial extension if the application is by a cross-complainant) may be obtained upon written application to the court upon good cause shown before the prior extension has expired. The filing of a timely application for an extension will automatically extend the time to serve by five days, whether or not the application is granted.

Good cause will be found if the declaration shows that the action is filed against a defendant who is an uninsured motorist, and the plaintiff's claim is subject to an arbitration provision in plaintiff's contract of insurance. In determining good cause in other cases, the court will give due consideration to any standards, procedures and policies which have been developed in consultation with the bar of the county through the bench-bar trial court delay committee.

(B)    Additional extension of time if uninsured motorist arbitration is pending. In addition to any extension of time obtained pursuant to subsection (5)(A) above, if an uninsured motorist arbitration is still pending between plaintiff and plaintiff's insurance carrier 30 days prior to the expiration of the extension, plaintiff may obtain an additional extension of time by an ex parte application supported by a declaration showing the scheduled or anticipated date of the arbitration hearing and the diligence of plaintiff in pursuing arbitration.

(C)    Time to respond may be extended for good cause: Before the time to respond has expired, any party served with a complaint or cross-complaint may, with notice to all other parties in the action, make ex parte application to the court upon good cause shown for an extension of time to respond. The filing of a timely application for an extension will automatically extend the time to respond by five days, whether or not the application is granted.

(e)    Case management conference

(1)    Date of conference: Unless the parties stipulate in writing and the court orders that the case be earlier referred to arbitration, a case management conference will be set by the clerk at the time the complaint is filed. (Government Code 68616)

(2)    Attendance at the case management conference is mandatory for all parties or their attorneys of record.

(3)    Plaintiff must serve the Notice of Case Management on all parties no later than 30 calendar days before the conference, unless otherwise ordered by the Court.

(4)    The Court will deem the case to be at-issue at the time of the conference (Reference: CRC 3.714(a)) absent a showing of extraordinary circumstances.

(5)    The conference may be set at an earlier date by order of the Court or by written stipulation of the parties.

(6)    Designation of trial counsel. Trial counsel and, except for good cause shown, back-up trial counsel, must be specified at the case management conference. If such counsel is not

specified, relief from the scheduled trial date may not be obtained based upon the ground that counsel is engaged elsewhere

(7)    Conference orders: At the initial conference, the program judge will make appropriate pre-trial orders that may include the following:

- (A)    An order referring the case to arbitration, mediation or other dispute resolution process;

- (B)    An order transferring the case to the limited jurisdiction of the superior court;

- (C)    An order assigning a trial date;

- (D)    An order identifying the case as one which may be protracted and determining what special administrative and judicial attention may be appropriate, including special assignment;

- (E)    An order identifying the case as one which may be amenable to early settlement or other alternative disposition technique;

- (F)    An order of discovery; including but not limited to establishing a discovery schedule, assignment to a discovery referee, and/or establishing a discovery cut-off date;

- (G)    An order scheduling the exchange of expert witness information;

- (H)    An order assigning a mandatory settlement conference date pursuant to Local Rule 2.3(k) and 2.4; and

- (I)    Other orders to achieve the interests of justice and the timely disposition of the case.

(8)    CourtCall Telephonic Appearances

(A)    Reference CRC, Rule 3.670

(B)    Procedure. Telephonic appearances through the use of CourtCall, an independent vendor, are permitted at case management conference hearings. A party wishing to make a telephone appearance must serve and file a Request for Telephone Appearance Form with CourtCall not less than five court days prior to the case management conference hearing. Copies of the Request for CourtCall Appearance form and accompanying information sheet are available in the Clerk's office. There is a fee to parties for each CourtCall appearance and fees are paid directly to CourtCall. CourtCall will fax confirmation of the request to parties.

(C)    On the day of the case management conference hearing, counsel and parties appearing by CourtCall must check-in five minutes prior to the hearing. Check-in is accomplished by dialing the courtroom's dedicated toll-free teleconference number and access code that will be provided by CourtCall in the confirmation. Any attorney or party calling after the check-in period shall be considered late for the hearing and shall be treated in the same manner as if the person had personally appeared late for the hearing

Superior Court of California, County of San Mateo

(D)    At a case management conference, parties may be referred to an appropriate dispute resolution ("ADR") process (e.g., mediation, binding arbitration or neutral evaluation). If parties are referred ADR, they must redial the dedicated toll-free teleconference number immediately following their case management conference appearance and use a second CourtCall access code to telephonically appear at the ADR referral meeting with ADR staff. If a case has been referred to ADR, a party's case management conference appearance is not complete until they have also telephonically appeared at the mandatory ADR referral. If parties are referred to judicial arbitration, they do not have to appear at the ADR referral.

