United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LARRY OILUND

          Plaintiff,

  v.

UNITED AIRLINES, et al.,

          Defendants.

NO. C 08-4016 TEH

ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND REMANDING TO STATE COURT

Defendant Larry Oilund's case is before the Court on several state law discrimination claims against United Airlines, his former employer, which Oilund brings under California's Fair Employment and Housing Act ("FEHA"). Oilund claims that he experienced a series of medical problems associated with his employment at United, and asserts discrimination based on medical disability under FEHA. Defendants removed the case to federal court, asserting preemption under the Railway Labor Act ("RLA") as the basis of removal. For the reasons discussed below, the Court concludes that Oilund's claims are not preempted by the RLA. Accordingly, the Court DENIES Defendant's motion to dismiss and REMANDS the case to state court.

//

//

//

**FACTUAL AND PROCEDURAL HISTORY**

**Factual History**

Because Defendant brings this motion under rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, the Court will consider Oilund's factual contentions to be true. *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). This factual account recites Oilund's version of the facts, which United does not contest at this time.

Oilund is a forty-six year old white male who initiated employment with United in 1986; he worked for United at its maintenance facility until 2006, most recently as an engine parts inspector. He experienced a lower-back injury in 1988 and an upper-back injury in 1998. He was determined disabled as a result of these injuries, but they did not prevent him from working at United. He additionally filed a hearing loss claim in 2003, a toxic exposure claim in February 2004, and a stress claim in May 2004.

His hearing loss claim was based upon injury suffered while working too close to a loud grit blaster machine. Following a hearing test that showed hearing loss, he and other coworkers sought and received a sound wall as protection against further injury. Plaintiff also filed an injury claim based on his hearing loss, which was first rejected and then approved.

In 2002, Oilund began to experience heavy metal poisoning due to his work with tin, aluminum, magnesium, manganese, and mercury. United also found elevated arsenic levels in the drinking water at Oilund's workplace. Oilund additionally complained about asbestos, but was ignored. Oilund took disability leave in May 2004 because of stress caused in part by exposure to toxic materials. He experienced eating and sleeping disorders and indecision. Urine and hair analysis tests showed high levels of toxic metals in Oilund's body, to which his doctors attributed his anxiety, depression, and bi-polar conditions. United denied Oilund's stress claim in May 2004 and his heavy metal poisoning claim in August 2004. Since that time, Oilund has had ongoing intravenous treatments to flush the metals from his body.

1 Oilund further complained to management about harassment, retaliation, and
2 discrimination on the part of his supervisors because of his complaints about his working
3 conditions. He was placed on extended medical leave of absence in 2004. Oilund tried to
4 return to work in 2006, having received medical clearance from his personal physician.
5 United's nurse initially denied Oilund clearance to work, but the head of United's medical
6 department cleared him to return to work based upon normal blood manganese levels.

7 However, Oilund's foreman complained that he did not know Plaintiff was returning
8 to work, and refused to provide Plaintiff with security access to the building. Oilund
9 returned to work for a short period, during which time United failed to properly pay him and
10 his foreman continued to harass him about his lack of a security card. The head of the
11 medical department reversed Oilund's clearance on July 24, 2006, and he could not return to
12 work.

13 Due to these problems in his return to work, Oilund again took stress leave in mid-
14 July 2006. Since then he has repeatedly completed other medical tests, which he has
15 submitted to United in seeking reinstatement. In November 2006, United informed Oilund
16 that he may be terminated for job abandonment if he were unable to return to work. As late
17 as December 2006, United informed Oilund that it lacked medical records that he had
18 submitted at least three separate times, and demanded resubmission. Oilund has not worked
19 since July 13, 2006, and continues to suffer from stress and depression that result from his
20 work-related injuries. He has repeatedly submitted medical narratives to United, which has
21 not cleared him for work.

22 **Procedural History**

23 Defendant Oilund filed Right to Sue complaints with the California Department of
24 Fair Employment and Housing, which granted notices on May 24, 2007 giving him the right
25 to sue in a California Superior Court under Government Code § 12695(b). Oilund filed suit
26 against United in San Mateo County Superior Court on August 4, 2008. United removed the
27 case to federal court on August 22, 2008, asserting that the federal court has jurisdiction
28

3

because Plaintiff's claims were preempted by the Railway Labor Act, 45 U.S.C. § 152 *et seq*. United then filed a motion to dismiss the case.