(f)    Case Management Statement

At least 15 calendar days before the scheduled case management conference, each party shall file with the court and serve on all other parties a completed Judicial Council Case Management Statement. If the case is set for further case management conference hearing(s), all parties must file updated Case Management Statements 15 (fifteen) calendar days prior to the scheduled hearings(s).

(g)    Appropriate Dispute Resolution, ADR, Policy Statement

The Court finds it is in the best interests of parties to litigation to participate in appropriate dispute resolution procedures, including but not limited to mediation, neutral evaluation, private or judicial arbitration, voluntary settlement conferences, and the use of special masters and referees. Therefore, all parties shall stipulate to, or be referred to, an appropriate form of dispute resolution before being set for trial, unless there is good cause to dispense with this requirement. Parties are encouraged to stipulate to judicial arbitration or ADR prior to the case management conference.

(h)    Stipulations to Arbitration

(1)    If the case is at issue, and all counsel and each party appearing in propia persona stipulate in writing to judicial arbitration prior to the case management conference, discovery will remain open following judicial arbitration. A written stipulation to judicial arbitration must be filed with the clerk and a copy immediately sent to the Master Calendar Coordinator at least 10 calendar days before the case management conference in order to avoid the need to appear at that conference. A written stipulation to arbitrate will be deemed to be without a limit as to the amount of the award unless it expressly states otherwise.

(2)    It is the policy of this court to make every effort to process cases in a timely manner. Parties who elect or are ordered b the court to judicial arbitration must complete the arbitration hearing within the time frame specified by the court.

Parties who wish to continue the arbitration hearing after the jurisdictional time frame must submit a court provided form entitled "*Ex Parte Motion and Stipulation for continuance of Judicial arbitration Hearing*." Parties can obtain a copy of the form by contacting the court's judicial arbitration administrator [See Local Rule 10.1(d)(1). Continuances without adequate grounds will not be considered. A case management judge will either grant or deny the request for continuance. If the request is denied, the case may be assigned a trial date. If the request is granted, the judge will impose a new deadline by which the arbitration must be completed.

(3)    Parties who wish to change their election from judicial arbitration to another form of ADR must file a "Stipulation and [Proposed] Order to [Mediation, Neutral Evaluation, etc.] in Lieu of [Court-Ordered] Judicial Arbitration" with the Clerk of the Court. The Stipulation must

state that parties have: (i) notified both the judicial arbitration and ADR coordinators; (ii) cancelled the judicial arbitration hearing; (iii) scheduled the ADR session within five months of the previously scheduled judicial arbitration hearing; and (iv) stipulated to a trial date, which is not more than six months from the previously scheduled judicial arbitration hearing.

(i)  Stipulations to Private ADR

(1)  If a case is at issue and all counsel and each party appearing in propria persona stipulate in writing to ADR and file a completed Stipulation and Order to ADR with the clerk of the court at least ten (10) calendar days before the first scheduled case management conference, that conference shall be continued 90 days.  The court shall notify all parties of the continued case management conference.

(2)  If counsel and each party appearing in propria persona are unable to agree upon an appropriate ADR process, they shall appear at the case management conference.

(3)  Following an appearance at a case management conference hearing, parties shall, within 21 calendar days , file a completed Stipulation to ADR and Proposed Order identifying the name of the ADR provider, date of ADR session and the names of those who will be in attendance at the ADR session.  The completed Stipulation to ADR and Proposed Order shall be filed with the court by plaintiff's counsel.  The parties, through counsel, if represented, shall confer with the court's Multi-Option ADR Project (M.A.P.) staff if they cannot agree on a provider.  Plaintiff's counsel, shall additionally, send a copy of the completed Stipulation to the court's M.A.P. offices within the same 21-day period.

(4)  All parties and counsel shall participate in the ADR process in good faith.

(5)  To maintain the quality of ADR services the court requires cooperation from all parties, counsel and ADR providers in completing ADR evaluation forms, and returning these forms to the M.A.P. offices within 10 calendar days of the completion of the ADR process.

(6)  In accordance with the Code of Civil Procedure, section $1033.5(c)(4)$, the court, in its discretion, may allow the prevailing party at trial the fees and expenses of the ADR provider, unless there is a contrary agreement by the parties.

(j)  Setting Short Cause Matters

If the parties agree that the time estimated for trial is 5 hours or less prior to the conference, a written stipulation shall be filed at least 10 calendar days before the case management conference in order to avoid the need to appear at that conference and a copy immediately sent to the Master Calendar Coordinator.  In the absence of a stipulation, either party may file a motion to have the matter designated a "short cause" and set the case accordingly.  All such matters shall be presumed short cause unless the contrary is established at the hearing on the motion.