Instead of submitting opposition papers to the motion to dismiss, Oilund filed his First Amended Complaint (FAC), which asserts six causes of action.  Causes 1 and 3-6 are based on employment discrimination under the Fairness in Employment and Housing Act ("FEHA"), California Government Code § 12940 *et seq*; the second cause of action is based on violation of the public policy of the State of California.  United now seeks to dismiss the FAC on three bases:1) the Railway Labor Act preempts Plaintiff's claims; 2) Plaintiff failed to exhaust internal grievance procedures prior to bringing suit; and 3) the facts alleged by Plaintiff are insufficient to sustain his claims as a matter of law, which is a Rule 12(b)(6) claim.

 **DISCUSSION**
**Legal Standard**

Defendant brings its motion under Federal Rules of Civil Procedure 12(b)(1) and (6). Federal Rule of Civil Procedure 12(b)(1) allows a defendant to raise the defense, by motion, that the court lacks jurisdiction over the subject matter of an entire action or of specific claims alleged in the action.  Raising preemption on a motion to dismiss is essentially a 12(b)(1) claim because in the absence of federal preemption, the court will lack subject matter jurisdiction.  A motion to dismiss for lack of subject matter jurisdiction may either make a "facial attack" on the allegations of jurisdiction contained in the complaint or can instead challenge the factual basis for subject-matter jurisdiction.  *Thornhill*, 594 F.2d at 733; *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  Where, as here, the motion constitutes a facial attack, the Court considers the factual allegations of the complaint to be true.  *Thornhill*, 594 F.2d at 733; *Natural Res. Def. Council v. Kempthorne,* 539 F.Supp. 2d 1155, 1161 (E.D. Cal. 2008).

4

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In evaluating the sufficiency of a complaint's allegations, a court must assume the facts alleged in the complaint to be true unless the allegations are controverted by exhibits attached to the complaint, matters subject to judicial notice, or documents necessarily relied on by the complaint and whose authenticity no party questions. *Lee*, 250 F.3d at 688-89. A court should not grant dismissal unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

**Discussion**

Defendant contends that Plaintiff's claims require application of the union's collective bargaining agreement ("CBA") and thus must be dismissed because they are preempted by the Railway Labor Act ("RLA"). Plaintiff, in contrast, argues that the FAC articulates state law claims that are independent of the CBA and cannot be preempted by the RLA.

As a jurisdictional matter, preemption by federal law's occupation of a field functions as a jurisdictional hook by which defendants may remove cases from state court into federal court. Although cases that do not present a federal question generally cannot be removed into federal court, where a plaintiff pleads only state law claims but the cause of action is preempted by federal law, removal into federal court is appropriate. Moore's Federal Practice § 107.14[4][b]. If the removed case is not preempted, remand is appropriate since the original removal was improper. *Id.*

"The RLA . . . provides a comprehensive framework for the resolution of labor disputes in the railroad industry. . . . [It] establishes elaborate administrative procedures for the resolution of both major and minor labor disputes." *Atchison, Topeka and Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562 (1987). Congress has extended the RLA to cover the airline industry as well. 45 U.S.C. § 181. The Supreme Court has interpreted the RLA to provide an exclusive remedy in the case of minor disputes regarding CBAs. *Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 322 (1972). Minor disputes are those that arise from

5

"grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions," 45 U.S.C. § 151a, or that "involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation. Thus, major disputes seek to create contractual rights, minor disputes to enforce them." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253 (1994) (internal citations and quotation marks omitted).

For preemption purposes, the RLA is treated as analogous to the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 *et seq*. *See Hawaiian Airlines*, 512 U.S. at 263.

> In RLA cases then, as in LMRA cases, courts must look to the source of the right asserted by the plaintiff. Where a plaintiff contends that an employer's actions violated rights protected by the CBA, there is a minor dispute subject to RLA preemption. By contrast, where a plaintiff contends that an employer's actions violated a state-law obligation, wholly independent of its obligations under the CBA, there is no preemption. The RLA will preempt a state law claim, only if it "is dependent on the interpretation of a collective- bargaining agreement."