(k)  Law and Motion

All law and motion matters shall be heard by the regularly assigned Law and Motion judge.

(l)  Settlement Conferences

All cases not assigned to arbitration or some other dispute resolution mechanism will be assigned two settlement conference dates, the first of which will be at the earliest practicable date under the circumstances presented by the case, and the second within approximately two



Superior Court of California, County of San Mateo

weeks prior to the assigned trial date.

Cases assigned to arbitration or other form of ADR may be subjected to a settlement conference prior to the arbitration or ADR process, but will be assigned to a pre-trial settlement conference only if the arbitration/ADR procedure fails to resolve the case.

All cases which fail to resolve by the trial date will be subject to an additional settlement conference on the trial date.

All settlement conferences shall be subject to the requirements specified in Local Rule 2.4.

(m)     Sanctions

Sanctions pursuant to CRC 2.30 shall be imposed for any violation of the civil case management system rules. The minimum sanction imposed shall be $150.00 payable to the court; sanctions payable to the court may be larger where appropriate and will be in addition to appropriate attorney fees and calendar changes, including any appropriate change in calendar status of the action.

Sanctions mandated hereby may be waived by the judge conducting the conference only upon an application showing good cause why sanctions should not be imposed.

(Adopted, effective July 1, 1996)(Amended, effective January 1,2000) (Amended, effective January 1, 2003) (Amended effective July 1, 2003) (Amended, effective January 1, 2005)(Amended, effective January 1, 2006) (Amended, effective January 1, 2007)

### Rule 2.3.1 Orders to Show Cause re: Dismissals

(a)     A hearing on an order to show cause why the case should not be dismissed for failure to prosecute the matter shall be set at the two year anniversary of the filing of the complaint and/or cross-complaint.

(b)     An order to show cause hearing shall be set 45 days after court's receipt of notice of settlement.

(c)     An order to show cause hearing regarding dismissals may be set by the court to achieve the interests of justice and the timely disposition of the case.

(d)     An order to show cause hearing re: failure to complete judicial arbitration within the court-ordered time frame may be heard during the case management calendar. Sanctions may be imposed and a trial date may be assigned.

(Adopted, effective January 1,2000) (Amended, effective January 1, 2003)(Amended, effective January 1, 2006)

### Rule 2.4 Settlement Conference

Reference: California Rule of Court, rule 222.

(a)     At all settlement conferences, notwithstanding any other Rule:

(1)     The attorney who will try the case or an informed associate with full authority to negotiate a settlement of the case shall personally attend.

Superior Court of California, County of San Mateo

(2)     Any persons whose consent is required to authorize settlement shall personally attend; those parties that are corporations shall have in attendance an officer or other employee with authority to bind the corporation. Powers of attorney, oral or written, granting counsel settlement authority are unacceptable as a substitute for personal attendance at this conference. Defendant and cross-defendant shall personally attend if there is no insurance coverage, if there is an unsatisfied deductible, or if the insurance carrier is demanding that the insured contribute to settlement.

(3)     With respect to any insured party, a representative of the insurance carrier with authority to settle which is meaningful considering the exposure to loss presented shall personally attend. If the claims representative in personal attendance has any limitation on his or her settlement authority, a representative of the carrier who has no such limitations shall be available to the court by telephone and shall remain available until released by the judge conducting the conference, regardless of the time of day at the location of that representative.

(4)     Upon arrival at the department to which the conference has been assigned, counsel shall check in with the clerk and shall verify the attendance of those persons whose presence is required.

(5)     Notwithstanding the provisions of CRC 3.1380(c), no later than five(5) court days before the date set for the settlement conference each party shall lodge with the office of the court administrator and serve on all other parties a written statement setting forth the following:

        (A)     A statement of facts

        (B)     The contentions of each party to the action regarding liability and damages.

        (C)     An itemized list of special damages

        (D)     In any case in which personal injury is claimed:

                (i)     A description of the nature and extent of any injury claimed, including residuals.

                (ii)    A description of the basis for and method of calculation of any claimed wage loss.

        (E)     The most recent demand and offer or a description of any other proposed settlement between or among the parties

(6)     All parties shall be prepared to make a bona fide offer of settlement.

(b)     The personal attendance of any person who is required by these rules to be present may be excused only by the presiding judge upon application made prior to the day on which the conference is scheduled. Any such person whose attendance is excused must remain available by telephone until he or she has been excused by the judge conducting the conference regardless of the time of day at the location of that person.

(c)     No conference may be continued without the consent of the presiding judge or, if known, the judge to whom the case has been assigned for conference

Superior Court of California, County of San Mateo

(d)    At all such conferences, the judge of the department to which the conference has been assigned shall first attempt to settle the case. If settlement discussions are inconclusive, the judge may adjourn the conference to a later date for further settlement discussions.