*Espinal v. Northwest Airlines*, 90 F.3d 1452, 1456 (9th Cir. 1996) (quoting *Hawaiian Airlines*, 512 U.S. at 262) (internal citations omitted). In *Espinal*, the Ninth Circuit adopted the *Miller* preemption test from the LMRA context and articulated it as:

> (1) Does the CBA contain provisions that govern the actions giving rise to the state claim? (2) Is the state statute "sufficiently clear" so that the claim can be evaluated without consideration of overlapping provisions in the CBA? (3) Has the state shown an intent not to allow the statute to be altered or removed by private contract?

90 F.3d at 1457 (citing *Jimemo v. Mobil Oil Corp.*, 66 F.3d 1514, 1523 (9th Cir. 1995)(citing *Miller v. AT & T Network Sys.*, 850 F.2d 543, 548 (9th Cir. 1988))). "Under this analysis, a state law will be preempted only if the answer to the first question is 'yes' and the answer to either the second or third is 'no.'" *Id.* (internal quotation marks and alteration omitted).

*Espinal* presents a factually similar case to the present one, and its application of this test is instructive to the Court. *See generally id.* There, the plaintiff was hired as an airline employee contingent upon passing a physical exam. *Id.* at 1455. He signed a contract that provided that his employment was to be governed by a CBA. *Id.* The CBA stated that discharge disputes were to be resolved by an internal grievance process and that continued employment depended upon medical fitness. *Id.* During his training, Espinal's status as a

6

Type II diabetic came to the attention of the airline. *Id.* Following completion of his training, Espinal began to work in probationary employee status; under the CBA, employees in this status could be fired without cause. *Id.* The airline rescinded its offer of employment, claiming that Espinal failed his physical. *Id.* Espinal filed suit, alleging four causes of action, two of which are parallel to this case: disability discrimination under California's Fair Employment and Housing Act and violation of public policy. *Id.* The Ninth Circuit held that Espinal's discrimination and public policy claims under FEHA were not preempted by the RLA. *Id.* at 1458.

To reach this conclusion, the Ninth Circuit applied the three-question *Miller* preemption test. As to the first question, the court reasoned that "even though a CBA contains a physical fitness requirement, the crucial inquiry is whether the CBA establishes 'a comprehensive framework for challenging those determinations.'" *Id.* at 1457 (citing *Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, 1524 (9th Cir. 1995)). The court looked to the reasoning in *Jimeno*, in which the Ninth Circuit "concluded that where the CBA is silent as to how it will address claims of disability discrimination, or accommodate disabled employees, the CBA does not govern the actions giving rise to the claims." *Id.* (discussing *Jimeno*). Thus, the *Espinal* court concluded that while the CBA at issue had a requirement for physical fitness, it was silent as to challenging determinations of fitness and accommodating disabled workers. Accordingly, the Ninth Circuit determined that evaluating the plaintiff's FEHA claim would not require interpretation of the CBA, so the CBA did not govern the actions that gave "rise to the disability discrimination claims." *Id.* The court held that the answer to the first *Miller* question was no.

The same rationale applies to Oilund's case. Careful consideration of the CBA shows that the sick leave and extended illness status provisions of the CBA offer no mechanism for accommodating disabled workers. *See* Def.'s Ex. A at 62-65. Although there is some discussion of how employees may challenge discharges at the end of extended illnesses, it

7

1  does not mention how disabled employees will be accommodated.[1]  Thus, just as in *Espinal*,
2  the answer to the first *Miller* question must be no.  This alone is sufficient under the *Miller*
3  test to determine that the state law is not preempted.  ("Under this analysis, [a] state law will
4  be preempted only if the answer to the first question is 'yes,' and the answer to either the
5  second or third is 'no.'" *Espinal*, 90 F.3d at 1457 (citing *Jimeno* and *Miller*) (internal
6  citations and quotation marks omitted, alteration in the original).