(e)    Sanctions pursuant to CRC 2.30 shall be imposed for any violation of this rule. The minimum sanction imposed shall be $150.00 payable to the court; sanctions payable to the court may be larger where appropriate and will be in addition to appropriate attorney fees and calendar changes.

Sanctions mandated hereby may be waived by the judge conducting the conference only upon an application showing good cause why sanctions should not be imposed.

(Adopted, effective July 1., 1996) (Amended, effective January 1, 2003)(Amended, effective July 1, 2005) (Amended, effective January 1, 2007)

## PART 3. CALENDAR MANAGEMENT

Rule 2.5 Trial Date Settlement Conference

A further settlement conference shall be held on the date the case is called for trial in accordance with the procedures outlined in and with the attendance of those persons designated in Local Rule 2.4.

(Adopted, effective July 1, 1996)

Rule 2.6 Refund of Jury Fees: Duty to Notify Court

(Adopted, effective July 1, 1996) (REPEALED and Renumbered as Rule 2.7.6)

## CHAPTER 3. [RESERVED]

## CHAPTER 4  JURY RULES

Rule 2.7 Length of Jury Service

In compliance with CRC 2 1002. a person has fulfilled his or her jury service obligation when he or she has.

(a)     Served on one trial until discharged

(b)     Been assigned on one day for jury selection until excused by the jury commissioner.

(c)     Attended court but was not assigned to a trial department for selection of a jury before the end of that day.

(d)     Been assigned to a trial department for selection of a jury and has been excused by the trial judge

(e)     Served one day on call.

(f)     Served no more than 5 court days on telephone standby.

(Adopted, effective January 1, 2000) (Amended, effective January 1, 2007)

### Rule 2.7.1 Proposed Jury Instructions

(a)     Reference California Rules of Court, Rules 2 1055 and 2 1050

(b)     The Trial Department shall determine in its discretion the timing of submission of proposed jury instructions.

(Amended, effective January 1, 2002) (Amended, effective January 1, 2006) (Amended, effective January 1, 2007)

### Rule 2.7.2 Duty Of Counsel with Respect to Jury Instructions

Before delivery of proposed jury instructions to the trial judge and opposing counsel, counsel shall fill in all blanks, make all strikeouts, insertions and modifications therein which are appropriate to the case. Submission of a form, which requires additions or modifications to constitute a complete and intelligible instruction, shall not be deemed a request for such instruction.

In addition to a hard copy of the proposed jury instructions, counsel shall provide the modified instructions on a computer diskette, and a clean copy of the instructions to be given to the jury.

(Adopted, effective January 1, 2000) (Amended, effective January 1, 2006)

### Rule 2.7.3  Form of Proposed Jury Instructions (CCP §§ 607a, 609,)

All proposed jury instructions shall conform to the requirements of California Rules of Court, Rule 2.1055  Any jury instructions requested after the conclusion of taking evidence shall be in writing. The court, in its discretion, may permit instructions to be sent into the jury room in "Booklet Form". In

Superior Court of California, County of San Mateo

"Booklet Format" the text of the instruction is printed continuously on the page and may result in several instructions to the page. Such instructions may be accompanied by a table of contents.

(Adopted, effective January 1, 2000) (Amended, effective January 1, 2006) (Amended, effective January 1, 2007)

### Rule 2.7.4 Changing Jury Instructions

If, after the jury instruction conference and at any time before giving the instructions and verdict and findings forms to the jurors, the trial judge determines to make any substantive change therein, all parties should be so advised on the record outside the hearing of jurors.

(Adopted, effective January 1, 2000)

### Rule 2.7.5 Jury Instruction Conference

Before final argument and after submission to the trial judge of all proposed jury instructions, verdict and findings forms, a conference outside the presence of jurors will be held. Ordinarily, a reporter or recorder is not required at the commencement of such conference.

In the event the trial judge intends to give any instructions or use any form of verdict or findings on the court's own motion, such instructions, verdicts or findings should be delivered to counsel.

The trial judge will then discuss with counsel:

(1)     Whether any requested proposed instructions, verdicts or findings are patently inappropriate and will be voluntarily withdrawn;

(2)     Whether there is any patent omission of instructions, verdicts or findings which are appropriate and that may be given without objection;

(3)     Whether there is any other modification, namely those to which the parties will stipulate.

Counsel shall meet prior to this conference to discuss each other's jury instructions and classify them into (1), (2) and (3) above.

The foregoing unreported conference will generally result in clarification of the matters, and creation of three categories of instructions, verdicts or findings that may be withdrawn, given or modified.

Thereafter, the conference should be reported and the trial judge should confirm for the record the matters agreed upon. The trial judge should also specify those instructions, verdicts and findings forms the court proposes to give, refuse or modify, whether at the request of a party or on the court's own motion. The court will hear any objections to the foregoing and rule thereon.

The trial judge should sign each requested instruction and indicate the disposition thereof, all of which shall be thereafter filed by the clerk. If a requested instruction is withdrawn, counsel shall so indicate by writing "withdrawn" and signing or initialing such instruction.

(Adopted, effective January 1, 2000)

Superior Court of California, County of San Mateo

----- Rule 2.7.6. Refund of Jury Fees.  Duty to Notify Court

Jury fees shall be refunded pursuant to CCP Section 631.5 only if the party depositing the fees has given the master calendar coordinator written notice, at least two court days before the trial date, that the case settled, dropped or that the party's motion for continuance has been granted.

(Adopted, effective July 1, 2004 [former Rule 2.6])

## CHAPTER 5.  GENERAL RULES

Rule 2.8  Family Law Rules

The local rules of San Mateo Superior Court relating to Family Law are contained in Division V of these rules, infra.

(Adopted, effective July 1, 1996)

Rule  2.9.  Required Action

Action shall be taken on all calendared cases and a future date for action shall always be set.  No case shall go "off calendar" without a future action being set.

(Adopted, effective July 1, 1996.)

Rule 2.10  Interpreters and Translators

a)    Notice.  When a party desires an interpreter, it shall be the responsibility of that party to give notice to the Court and all other parties of record.  That party shall make arrangements for the presence and the payment of the interpreter.

b)    Qualifications.  Unless the interpreter is an official court interpreter, the interpreter's name and qualifications shall be provided to the court and opposing counsel five (5) court days prior to the date of the interpreter's appearance.   If the interpreter is an official court interpreter, no prior disclosure is required.

c)    Relations or friends.  Without the consent of all parties, a relation or a friend may not be used as an interpreter or translator in a contested proceeding.

(Adopted, effective January 1, 2000)

Rules 2.11 thru 2.19 (Reserved)

## CHAPTER 6.  CIVIL TRIAL RULES

. Rule 2.20.  Trial Motions, Briefs, Statements, and Witness Lists

Upon assignment to a trial department for trial by a jury, each party shall file with that department the following:
    (1)    Any in limine motions and response thereto;
    (2)    Any trial briefs;



Superior Court of California, County of San Mateo

    (3)   A concise non-argumentative statement of the case to be read to the jury; and

    (4)   A list of possible witness who may testify in the trial to be read to the jury panel by the court

(Adopted, effective January 1, 2002)

### Rule 2.21  In Limine Motions

Any in limine motions shall be served upon opposing counsel not less than five (5) days prior to trial Any response shall be served upon the proponent of the motion not later than the first appearance in the Department of the Presiding Judge for trial assignment.

(Adopted, effective January 1, 2002)

### Rule 2.22  Production of Exhibits

Any party intending to offer any exhibit at the time of trial shall be prepared, by the time of assignment to a trial department, with an original and sufficient copies of each such exhibit for all other parties and the court. The court may make, in it discretion, any orders it deems appropriate regarding the exchange and presentations of exhibits.

(Adopted, effective January 1, 2002)

### RULE NUMBERS 2.23 TO 2.29 ARE RESERVED

## CHAPTER 7.  COMPLEX CASES

### Rule 2.30  Determination of Complex Case Designation.

#### A.  Decision of Complex Case to be Made by Presiding Judge

The Presiding Judge shall decide whether an action is a complex case within the meaning of California Rules of Court, Rule 3.400, subdivision (a), and whether it should be assigned to a single judge for all purposes.  All status conferences or other hearings regarding whether an action should be designated as complex and receive a singly assigned judge shall be set in the Presiding Judge's department

#### B.  Provisional Designation.

An action is provisionally a complex case if it involves one or more of the following types of claims: (1) antitrust or trade regulation claims; (2) construction defect claims involving many parties or structures; (3) securities claims or investment losses involving many parties; (4) environmental or toxic tort claims involving many parties; (5) claims involving massive torts; (6) claims involving class actions, or (7) insurance coverage claims arising out of any of the claims listed in subdivisions (1) through (6)

The Court shall treat a provisionally complex action as a complex case until the Presiding Judge has the opportunity to decide whether the action meets the definition in California Rules of Court, Rule 3.400, subdivision (a).

Superior Court of California, County of San Mateo

C    Application to Designate or Counter-Designate an Action as a Complex Case.

Any party who files either a Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.401) or a counter or joinder Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.402, subdivision (b) or (c)), designating an action as a complex case in Items 1, 2 and/or 5, must also file an accompanying Certificate Re: Complex Case Designation in the form prescribed by the Court. The certificate must include supporting information showing a reasonable basis for the complex case designation being sought. Such supporting information may include, without limitation, a brief description of the following factors as they pertain to the particular action

(1)    Management of a large number of separately represented parties;
(2)    Complexity of anticipated factual and/or legal issues;
(3)    Numerous pretrial motions that will be time-consuming to resolve;
(4)    Management of a large number of witnesses or a substantial amount of documentary evidence;
(5)    Coordination with related actions pending in one or more courts in other counties, states or countries or in a federal court;
(6)    Whether or not certification of a putative class action will in fact be pursued; and
(7)    Substantial post-judgment judicial supervision.

A copy of the Certificate Re: Complex Case Designation must be served on all opposing parties. Any certificate filed by a plaintiff shall be served along with the initial service of copies of the Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.401), summons, and complaint in the action. Any certificate filed by a defendant shall be served together with the service of copies of the counter or joinder Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.402, subdivision (b) or (c)) and the initial first appearance pleading(s).

D.    Noncomplex Counter-Designation.

If a Civil Case Cover Sheet designating an action as a complex case and the accompanying Certificate Re: Complex Case Designation has been filed and served and the Court has not previously declared the action to be a complex case, a defendant may file and serve no later than its first appearance a counter Civil Case Cover Sheet designating the action as not a complex case. Any defendant who files such a noncomplex counter-designation must also file and serve an accompanying Certificate Re: Complex Case Designation in the form prescribed by this Court and setting forth supporting information showing a reasonable basis for the noncomplex counter-designation being sought.

Once the Court has declared the action to be a complex case, any party seeking the Presiding Judge's decision that the action is not a complex case must file a noticed motion pursuant to Section H below.

E.    Decision by Presiding Judge on Complex Case Designation; Early Status Conference.

If a Civil Case Cover Sheet designating an action as a complex case and the accompanying Certificate Re: Complex Case Designation have been filed and served, the Presiding Judge shall decide as soon as reasonably practicable, with or without a hearing, whether the action is a complex case and should be assigned to a single judge for all purposes.

Upon the filing of a Civil Case Cover Sheet designating an action as a complex case and the accompanying Certificate Re: Complex Case Designation, the Clerk of the Court shall set a status conference at which the Presiding Judge shall decide whether or not the action is a complex case. This status conference shall be held no later than (a) 60 days after the filing of a Civil Case Cover Sheet by a plaintiff (pursuant to California Rules of Court, Rule 3.401) or (b) 30 days after the filing of a counter



Superior Court of California, County of San Mateo

Civil Case Cover Sheet by a defendant (pursuant to California Rules of Court, Rule 3.402, subdivision (a) or (b)), whichever date is earlier

Alternatively, in his or her sole discretion, the Presiding Judge may make the decision on complex case designation and single assignment, without a status conference, based upon the filed Civil Case Cover Sheet and accompanying Certificate Re. Complex Case Designation alone

F.   Notice.
The party who seeks a complex case designation or a noncomplex counter-designation must give reasonable notice of the status conference to the opposing party or parties in the action even if they have not yet made a first appearance in the action. Such notice of the status conference shall be given in the same manner as is required for ex parte applications pursuant to California Rule of Court, Rule 379

G   **Representations to the Court.**

By presenting to the Court a Certificate Re. Complex Case Designation, an attorney or unrepresented party is certifying to the best of that person's knowledge, information, and belief, formed after reasonable inquiry under the circumstances:

(1)   That the complex case designation or noncomplex counter-designation is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2)   That the claims, defenses, or other legal contentions referenced therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law,

(3)   That the statement of supporting information relevant to the complex case designation or noncomplex counter-designation have evidentiary support or are believed, in good faith, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4)   That there is a reasonable basis for that party's complex case designation or noncomplex counter-designation.

If, after notice and a reasonable opportunity to be heard, the Court determines that this subpart has been violated, the Court may impose an appropriate sanction upon the attorneys, law firms, or self-represented parties that have violated this subpart.

H.   The Presiding Judge's Continuing Power.
With or without a hearing, the Presiding Judge may decide, on his or her own motion or on a noticed motion by any party, that a civil action is a complex case or that an action previously declared to be a complex case is not a complex case.

I.   Pilot Program; Sunset Provision. (Repealed, effective 1/1/2007).

(Adopted, effective July 1, 2004)(Amended, effective July 1, 2005) (Amended, effective January 1, 2006)(Amended, effective January 1, 2007)

RULE NUMBERS 2.31 TO 2.35 ARE RESERVED

# SAN MATEO SUPERIOR COURT

## COURTCALL TELEPHONIC APPEARANCES

### JANUARY, 2004

Until further notice, voluntary telephonic appearances ("CourtCall Appearances") may continue to be made for Case Management Conferences in Departments 6 (Judge Kopp) and 21 (Judge Foiles), and for Civil Law and Motion matters in Department 1 (Judge Mittlesteadt) from 1/1/04 to 6/30/04 or Department 3 (Judge Freeman) from 7/1/04 to 12/31/04.

Counsel may make a CourtCall Appearance as follows:

1. NOT LESS THAN FIVE (5) COURT DAYS BEFORE THE HEARING DATE IN DEPARTMENTS 6 AND 21 AND NOT LATER THAN 4:30 P.M. ON THE COURT DAY PRIOR TO HEARING IN DEPARTMENT 1 (1/1-6/30) or DEPARTMENT 3 (7/1-12/31) serve and file with CourtCall (not the Court!) a Request for CourtCall Telephonic Appearance (included in this package);

2. Pay a fee of $55.00 to CourtCall, LLC.

Required filing and payment procedures are detailed within the instruction sheet "How to Use CourtCall," (see reverse). A confirmation from CourtCall, LLC, will be faxed to your office upon the filing and payment outlined above.

A CourtCall Appearance is made as part of a participating Department's usual calendar. Unless notified to the contrary, all counsel who have timely filed their Request and have paid the fee may appear by dialing the toll-free teleconference number provided by CourtCall, LLC. A pre-hearing check-in will occur five minutes before the scheduled hearing time. CourtCall Appearances will generally be afforded a calendar preference.

A CourtCall Appearance is voluntary and may be made without consent of the other party or advance consent of the Court. The Court, however, reserves the discretion to require personal appearance. In matters where only one party elects to make a CourtCall Appearance, the matter will be heard on the Court's speakerphone.

See reverse side for "How to Use CourtCall"

# COURTCALL, LLC

*Telephonic Court Appearances*
6365 ARIZONA CIRCLE
LOS ANGELES, CALIFORNIA 90045
(TEL) (310) 342-0888 **(888)** 88-COURT
(FAX) (310) 743-1850 **(888)** 88-FAXIN

## How To Use CourtCall! - SAN MATEO

### Filling Out The Form

1. **Serve:** Not less than 5 Court Days before the hearing (or 4:30 PM the Court day prior to hearing for Dept. 1 through 6/30/04 or Dept. 3 from 7/1/04 through 12/31/04) COMPLETELY fill out the original of the Request for CourtCall Appearance (the "Request Form"). Retain the original Request Form in your file. DO NOT FILE IT WITH THE COURT. Check the box indicating the method of payment of the fee. **INCOMPLETE REQUEST FORMS MAY RESULT IN A DELAY IN PROCESSING!!**

2. **Fax to CourtCall:** Fax a copy of the Form to CourtCall not less than 5 Court days prior to the hearing (of 4:30 pm the Court day prior to hearing for Dept. 1 or Dept. 3 as noted above). Do not fail to do so, as the CourtCall Calendar is set through these faxes!! LATE FILINGS, IF ACCEPTED, ARE SUBJECT TO A LATE FEE!!

3. **Payment by Credit Card:** Fill out credit card information *only* on the copy faxed to CourtCall and have that copy SIGNED by the PERSON WHOSE NAME IS ON THE CREDIT CARD

4. **Payment by Check:** Fax a copy of check - write case # on check-payable to Telephonic Hearing Account to CourtCall with your Form and mail your check and a copy of your Form to CourtCall.

5. **Proof of Payment/Calendar Confirmation:**
Under normal circumstances you should receive a Confirmation from CourtCall by fax, within 24 hours of submission of a completed Request Form. The Confirmation will contain your teleconference number and access code (if any**).

IF YOU DO NOT RECEIVE YOUR FAXED CONFIRMATION FROM COURTCALL WITHIN 24 HOURS OF SUBMISSION, CALL COURTCALL IMMEDIATELY TO VERIFY YOUR STATUS - WITHOUT A WRITTEN CONFIRMATION YOU ARE NOT ON THE COURTCALL CALENDAR!

FOR INFORMATION AND QUESTIONS ABOUT A COURTCALL APPEARANCE, CALL COURTCALL, NOT THE CLERK/COURT!

### When You Make The Call

* YOU MUST CALL THE TOLL FREE NUMBER ON YOUR CONFIRMATION 5 MINUTES BEFORE YOUR SCHEDULED HEARING TIME. NEVER USE A CELLULAR OR PAY PHONE. If prompted, dial your Access Code.** You will be advised whether you are joining the call in progress or if you are the first to call or you may be placed on "music-on-hold."

* If Court has commenced, DO NOT INTERRUPT! You will have an opportunity to speak. If the call is in progress and you hear voices, wait until an opportunity to speak arises without interrupting others. The Clerk may be performing a check-in and will get to you **

* After check-in wait until your case is called. Use your speakerphone while waiting if you are able to mute the microphone to eliminate ambient noise. When your case is called you MUST USE THE HANDSET. Identify yourself each time you speak and use common courtesy.

* If you are the first person on the call be patient, even if you experience silence or are placed on "music-on-hold," as the Clerk will join the call in due course. As others join you will hear a mild beep-beep* indicating others are on the line. Until your case is called do not speak other than with the Clerk. ** If the Clerk does not join the call within 15 minutes after your scheduled hearing time, have a staff member call CourtCall on our toll free Help Line - (888) 882-6878 and we will be happy to assist you. DO NOT LEAVE THE LINE!

*If the Confirmation from CourtCall does not list an access code with your assigned teleconference number, your matter will be heard privately, not in open court. The 5 minute check-in period will be conducted by a Teleconference Specialist who will conduct the conference in accordance with the Court's instructions. You will be placed on "music-on-hold" while you wait for the Judge to call your matter. The rules regarding cell phones and use of handsets apply. IF YOUR HEARING IS CONTINUED YOU MUST NOTIFY COURTCALL OF THE CONTINUANCE , IN WRITING, PRIOR TO YOUR COURTCALL APPEARANCE TO HAVE YOUR FEE APPLY TO THE CONTINUED HEARING. MATTERS CONTINUED AT THE TIME OF THE HEARING REQUIRE A NEW FORM AND ANEW FEE FOR THE CONTINUED DATE.

| ATTORNEY OF RECORD (Name /Address/Phone/Fax) | DO NOT FILE WITH COURT |
|---|---|
| State Bar No. _____ | COMPLETELY FILL OUT/CORRECT FORM BEFORE SUBMITTING TO COURTCALL!! |
| ATTORNEY FOR (Name) | |
| San Mateo Superior Court | |
| | CASE NUMBER: |
| | JUDGE/DEPARTMENT: |
| | DATE AND TIME: |
| | NATURE OF HEARING: |
| REQUEST FOR COURTCALL TELEPHONIC APPEARANCE | |

1     _____ (Name of specific attorney appearing telephonically) requests a CourtCall telephonic calendar appearance at the above referenced proceeding and agrees to provisions of the Rule/Order/Procedure Re: CourtCall Telephonic Appearances. I UNDERSTAND THAT *I DIAL* INTO THE CALL FIVE MINUTES BEFORE ITS SCHEDULED START TIME.

2.     Not less than five Court days prior to hearing (or 4:40 pm the Court day prior for Dept. 28), a copy of this document was served on all other parties and faxed to CourtCall, Telephonic Appearance Program Administrator at (310) 572-4679 OR (888) 88-FAXIN.

3.     The non-refundable CourtCall Appearance Fee in the sum of $55.00 (plus additional fee of $35.00 if late filing is accepted) is paid as follows:

    ☐     Check (copy faxed-write case # on check) payable to CourtCall. DO NOT MAIL ORIGINAL. Signature below authorizes an ACH (electronic) debit in the amount and from the account listed on the check.

    ☐     Charged to CourtCall Debit Account No.: _____

    ☐     Charged to VISA, MasterCard or American Express:

> TO BE COMPLETED ONLY ON THE COPY SUBMITTED TO CourtCall, LLC:
>
> Credit Card:     O VISA     O MasterCard     O American Express
>
> Credit Card Number: _____     Expiration Date: _____
>
> To pay by credit card, the copy of this form submitted to CourtCall, LLC, must be signed by the person whose card is to be charged and must be faxed to CourtCall at (310) 572-4670 or (888) 88-FAXIN with the above credit card information completed. The signature below constitutes authorization to charge the above referenced credit card.
>
> Date: _____ Name on Card: _____
>                          Type Name                 Signature

4.     Request Forms are processed within 24 hours. Call CourtCall if you do not receive a faxed Confirmation from CourtCall within 24 hours. WITHOUT A WRITTEN CONFIRMATION YOU ARE NOT ON THE COURTCALL CALENDAR AND MAY BE PRECLUDED FROM APPEARING TELEPHONICALLY! COURTCALL'S LIABILITY CONCERNING THIS TELEPHONIC APPEARANCE IS LIMITED TO THE FEE PAID TO COURTCALL.

Dated: _____

                                            Signature

4.25.02            REQUEST FOR COURTCALL TELEPHONIC APPEARANCE