7  For purposes of complete analysis, however, the Court will address the second and
8  third questions of the test, as the Ninth Circuit did in *Espinal*.  The second *Miller* question
9  asks the Court to consider whether the state law articulates a sufficiently clear standard to
10 evaluate the claims without considering overlapping provisions of the CBA.  *Id.*  In *Espinal*,
11 the Ninth Circuit concluded that "Espinal's claims that his employer's failure to
12 accommodate his disability violated FEHA can be analyzed entirely apart from the CBA.
13 This is true 'even though the factual inquiry [under the FEHA] deals with the same
14 underlying factual situation that is governed by [the CBA's] fitness examination
15 provisions.'" *Id.* (citing *Jimeno*, 66 F.3d at 1524).  The court held that "FEHA has clear
16 statutory and regulatory standards that set forth employers' duties under the Act."  *Id.*
17 Therefore, the *Espinal* court concluded that the answer to the second *Miller* question was
18 yes.  Oilund's case is completely analogous to that in *Espinal*.  FEHA is a clear statute that
19 the state court can apply, without regard for the CBA, to determine whether United's failure
20 to accommodate Oilund's disability violated state law.  Accordingly, the answer to the
21 second *Miller* question is yes.

22 The third prong of the *Miller* test asks the Court to consider whether the state has
23 shown intent not to allow its prohibitions to be altered or removed by private contract.  *Id*. at
24 1458.  As regards FEHA, the Ninth Circuit determined in *Jimeno* that the answer to this
25 question is yes, a holding that the court affirmed in *Espinal*.  *See Jimeno*, 66 F.3d at 1527-28,

---

[1] United asks the Court to focus its analysis of the first *Miller* question on the fact that the Plaintiff cited the protections of the CBA in his original complaint and his DFEH complaint.  This, however, is not the issue before the Court now; Plaintiff seeks to invoke the protections provided by FEHA, not the CBA, in the instant suit.

8

*Espinal*, 90 F.3d at 1458.  This is a controlling legal holding regarding the significance of FEHA, and so the answer to the third *Miller* question in this case as well must be yes.

Under the *Miller* test, "[a] state law will be preempted only if the answer to the first question is 'yes,' and the answer to either the second or third is 'no.'" *Id.* at 1457.  As the answer to the first question in Oilund's case is no, and the answers to the second and third questions are yes, the *Miller* test indicates that FEHA is not preempted by the RLA in this case.  Thus, just as in *Espinal*, the Court holds that "because [Oilund]'s disability discrimination claims are not dependent on an interpretation of the CBA, they are not preempted by the RLA." *Espinal*, 90 F.3d at 1458.

United argues that Oilund is simply using his amended complaint as a smokescreen to raise claims under the CBA, and asserts that Oilund is to be bound by factual assertions that he made in his initial complaint.  While as a matter of law, Oilund's prior allegations can be admitted as evidentiary admissions, *see Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996), the thrust of United's argument is that Oilund should not be allowed to first assert his claims under the CBA and then, under threat of dismissal, raise the claims in an amended complaint as purely state law matters.  This argument must fail because Oilund permissibly amended his complaint.  While the facts from his first complaint may be deemed admitted, what has primarily changed between the two complaints is the legal theory under which he asserts his claims.  This is precisely what amendment permits a complaining plaintiff to accomplish, and is not a basis for granting United's motion.

**CONCLUSION**

Although United additionally raises the issues of exhaustion and the inadequacy of Oilund's pleading to satisfy the 12(b)(6) standard, as United removed the case based solely on a preemption theory, in the absence of preemption, removal was improper.  As a result, the Court declines to consider the other arguments presented by the Defendant.  The Court hereby DENIES United's motion to dismiss and REMANDS this case to the state court.  The Court wishes to clarify that in no way does this order assess the substantive legal merits of

9

Oilund's FEHA case; its holding is limited to the conclusion that the case is not preempted, and the corollary that the matter is therefore not within this Court's jurisdiction. In light of this dismissal and remand, the case management conference currently scheduled for 1:30 P.M. on January 26, 2009 is hereby VACATED.

**IT IS SO ORDERED.**

Dated: January 16, 2008

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT